# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LENNETH SUGGS, et al.,

      Plaintiffs,

                         Case No. 08 C 6688

                         Honorable Judge Shadur

OFFICER ZINCHUCK Star No. 3893, et al.,    Magistrate Judge Keys
and the CITY OF CHICAGO.

      Defendants.

## CERTIFICATE OF SERVICE

The undersigned, certifies that on July 28, 2009, I served the foregoing Deposition Notice to the Defendants by submitting same via facsimile and mail to the following individuals:

Sanjay Patel, Esq.
Assistant Corporation Counsel, FCRL
30 N. LaSalle, Suite 1400
Chicago, IL 60602
Fax: 312.744.6566

                         Amanda S. Yarusso

**Horwitz, Richardson & Baker LLC**
20 S. Clark Street, Suite 500
Chicago, IL 60603
Phone: (312) 676-2100
Fax: (312) 372-7076

RECEIVED MD. DEFENSE LITIGATION 2009 JUL 30 AM 11:10 BY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LENNETH SUGGS, SHERWIN OTT,
MICHAEL LEE, CHRISTOPHER COBBS,
MARVIN WIDEMAN, FRANK JAMES,
LATINA WILLIAMS, DARRYLMY
GARNER, KENIFIA MCNEASE, RUTHIE
ROGERS as guardian of LARRENZO
FULTON, YOLANDA FULTON, TIFFANY
THOMAS, KEITH WATTS, ROSALIND
BALL, JEREMY SPENCER, JOVONNA
LIBERTY, LAQUITA BRYANT, MELINDA
ROBINSON, JOSE MCKNIGHT, MOSHAY
BARNES, SHAKEETA CASTLEBERRY,
MARY ANN ROGERS, and CLIFFORD
ARMSTRONG,

            Plaintiffs,

Case No. 08 C 6688

Honorable Judge Shadur
Magistrate Judge Keys

OFFICER ZINCHUCK Star No. 3893,
OFFICER DUGGAN, Star No. 4607
OFFICER L. WATKINS, Star No. 17724,
OFFICER WAZNY, Star No. 11019,
OFFICER KROLL, Star No. 14373, OFFICER
LACZ, Star NO. 15609, OFFICER WYROBA,
Star No. 3152, OFFICER FRIGO, Star No.
8585, OFFICER LITTLE, Star No. 885,
UNKNOWN OFFICERS, and the CITY OF
CHICAGO.

            Defendants.

## NOTICE OF DEPOSITION

To:
  Sanjay Patel, Esq.
  Assistant Corporation Counsel, FCRL
  30 N. LaSalle, Suite 1400
  Chicago, IL 60602
  Fax: 312.744.6566

1

## DEPOSITION SCHEDULE

| Deponent | Date | Time |
|---|---|---|
| Pursuant to Rule 30(b)(6), on behalf of the City of Chicago, the person most knowledgeable as to the Chicago police officers that responded on November 4, 2008 from 7:00 p.m. to November 5, 2008 at 2:00 a.m. to the locations listed in Plaintiffs' supplemental interrogatory, i.e.:<br>   a)  at or near 161 North Laramie;<br>   b)  at or near the intersection of Lake Street and Laramie Avenue;<br>   c)  at or near the intersection of Latrobe Avenue and Fulton Street;<br>   d)  at or near 157 North Latrobe Avenue;<br>   e)  at or near 167 North Latrobe Avenue;<br>   f)  at or near 152 North Latrobe Avenue;<br>   g)  at or near the intersection of Laramie Avenue and Fulton Street;<br>   h)  between West Maypole Avenue and West W. End Avenue, on North Laramie Avenue;<br>   i)  at or near West Lake Street and North Laramie Avenue; and<br>   j)  at or near West Maypole Avenue and North Laramie Avenue. | August 27, 2009 | 10:00 a.m. |
| Pursuant to Rule 30(b)(6), on behalf of the City of Chicago, the person most knowledgeable as to the Chicago police officers that interacted with and/or had contact with any of the Plaintiffs in this matter on November 4-5, 2008. | August 27, 2009 | 1:00 p.m. |
| Pursuant to Rule 30(b)(6), on behalf of the City of Chicago, the person most knowledgeable as to the Chicago police officers that were involved in or have knowledge of the incidents alleged in Plaintiffs' complaint. | August 27, 2009 | 3:00 p.m. |
| IPRA Investigator Vincent L. Jones | August 28, 2009 | 10:00 a.m. |
| IPRA Investigator James Lukas | August 31, 2009 | 10:00 a.m. |
| IPRA Supervising Investigator George Roberts | August 31, 2009 | 1:00 p.m. |
| IPRA investigator assigned to CR no. 1021595 | September 1, 2009 | 10:00 a.m. |
| IPRA investigator assigned to CR no. 1021411 | September 3, 2009 | 10:00 a.m. |
| Pursuant to Rule 30(b)(6), on behalf of the City of Chicago, the person most knowledgeable as to the existence of any video surveillance or recordings of the incidents alleged in Plaintiffs' complaint, including, but not limited to, POD camera footage. | September 5, 2009 | 10:00 a.m. |

You are hereby notified that the undersigned or another attorney at Horwitz, Richardson & Baker LLC will take the deposition of the above named deponents before a notary public or any other duly authorized officer in the City of Chicago on the above referenced dates.

Location of Deposition: 20 South Clark Street, Suite 500, Chicago, Illinois, 60603.

You are hereby further notified pursuant to the Federal Rules of Civil Procedure you are required to have present at the date, time and place stated, the said Deponent for oral examination for the purpose of discovery.

## DEPOSITION RIDER

For each specified deponent, said deponent shall bring with them any and all documents and/or information in electronic or paper form[1] in support of or relating to the subject matter referenced in this notice. Specifically, for the 30(b)(6) witnesses re: responding police officers, such witnesses are to bring with all documents and/or information in electronic or paper form supporting or relating to the Chicago police officers that responded to the listed locations, had contact with the Plaintiffs and/or have knowledge of the incidents. For the IPRA individuals, such witnesses are to bring with them the complete IPRA investigative files related to the Plaintiffs and/or allegations in the Complaint. For the 30(b)(6) witness regarding video footage, said witness is to bring all copies of any existing video recordings (unless already produced in this matter).

Respectfully submitted,

Amanda S. Yarusso
Attorney for the Plaintiff(s)

Horwitz, Richardson & Baker LLC
20 S. Clark Street, Suite 500
Chicago, IL 60603
Phone: (312) 676-2100
Fax: (312) 372-7076

---

[1] Including images, electronic material and/or computer screen images, retained in a computer.

# EXHIBIT B



Dykema Gossett PLLC
10 South Wacker Drive
Suite 2300
Chicago, Illinois 60606

WWW.DYKEMA.COM

Tel: (312) 876-1700
Fax: (866) 562-8081

**Derek B. Payette**
Direct Dial: (312) 627-2504
Email: DPAYETTE@DYKEMA.COM

October 30, 2009

Mr. Blake Horwitz
Horwitz, Richardson & Baker
Two First National Plaza
20 S. Clark Street, Suite 500
Chicago, Illinois 60603

    RE: Lenneth Suggs, et al. v. Officer Zinchuck, et al. 08cv6688

Dear Counsel,

    Police department documentation and interviews with Chicago Police Department personnel suggest that the following Chicago police officers may have deployed OC ("pepper") spray on November 4 or 5, 2008 in the area between North Laramie Avenue to the east, North Latrobe Avenue to the west, West Lake Street to the north, and West Washington Street to the south:

Lt. Michael Stevens #609

(Unit 1569)
Sgt. Matthew Little #885
Albert Wyroba #97384
John Zinchuck #3893
Timothy Duggan #4607
Adam Wazny #11019
Andrew Kroll #14373
Wojciech Lacz #15609

(Unit 1565)
Sgt. Donald Kroski #1777
David Zelig #5443
Daniel Conway #6141
Joseph Spedale #6393
Sean Marron #7048
Jeffrey M. Edwards #13344

Daniel L. Freeman #19212

(Unit 1562)
Sgt. Mark Struke #1039
Michael Amorella #10544
Peter Roehl #14128

Based on police department documentation and interviews with Chicago Police Department personnel, the City of Chicago is unable to determine whether the following Chicago police officers may have deployed OC ("pepper") spray on November 4 or 5, 2008 in the area between North Laramie Avenue to the east, North Latrobe Avenue to the west, West Lake Street to the north, and West Washington Street to the south:

Sgt. Salvatore Reina #2622
Jeffrey Siwek #1294
Steven Laureto #5882
Vincent Fico #6284
Wayne Frano #8064
Michael Napoli #9560
John Frano #11772
Vincent Celio #12569
Marvin Bronnsetter #15963

Police department documentation and interviews with Chicago Police Department personnel suggest that the following officers were present in the area between North Laramie Avenue to the east, North Latrobe Avenue to the west, West Lake Street to the north, and West Washington Street to the south at some point on November 4 or 5, 2008, but did not discharge O/C ("pepper") spray in that area:

Terry Frigo #8585
William Killroy #280

Sgt. Charles Rhein #2164
Kevin Keel #13226
Peter Zygowicz #12477
Gary Lorden #11893
Joel Kuhar #10320
Dennis Oboikovitz #18708
Lamone McCants #7004
James Davis #17108
Canine Officer King #16952

Sgt. Thomas Mason #2368
Michael Anderson #2282
Kevin Kelly #3342
Mark Johnson #4922

Matthew McDonough #16586
Jeffrey Troutman #18797
Robert Delcid #19548

Sgt. Mark O'Connor #2384
Ronni Black #8943
Fred Gross #8953
John Bartuch #18458
Richard Defelise #14307
Darren Deehan #14203
Scott Leck #2572
Juan Cardenas #11671

Sgt. Fred Hughes #1719
Janice Wilson #11352
Alicja Niedweicki #11319
Torrence Smith #17151
Laurence Agee #12704
Cecil Phillips #6657
Walldy Colon #2929
Martin Tully #7817
George Parris #3401

Sgt. Jim Buhrke #1433
Caroline Burgess #6564
Joseph Lopez #15739
Todd Mueller #15562
Stanley Figus #18305
Miguel Romero #9955
Ray Urbanski #6323
Ricky Whitten #8163
Brain Hood #10598

Sgt. Kenneth Drayton, 2180
Sgt. Joseph Keeter, 2647
PO John Curry, 14800
PO George Gass, 11672
PO Christopher Hoffman, 13208
PO Patrick McInnis, 18929
PO Anthony Keany, 10156
PO Thomas O'Shaunessy, 19271
PO Timothy Schnoor, 15401
Canine officer O'Carroll, 18286
Canine Officer Martinez, 7952

Please contact me if you have any questions regarding this matter.

Sincerely,

**DYKEMA GOSSETT** PLLC

Derek B. Payette

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KENNETH SUGGS, ET AL.,           ) DOCKET NO. 08 C 6688
                                 )
                    Plaintiffs,) 
                                 )
      vs.                        )
                                 )
OFFICER ZINCHUCK, ET AL.         ) Chicago, Illinois
                                 ) November 9, 2009
                     Defendants.) 9:00 o'clock a.m.


TRANSCRIPT OF PROCEEDINGS BEFORE THE HONORABLE
MILTON I. SHADUR, Judge

APPEARANCES:

For the Plaintiffs:
                 MR. BLAKE W. HORWITZ AND
                 MR. DAN DORFMAN

For the Defendants:
                    MR. SANJAY H. PATEL,
                    MS. CAROLINE J. FRONCZAK
                    MR. DEREK B. PAYETTE


JESSE ANDREWS
Official Court Reporter – U. S. District Court
219 S. Dearborn Street
Chicago, Illinois  60604
(312) 435–6899

*     *     *     *     *     *

1          THE CLERK:  08 C 6688, Suggs vs. Zinchuck.

2          MR. HORWITZ:  Good morning.  Blake Horwitz on behalf

3 of the plaintiffs.

4          MR. PATEL:  Good morning.  Sanjay Patel, P-a-t-e-l,

5 on behalf of the officers.

6          MS. FRONCZAK:  Caroline Fronczak, F-r-o-n-c-z-a-k,

7 on behalf of the officers.

8          MR. PAYETTE:  Derek Payette, P-a-y-e-t-t-e, on

9 behalf of the City of Chicago.

10          MR. DORFMAN:  Dan Dorfman of behalf of the

11 plaintiffs.

12          THE COURT:  Well, I've look at this motion.  And I

13 am strongly disinclined to permit this thing, which is

14 unwieldy to begin with, to become even more unwieldy because

15 you think that you have uncovered a group of other people.  If

16 you want to spend another $350 for them, be my guest.  But I

17 am not about to convert this one, which has enough problems to

18 begin with, and I mean real problems, in terms of logistics

19 and all of the handling that we have been trying to deal

20 with to suddenly become exploded by saying, "Oh, we discovered

21 a lot of other people."  You may will have done that, don't

22 misunderstand.  I am not being critical in that sense.  But

23 you can't wrap it up in the same package.  So I am --

24          MR. HORWITZ:  Can I respond to that --

25          THE COURT:  -- going to grant leave to file.

3

1          MR. HORWITZ:  -- can I respond to that?.

2          I've totally heard what you said.  There is a lot of

3   prejudice to the plaintiff going on here, and I would like to

4   address it, if I can.

5          THE COURT:  Well.  Okay.  I will listen, I guess.

6   Although you have got a steep hill to climb.

7          MR. HORWITZ:  I hear you.  That's fine.

8          THE COURT:  Go ahead.

9          MR. HORWITZ:  The defendants came before you for

10  seven or eight months and they told you that there were no

11  other officers that they were aware of that had anything to do

12  with this case.  None.  And we were under the impression that

13  that was true.  That their answers to interrogatories

14  were accurate.  There representations before you complied with

15  Rule 11.  And that when the attorneys looked you in the eyes

16  and said there were no other officers, that that was a true

17  statement.

18          You referenced this case as something similar to a

19  crystal knot where plaintiffs may not be able to absolutely

20  figure out who the officers were that had anything to do with

21  this case.  And in essence saying to plaintiffs, you know, you

22  might be in a difficult -- you may or may not have legitimate

23  allegations attributable to misconduct, but the bottom line is

24  might have a personal type of experience were you not able to

25  find out who the officers were.

4

1          So notwithstanding all of those representations
2  before you that were occurring for approximately seven months,
3  when we were before you on what seemed like a difficult case
4  to wield in essence as you are articulating it, the
5  defendants representations were nothing but wrong.  They were
6  misrepresentations to you.  They were false.  They left
7  plaintiffs with nothing but false premises seeking to attack
8  plaintiffs' complaint.  Attack plaintiffs for not knowing who
9  the officers were.  Submitting intention interrogatories and
10  seeking to follow up with them.  Nowithstanding the fact that
11  all defense counsel had done was nothing, truly nothing, to
12  figure out who the identiy was of these officers.
13          So what happened is, your Honor, is that we received
14  on October 30th at 5:30, we received a letter from Mr.
15  Payette, the gentleman to my right -- all the way to my
16  right -- and that provided the name of -- provided the names
17  of approximately I think it was 57-plus officers.
18          I looked at the depositions of IPRA's chief person,
19  Ilana Rosenzweig, pursuant to court order, because this
20  list may or may not have been adequate or sufficient or
21  legitimate.  And also we were trying to figure whether or not
22  there were any other officer, and whether or not IPRA had from
23  their investigation provided the names of other officers.
24          THE COURT:  Let me interrupt for a second.  You know
25  the difficulty here is in candor the sort of procedural

5

1    monster that Monell creates.  That is if we had -- if you were

2    in a different court --

3          MR. HORWITZ:  Uh-huh.

4          THE COURT:  -- and you were looking to respondeat

5    superior only, and not the question of constitutional

6    violation, you wouldn't be confronted with the morass that you

7    have talked about.  Because the fact of a large number of

8    officers identified, unidentified, whatever it is, would

9    not have stood in the way of going ahead with a claim on

10   behalf of people who assertedly had their rights violated as

11   part of what you have referred to as the modern version

12   of crystal knot.  Happy anniversary as the saying goes, you

13   know.

14         MR. HORWITZ:  Okay.

15         THE COURT:  The difficulty however, and again it's

16   the universe that neither of us created, is that the federal

17   handle in that sense has to be, at least as to anybody with a

18   reasonably deep pocket, has to be through Monell.  And the

19   difficulty there is that respondeat superior does not apply.

20         So you know I would be giving you a different

21   response, very frankly, if it were not for the fact that this

22   is a federal court and it is confronted by what the federal

23   law has created.  For better or worse the Supreme Court has

24   taught us that and we have been slavishly, as we must,

25   adhering to that.

6

1          So that, by the way -- so that for example

2   naming another battery of individual defendants with all that

3   that forecast in terms of procedure that's going to be

4   followed is a perspective nightmare.

5          MR. HORWITZ:  It is.  I don't disagree with you.

6   But the situation is, Judge, truly if we really looked at the

7   scenario, and if I layed it out for you, you would be

8   breathless to see how it is that the defendants have allowed

9   us to be in this position where we have asked specific

10  discovery -- made specific requests to figure out who these

11  officers were many, many, many months ago.

12         THE COURT:  You don't have to educate me about the

13  history of this one.  I understand that.

14         MR. HORWITZ:  Right.  But where we are right now, is

15  that they gave us these names.  I presented these names to

16  IPRA's chief person, to the person that investigates officer

17  misconduct and I gave her these names.  Gave them that which

18  defense counsels gave to me.  And I said, "Can you say all of

19  these officers were not involved?"  And the answer was "No,"

20  under oath by the key person, the person that's investigating

21  this case, that gave me -- I am sorry -- through defense

22  counsel gave me a stack of papers this big (indicating) for

23  which we spent collectively 80 hours analyzing, developing

24  charts, developing locations -- and I wish I had brought it

25  here, but I didn't think this would be the issue --

7

1   but counsel have seen it.  We have two charts identifying

2   locations of officers and locations of plaintiffs, and we

3   spent a tremendous amount of time figuring this out.  I agree

4   with you that it puts us in a procedurally difficult

5   situation.  It's not that it can't be worked out.

6           For example, I have a case in front of Judge

7   Zagel where a similar scenario happened where we were in a

8   death case where we were given names of lots of officers right

9   at the end -- the tail end of that which would be a statute of

10  limitations issue.  And what Judge Zagle said is, "Look.  I am

11  not going to hold you to Rule 11 so tightly in this context

12  because of the procedural scenario.  So what you can do" --

13  and what we are doing right now in this case -- "is talk with

14  defense counsel and try to resolve through discovery -- I am

15  sorry, through you know 37.2 conference or through an exchange

16  of documents, those officers which were involved or not

17  involved, and try to organize this in a better way.  Knock out

18  the officers that are not relevant."  And in that case we

19  probably named about 30 officers with his approval,

20  and through you know, we timely went through all of the

21  issues  attributable to naming some of the officers.  And I

22  recognize that's the concern with your Honor.

23          I think that an intelligent conversation with

24  meaningful documents produced to us can allow us to ferret

25  this out, and whittle it down so that we are in an appropriate

8

1 posture. But where we are right now, Judge, why we have

2 launched this complaint, is because we had a statute of

3 limitations issue. And that's the only reason why we file it

4 on Friday night.

5　　　　　And that's it. We are not here to put a burden on

6 the defendants. And by the way, there is no Monell claim

7 lodged at present. Just respondeat superior on the conduct of

8 the City's and an indemnification claim.

9　　　　　So if I were given a lot of this information

10 before, and we attempt to truly work this out, analyze it, sit

11 down and talk and engage in professional attorney conduct, if

12 we would have had an opportunity to do that, we would be in a

13 very procedural posture. We are not in that scenario. We

14 were foisted this information at the last minute. It was

15 ridiculous to say the least what we were given. It was all

16 pursuant to court order. We went in front of Judge Keys

17 immediately when you referred it down to him and we presented

18 a motion to compel. We were given documents -- I am sorry.

19 We were not given any documents pursuant to the motion to

20 compel. I then filed an emergency motion with the court -- I

21 am sorry. Let me back up a little bit. We were not given any

22 further documents pursuant to the motion to compel. We were

23 given a list of officers, even though those officers could

24 specifically be identified in further documentation

25 from IPRA as to what their relationship is. All we were given

9

1  is a list.

2          THE COURT:  Yes.

3          MR. HORWITZ:  So previously we had a stack this big,

4  we did our analysis:  80 hours of research by two attorneys

5  generated a large poster-size graphs identifying were the

6  officers are located.  And then we received at the last minute

7  at 5:30 on Friday, October 30th, a list of another

8  57 officers.

9          I presented an emergency motion to Judge Keys saying

10  let's get some clarification and let's find out what's going

11  on, he granted that motion and said go take the chief

12  investigators -- chief administrator's deposition.  That was

13  done the next day.  So by 3 o'clock in the evening, the day

14  that I had to file this motion, in order to not file a statute

15  of limitations as an advocate on behalf of my client, I am

16  taking the deposition of the chief administrator pursuant to

17  Judge Keys order so that we can figure this stuff out.  She

18  unfortunately wasn't very knowledgeable.  We tried to make her

19  into a 30(b)(6) witness, but she didn't have the time to have

20  that happen, because she had just got off of a plane.  She had

21  to go into a meeting with the City.  So anyways, we did our

22  best to try to figure it out.  And I gave her the list of

23  officers that are amended added to the complaint.  And in that

24  list she said, "I can't tell you these guys aren't there."

25  The letter that was presented by Pat -- Mr. Payette, doesn't

10

1 allow me to rule out these officers were present.  They are in

2 the 15th District and involved in the case.  Those were

3 specific under oath statements.

4        And just so you know, Judge, there are a lot of of

5 officers that are involved in this case because there was a

6 massive effort by the City.  And just so you know, we had 25

7 911 calls at a minimus by people claiming that they were

8 standing on the corner and getting peppered sprayed, doing

9 nothing.  And repeat calls d made to 911 on that basis.  So

10 we are not you know launching a complaint, just spilling out

11 names of officers just to sort of cover ourselves without

12 any analysis or Rule 11 investigation or reasonable inquiry.

13 We have zone everything that we possibly can.  And my concern

14 is that if your Honor denies the motion at present, then we

15 don't have these officers named, then we have a -- you know,

16 we have issues attributable to statute of limitations

17 violation which do not inure to my detriment at all, it should

18 inure to the defendants' detriment.  If we need to sit down

19 and talk to review the materials in a meaningful way, I think

20 that would be very helpful.  Then maybe I can remove some of

21 these officers names and we can a more intelligent inquiry as

22 to what's going on.  But the strongest evidence is to

23 underscore --

24        THE COURT:  Way just a minute.

25        MR. HORWITZ:  Yes.

1    THE COURT:  What Mr. Horwitz has been saying here?
2 Is there anything that's not accurate about his
3 characterization about the late furnishing of potential
4 information, and the fact that he is butting up against a
5 limitations problem as a result so that the only way that he
6 can at least key the issue up is by an amendment that may
7 then result in pairing the thing down once more information is
8 derived.  Is there anything that's wrong with what he has said
9 factually?
10    MR. PAYETTE:  There is, your Honor.  I think we are
11 going to have to divide this argument up between myself and
12 Ms. Fronczak, who represents the officers and Mr. Patel
13 represents the City.
14    THE COURT:  Okay.
15    MR. PAYETTE:  Mr. Payette came on board this case a
16 little later in the game.  But until then we had represented
17 the individial officers.  some of the representations
18 Mr. Horwitz did make I would argue are incarcerate.
19    THE COURT:  Well, wait a minute.  I am not talking
20 about any perjorative characterization about misleading or
21 anything, but rather that the facts as disclosed, have just
22 now been disclosed in a way that he had no control over, and
23 no source of accurate information or at least potential
24 accurate information right now.  That's what I hear from him.
25 and that if so Would then to call for granting leave to file,

12

1 but with the understanding that the parties are going to get

2 to work rapidly and thoroughly in order to cull out the people

3 when it finds out that somebody was off fishing at the time,

4 or was off on some other assignment at the time, and was

5 not involved in the election day activities that are talked

6 about.  That's really -- what he is seeking to do is to

7 preserve the matter in limitations terms, as I get it, and

8 that's commendable, that's appropriate.  If that's what it is,

9 and he acknowledges that  if it turns out a result of

10 conferring he's going to work with you to get these -- to get

11 out of the case the people that should not have added, then it

12 seems to me that's constructive.

13         MS. FRONCZAK:  Your Honor, I believe Mr. Horwitz has

14 been misconstruing the time line somewhat though.  We were  I

15 believe it was September 25th that Judge Keys granted us or

16 grant his motion to be compel in part, and that we were to

17 have meaningful investigations and interviews with the

18 defendant officers, as well as well as other potential

19 officers based on the documents that were tendered to Mr.

20 Horwitz, to determine other who were possibly involved.  We

21 did that throughout the month of October.

22         The due date for Judge Key's motion to compel was

23 October 31st.  So we did tender that information on

24 October 30th, a day before the actual date of this information

25 was due.

13

1          THE COURT:  So what?

2          MS. FRONCZAK:  Well, I am just saying that it would

3    take us months.

4          THE COURT:  Trying to get better for a day?  That's

5    really not --

6          MR. HORWITZ:  Judge, it was a Friday.  Saturday was.

7          THE COURT:  Wait just a minute.  The issue of course

8    has to do with the fact that all of us know that the election

9    was in November.

10         MS. FRONCZAK:  I understand.

11         THE COURT:  And here we are in November, you know.

12         MS. FRONCZAK:  I understand, your Honor.  But all of

13   these documents, there was no new information that was correct

14   tendered to Mr. Horwitz that's outside of the realm of the

15   documents that were tendered to him August.  And we have --

16   it's been our position that plaintiffs will not come forward

17   and make any sort or identification about who did what to

18   them.

19         THE COURT:  Well, wait.

20         MS. FRONCZAK:  The burden has shifted.

21         THE COURT:  Come on.  Let's operate in the real

22   world here.  You know if in fact there was a melee of the kind

23   that has been described here --

24         MS. FRONCZAK:  Which is --

25         THE COURT:  The idea of saying, "Well, before you

14

1  hit me, before you pushed me, give me your name, rank and

2  serial number."

3          MS. FRONCZAK:  And the same goes for the plaintiffs.

4          THE COURT:  That isn't how the world works.

5          MS. FRONCZAK:  We don't who the plaintiffs are other

6  than their names --

7          MR. PAYETTE:  I am sorry, Judge..

8          THE COURT:  I see a whole string of them from day

9  one.  I am going to -- I will grant leave to file the Amended

10 Complaint with the understanding that Mr. Horwitz is going to

11 deliver as advertised.  But that take two to tango on that.  I

12 expect that the parties are going to confer actively.  That's

13 what our Rule 37 is about.  And that the result of that is

14 going to be to carve it down as soon as that's possible, to

15 take out of the case people who have been added simply because

16 of incomplete information.  And when you got the more

17 thorough results you can get them back out of the case.

18          So the net result of that is that I am granting it

19 but I am not now setting a time for answer to the Amended

20 Complaint.  That really is going to be a function of the

21 results of your conferring.  What I will do instead is to --

22 we have got a December 14th status date, we'll keep that.  I

23 would hope that by then, if not before, you will have the

24 thing in a posture in which you can carve the thing down to

25 shape, or at least make meaningful strides that way.

15

1          So the answer is that the motion for leave to amend

2   the complaint is granted, on the understanding that I have

3   just talked about.  And we are continuing the matter to the

4   previously set date of December 14th.

5          Thank you.

6          MR. HORWITZ:  A couple of things.  It is possible so

7   we don't have to order the transcript, we dispute a lot of

8   what was said before you, not only when we come before you

9   again, but in  front of Judge Keys it happened a lot actually:

10  I am wondering if the order can reflect that the parties are

11  to work together to resolve issues attributable to proper

12  defendants?

13          THE COURT:  I have already said that.  And you don't

14  have to write that up.  Everybody is here listening.  The one

15  thing that would no be productive I think is to start doing

16  battle about who said what.

17          MR. HORWITZ:  That's happened in quite abundance of

18  reply.  That's one of the problems here.

19          THE COURT:  In am not expecting that to happen now.

20          MR. HORWITZ:  Thank you, Judge.

21     (WHICH WERE ALL OF THE PROCEEDINGS HAD AT THE HEARING OF
        THE ABOVE-ENTITLED CAUSE ON THE DAY AND DATE AFORESAID.)
22

23

24

25

16

1                    C E R T I F I C A T E

2
I HEREBY CERTIFY that the foregoing is a true and correct
3 transcript from the report of proceedings in the
above-entitled cause.
4
/s/JESSE ANDREWS
5 JESSE ANDREWS, CSR
OFFICIAL COURT REPORTER
6 UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
7 EASTERN DIVISION
DATED: June 7, 2010
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT D



**City of Chicago**
Richard M. Daley, Mayor

**Department of Law**

Mara S. Georges
Corporation Counsel

Individual Defense Litigation
Suite 1400
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 742-6433
(312) 744-6566 (FAX)
(312) 744-9104 (TTY)

http://www.cityofchicago.org

<u>**Via US Mail and Fax**</u>

February 9, 2009

Fabian J. Rosati
The Blake Horowitz Law Firm
20 S. Clark, Suite 500
Chicago, Il 60603
Fax: 312-372-7076

RE:     *Suggs et al v. Zinchuck et al* 08-6688

Dear Fabian Rosati,

This letter concerns plaintiffs' notice of deposition submitted to Defendants on February 4, 2010.

| | |
|---|---|
| 30(b)6 witness to explain words/codes contained in defendants discovery responses at bates No. 959-1724 | February 18, 2010 |

Objection: Defendants object to this notice of deposition as being overbroad, unduly burdensome and vague as to the terms "words/codes" contained in defendants discovery responses on 765 identified individual document pages.

| | |
|---|---|
| 30(b)6 witness to testify with specificity as to what work/investigation has been conducted relative to discerning which officers could have been the relevant vicinity and used O.C. spray at the relevant times. The witness should also identify what documentation was used in order to develop his/her testimony and to provide any such documentation if not previously disclosed. | February 18, 2010 |

Objection: Attorney-client privilege and work product privilege. Without waving said objection, see the October 30, 2009 letter sent by Dykema Gossett responding specifically to this request.









City of Chicago
Richard M. Daley, Mayor

**Department of Law**

Mara S. Georges
Corporation Counsel

Individual Defense Litigation
Suite 1400
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 742-6433
(312) 744-6566 (FAX)
(312) 744-9104 (TTY)

http://www.cityofchicago.org

| | |
|---|---|
| 30(b)6 witness to testify with specificity as to the identification of each officer known to 1) have discharged O.C. spray in the relevant vicinity and during the relevant times; 2) known to have been present in the 15th District at the above times; 3) known to have been and/or could have present in and around the relevant vicinity during the relevant times. The witness should also identify what documentation was used in order to develop his/her testimony and to provide any such if not previously disclosed. | February 18, 2010 |

Objection: Same objection as above

| | |
|---|---|
| 30(b)6 witness to testify with specificity as to the procedures that were to be followed by law enforcement officers on 11/4/08 - 11/5/08 relative to the documentation of the use of O.C. spray. | February 18, 2010 |

Defendants are identifying the appropriate 30(b)(6) witness and will contact Plaintiff with the available dates for their depositions

| | |
|---|---|
| 30(b)6 witness to testify with specificity as to which vehicles used by the city of Chicago police officers had GPS capabilities that were used during the relevant times and in the relevant vicinity and what information the city possesses relative to more specific locations of said vehicles during the relevant time. | February 18, 2010 |

Defendants are identifying the appropriate 30(b)(6) witness and will contact Plaintiff with the available dates for their depositions







City of Chicago
Richard M. Daley, Mayor

Department of Law

Mara S. Georges
Corporation Counsel

Individual Defense Litigation
Suite 1400
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 742-6433
(312) 744-6566 (FAX)
(312) 744-9104 (TTY)

http://www.cityofchicago.org

| | |
|---|---|
| 30(b)6 witness to testify with specificity as to the identity of each and every law enforcement officer that was issued O.C. spray on 11/4/08 - 11/5/08 and to produce and identify each and every document the city possesses attributable to distribution of O.C. spray including but not limited to any serial numbers on the subject O.C. spray canisters. | February 19, 2010 |

Objection: Defendants object to this notice of deposition as being overbroad, unduly burdensome. Furthermore, Defendants have previously complied with this request.

| | |
|---|---|
| 30(b)6 witness to testify with specificity as to law enforcement officers' duty/obligation to respond "line by line" to the "To/From Subject Reports" produced in defendants discovery responses, for example bates 1551-1724. | February 19, 2010 |

Objection: Defendants object to this notice of deposition as being overbroad, unduly burdensome and vague as to the "officer's duty/obligation to respond "line by line" to the "To/From Subject Reports."

| | |
|---|---|
| 30(b)6 witness to explain the words/codes of any PDT report/transmission tendered by defendants in their discovery responses, for example bates 978-1550. | February 19, 2010 |

Defendants are identifying the appropriate 30(b)(6) witness and will contact Plaintiff with the available dates for their depositions.







Sincerely,



**City of Chicago**
**Richard M. Daley, Mayor**

Department of Law

Mara S. Georges
Corporation Counsel

Individual Defense Litigation
Suite 1400
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 742-6433
(312) 744-6566 (FAX)
(312) 744-9104 (TTY)

http://www.cityofchicago.org

Andrea Cook
Assistant Corporation Counsel
Federal Civil Rights Litigation
30 N. LaSalle, Suite 900
Chicago, Il 60602
Tel: 312-742-7042
Fax: 312-744-6566



# EXHIBIT E

# THE BLAKE HORWITZ LAW FIRM



Blake Horwitz, Esq.

*Associates*
Dan Zoloth Dorfman, Esq.
Sachin Shah, Esq.
Leah Selinger, Esq.
Uma Bansal, Esq
Mustafa Kamal, Esq.
Davida Berk, Esq.

July 16, 2010

**VIA FACSIMILE AND EMAIL**

Geri Yanow                                      Sanjay Patel, Esq.
Assistant Corporation Counsel, FCRL            Assistant Corporation Counsel
Fax: 312.744.6566                              Fax: 312.744.6566
geri.yanow@cityofchicago.org                   sanjay.patel@cityofchicago.org

Dear Opposing Counsel:

Enclosed is Plaintiffs' combined Request to Admit, Request to Produce and Interrogatories to each Defendant and City of Chicago. The requests have been combined given the number of defendants in the case.

Sincerely,

/s/ Sachin Shah
Sachin Shah
Attorney at Law

Two First National Plaza
20 S. Clark Street, Suite 500, Chicago, IL 60603
Phone: 312-616-4433            Fax:: 312-372-7076

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHERWIN OTT *et al*,

          Plaintiffs,

          Case No. 08 C 6688

          Honorable Judge Shadur
          Magistrate Judge Gilbert

OFFICER ZINCHUCK *et al*

          Defendants.

## PLAINTIFFS' REQUEST TO ADMIT, REQUEST TO PRODUCE AND INTERROGATORIES (COMBINED) TO EACH DEFENDANT *AND* CITY OF CHICAGO[1]

      NOW COME the Plaintiffs, and propound the following discovery to be responded to by each Defendant within thirty days.

**Instructions:**

1. Where a party seeks to refrain from tendering documents directly to Plaintiff's counsel, please send the documents to Aloha Document Service (and/or ask for pick up), located at 55 E. Jackson Blvd., S-310, Chicago, IL 60604, Tel: 312-542-1300. Please do not wait for Plaintiff's counsel to request the copy service for the records; please simply call this service for reproduction.

2. Where multiple items are requested, for example "documents, video, photographs and audio recordings," Plaintiff is asking for the production of **all** items of any category which apply. So, for example, if the responding Defendant only possesses documents and not photographs, then the documents should be produced. The mere fact that a responding party may possess only one item of the categories requested, does not mean that the responding party can properly refuse to tender documents in response.

3. Because there are multiple Plaintiffs and Defendants in this cause of action, information is sought and should be tendered if it is responsive and/or applicable to **any** Plaintiff and/or **any** Defendant. Furthermore, because there are multiple occurrences at various locations and times (closely-related) described in the compliant in this case, information is sought and should be

---

[1] Given the complexity of this litigation concerning the number of officers combined with the factual scenarios attributable thereto, plaintiffs have combined the requests to admit, interrogatories and requests to produce in one document. This approach will hopefully clarify issues and facilitate discovery.

tendered if it is responsive and/or applicable to **any** of the occurrences described in the complaint.

## Definitions:

"Custom" means routine conduct followed by the officers for the Defendant Municipality.

"Practice" means an act done or performed frequently by the police officers of the Defendant Municipality.

"Policy" means a written plan or course of action intended to influence the conduct of officers for the Defendant Municipality.

"Amount of force" refers to the Use of Force Continuum, Use of Force Model and/or Use of Force Paradigm. Whatever the terminology used by the Defendant Municipality, it refers to the amount of force that an officer may use under a particular circumstance, given what he or she is confronted with.

"Video" refers to any type of moving picture medium, for example (but not limited to), DVD, VHS, digital video, streaming video, intranet/internet streaming video, film, mini-cassette recordings, electronic capture of images, or digital images.

"Documents" and/or "documentation" refers to any documents that are in paper form and/or electronic form (including on a computer hard drive, contained in computer/electronic back-ups, and/or e-mails).

"Photograph(s)" includes any type of photographic reproduction found on any medium, including, but not limited to, any type of computer hard drive, back-up drive, back-up system, e-mail system, internet and/or intranet system, paper and/or photographic paper, digital camera or other digital medium, memory card, mobile telephone, removable/external hard drive/data source, DVD and/or CD.

> Instructions for reproduction of photographs: If photographs are retained in a computer of the Defendant Municipality or otherwise retained electronically or digitally, please tender the digital photograph, copied at its highest resolution in electronic form (for example, on a CD or DVD). Usually, a ".bmp" or bitmap format works to copy the digital photograph at its highest resolution. Further, tender any negatives that may exist of any photographs. If photographs are only retained in hard copy form, tender color copies and any negatives.

"Abuse of Authority" refers to the misuse of the power of the office of a police officer. Where a police officer uses his power and/or authority as a police officer to cause an act of misconduct or event to occur, this is considered "abuse of authority."

2

"Identify" means to provide the name, address, and phone number of the person requested.

"Occurrence" or "incident" indicates the event that is the subject of the Complaint as described in the Complaint.

"Statement" means a writing or recording given in narrative form or in response to questions.

**Request to Admit**

1.  The responding Defendant Officer to this Request to Admit came into contact with and/or touched a Plaintiff(s) to this cause on November 4-5, 2008.

Answer:

**Interrogatory**

1.  With regard to any Plaintiff you came into contact with on November 4-5, 2008, please advise as to the following:

    (a) the name of the Plaintiff(s); (b) the reason for which you came into contact with said Plaintiff(s); (c) did you use force; (d) what type of force did you use[2] (e) did you fill out a TRR, (f) how long after the use of force did you fill out a TRR (g) provide the name and star number of the supervisor you advised that you used force; (h) indicate the date and time that you advised said supervisor that you used force, (i) did you place the plaintiff into custody[3] for any period of time, (j) did you document the placing of plaintiff into custody, if so, please indicate the name of the document(s) you used, if any, to document the placing of Plaintiff into custody. With regard to any documents generated in connection with "j" identify who signed the document[4].

---

[2] The use of force and the various type of force that can be used has been taught to the responding defendant in the Chicago Police Academy. Various types of use of force are also identified in TRRs as well as the General Orders for the City of Chicago. Feel free to describe the force as identified in your training, described in the TRRS and/or the General Orders. Here are some examples (not meant by limitation), to provide elucidation as to what is meant by use of force: struck with baton, pepper spray, taser, hand strikes, palm heel strikes, kick, etc..

[3] Here, "custody" means, that you believe that the Plaintiff was not free to leave, due to an interaction an officer had with this plaintiff, for a period of time.

[4] Given that there are times when officers say that they sign reports on behalf of other officers (*i.e.* trial testimony in *Montanez v. City of Chicago*), a specific answer to this question is being asked. A tender of the document will not be sufficient, unless with said tender a certification accompanies the document reflecting that the officer that signed the document is the same officer that actually authored the document.

Answer:

**Request to Produce**

1.  Tender all documentation which contains any information reflected in interrogatory 1(a) – (j).

**Request to Admit**

2.  The responding Defendant Officer to this Request to Admit came into contact with and/or used force with an individual on November 4-5, 2008.

Answer:

**Interrogatory**

2.  With regard to any individual you came into contact with on November 4-5, 2008, please advise as to the following:

    (a) the name of the Plaintiff(s); (b) the reason for which you came into contact with said Plaintiff(s); (c) did you use force; (d) what type of force did you use[5] (e) did you fill out a TRR, (f) how long after the use of force did you fill out a TRR (g) provide the name and star number of the supervisor you advised that you used force; (h) indicate the date and time that you advised said supervisor that you used force, (i) did you place the plaintiff into custody[6] for any period of time, (j) did you document the placing of plaintiff into custody, if so, please indicate the name of the document(s) you used, if any, to document

---

[5] The use of force and the various type of force that can be used has been taught to the responding defendant in the Chicago Police Academy. Various types of use of force are also identified in TRRs as well as the General Orders for the City of Chicago. Feel free to describe the force as identified in your training, described in the TRRS and/or the General Orders. Here are some examples (not meant by limitation), to provide elucidation as to what is meant by use of force: struck with baton, pepper spray, taser, hand strikes, palm heel strikes, kick, etc..

[6] Here, "custody" means, that you believe that the Plaintiff was not free to leave, due to an interaction an officer had with this plaintiff, for a period of time.

4

the placing of Plaintiff into custody. With regard to any documents generated in connection with "j" identify who signed the document[7].

Answer

## Request to Admit to City of Chicago

1. The Responding Officer to Request to Admit #1 and/or #2 has received a sustained CR(s) and/or has received a Spar within the last ten years.

## 1. Interrogatory to City of Chicago.

Indentify violations, of any type (i.e., Rules, General Orders, Municipal) that have been determined to occur (at any level of administration) with regard to the responding officers to the instant discovery, within the last 10 years. In that connection, identify the date of and title of the violation as well as the discipline, if any, generated in connection thereto[8].

## Request to Admit

3. The responding Defendant Officer to this Request to Admit used pepper spray on an individual at some time on November 4-5, 2008.

4. The responding Defendant Officer to this Request to Admit used pepper spray on an individual at some time on November 4-5, 2008 and has not filled out a TRR.

5. There is a Chicago Police Officer that used pepper spray on an individual at some time on November 4-5, 2008 and that has not filled out a TRR.

## 2. Interrogatory to City of Chicago.

Indentify the name of a police officer that used pepper spray on November 4-5, 2008 that did not fill out a TRR.

Answer

---

[7] Given that there are times when officers say that they sign reports on behalf of other officers (i.e. trial testimony in *Montanez v. City of Chicago*), a specific answer to this question is being asked. A tender of the document will not be sufficient, unless with said tender a certification accompanies the document reflecting that the officer that signed the document is the same officer that actually authored the document.
[8] CR histories can be obtained by making a request to IPRA. IPRA can easily make an inquiry with regard to the two databases (Oracle and mainframe) that exist for the City of Chicago.

5

Indentify the number of pepper spray containers that were used on November 4-5, 2008. Identify that star number and name of any officer that used pepper spray on November 4-5, 2008. Identify the make, model number, license plate number and color of any vehicle that carried an officer that was issued pepper spray on November 4-5, 2008. Identify the physical characteristics of the pepper spray container that was used by any officer on November 4-5, 2008[9]

Answer

Provide the name of the individual most knwoeldgeable with regard to the investigation being performed by IPRA concerning Plaintiffs allegations of misconduct on November 4-5, 2008.

Respectfully Submitted,

Blake Horwitz
Attorney for the Plaintiffs

The Blake Horwitz Law Firm, Ltd.
20 S. Clark Street, Suite 500
Chicago, IL 60603
Phone: (312) 676-2100
Fax: (312) 372-7076

---

[9] For example, serial number, design, name of manufacturer, etc.

6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LENNETH SUGGS, SHERWIN OTT,
MICHAEL LEE, CHRISTOPHER COBBS,
MARVIN WIDEMAN, FRANK JAMES,
LATINA WILLIAMS, DARRYLMY
GARNER, KENIFIA MCNEASE, RUTHIE
ROGERS as guardian of LARRENZO
FULTON, YOLANDA FULTON,TIFFANY
THOMAS, KEITH WATTS, ROSALIND
BALL, JEREMY SPENCER, JOVONNA
LIBERTY, LAQUITA BRYANT, MELINDA
ROBINSON, JOSE MCKNIGHT, MOSHAY
BARNES, SHAKEETA CASTLEBERRY,
MARY ANN ROGERS, and CLIFFORD
ARMSTRONG,

        Plaintiffs,

Case No. 08 C 6688

Honorable Judge Shadur
Magistrate Judge Gilbert

OFFICER ZINCHUCK Star No. 3893,
OFFICER DUGGAN, Star No. 4607
OFFICER L. WATKINS, Star No. 17724,
OFFICER WAZNY, Star No. 11019,
OFFICER KROLL, Star No. 14373, OFFICER
LACZ, Star NO. 15609, OFFICER WYROBA,
Star No. 3152, OFFICER FRIGO, Star No.
8585, OFFICER LITTLE, Star No. 885,
UNKNOWN OFFICERS, and the CITY OF
CHICAGO.

        Defendants.

## CERTIFICATE OF SERVICE

The undersigned, certifies that on July 16, 2010, I served Plaintiff's Interrogatories, Request to Produce, and Request to Admit by submitting same via U.S. mail to the following individual(s), at the following address:

Sanjay Patel, Esq.
Assistant Corporation Counsel, FCRL

30 N. LaSalle, Suite 1400
Chicago, IL 60602

Blake Horwitz
Plaintiff's Attorney

The Blake Horwitz Law Firm
20 S. Clark Street, Suite 500
Chicago, IL 60603
Phone: (312) 676-2100
Fax: (312) 372-7076