# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

LATANYA ALEXANDER, as special
administratrix of the estate of LENNETH
SUGGS, SHERWIN OTT, MICHAEL LEE,
CHRISTOPHER COBBS, LATINA
WILLIAMS, DARRYLMY GARNER,
KENIFIA MCNEASE, YOLANDA
FULTON, LARRENZO FULTON,
TIFFANY THOMAS, ROSALIND BALL,
JEREMY SPENCER, JOVANNA
LIBERTY, LAQUITA BRYANT, JOSE
MCKNIGHT, SHAKEETA
CASTLEBERRY, CLIFFORD
ARMSTRONG,

  Plaintiffs,

v.

OFFICER ZINCHUK Star No. 3893,
OFFICER DUGGAN, Star No. 4607,
OFFICER WAZNY, Star No. 11019,
OFFICER KROLL, Star No. 14373,
OFFICER LACZ, Star No. 15609,
OFFICER WYROBA, Star No. 3152,
OFFICER FRIGO, Star No. 8585,
SERGEANT LITTLE, Star No. 885,
SERGEANT KROSKI, Star No. 1777,
SERGEANT STRUKE, Star No. 1039, LT.
STEVENS, Star No. 609, 15th DISTRICT
CDR. GREEN, OFFICER CRISCIONE,
Star No. 16195, OFFICER JACOBUCCI,
Star No. 4783, OFFICER CRISTOBAL,
Star No. 17545, LT. KILROY, Star No. 280,
and the CITY OF CHICAGO,

  Defendants

No. 08 C 6688

Honorable Judge Shadur
Magistrate Judge Gilbert

## FIFTH AMENDED COMPLAINT

NOW COME the PLAINTIFFS LATANYA ALEXANDER as special administratrix of the estate of LENNETH SUGGS, SHERWIN OTT, MICHAEL LEE, CHRISTOPHER COBBS, LATINA WILLIAMS, DARRYLMY GARNER, LARRENZO FULTON, TIFFANY THOMAS, ROSALIND BALL, JEREMY SPENCER, JOVONNA LIBERTY, LAQUITA BRYANT, KENIFIA MCNEASE, YOLANDA FULTON, JOSE MCKNIGHT, SHAKEETA CASTLEBERRY, CLIFFORD ARMSTRONG (hereinafter referred to collectively as "PLAINTIFFS"), by and through their attorney, Blake Horwitz, Esq., of The Blake Horwitz Law Firm, Ltd., and pursuant to this Fifth Amended Complaint at Law, state the following against the above named DEFENDANT OFFICERS, OFFICER ZINCHUK, Star No. 3896, OFFICER DUGGAN, Star No. 4607, OFFICER WAZNY, Star No. 11019, OFFICER KROLL, Star No. 14373, OFFICER LACZ, Star NO. 15609, OFFICER WYROBA, Star No. 3152, OFFICER FRIGO, Star No. 8585, SERGEANT LITTLE, Star No. 885, SERGEANT KROSKI, Star No. 1777, SERGEANT STRUKE, Star No. 1039, LT. STEVENS, Star No. 609, 15th DISTRICT CDR. GREEN, OFFICER CRISCIONE, Star No. 16195, OFFICER JACOBUCCI, Star No. 4783, OFFICER CRISTOBAL, Star No. 17545, LT. KILROY, Star No. 280, (hereinafter referred to collectively as "DEFENDANT OFFICERS"), and the CITY OF CHICAGO.

## JURISDICTION

1. This Court has jurisdiction over the PLAINTIFFS' federal claims in the above-entitled action pursuant to the Civil Rights Act of 1871, 42 U.S.C. §1983 and 1985(3), and 28 U.S.C. §§1331 and 1343(a) and over PLAINTIFFS' state law claims pursuant to the Court's supplemental jurisdiction under 28 U.S.C. §1367(a). Venue is appropriate in this Court, pursuant to 28 U.S.C. §1391(b), because the events alleged in this Amended

Complaint took place in this District and all the DEFENDANT OFFICERS reside therein.

## PARTIES

2. At all relevant times, the DEFENDANT OFFICERS were residents of the City of Chicago, Illinois.

3. At all relevant times, the DEFENDANT OFFICERS were employed by and acting on behalf of the CITY OF CHICAGO.

4. The CITY OF CHICAGO is a duly incorporated municipal corporation.

5. At all relevant times, the CITY OF CHICAGO was the employer and principal of the DEFENDANT OFFICERS.

6. At all relevant times, the DEFENDANT OFFICERS were acting under color of state law, ordinance or regulation, statutes, custom and usages of the CITY OF CHICAGO.

7. At all relevant times, the DEFENDANT OFFICERS were on duty and were duly appointed police officers for the CITY OF CHICAGO.

8. The DEFENDANT OFFICERS engaged in the conduct that is the subject of this action in the course and scope of their employment and while on duty.

9. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, DEFENDANT OFFICERS were assigned to the 15th District.

10. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, COMMANDER GREEN was the Commander of the 15th District.

11. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, LTs. STEVENS and KILROY were on duty as lieutenants with the 15th District.

12. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, SGTs. LITTLE, KROSKI, AND STRUKE were on duty as sergeants with the 15th District.

13. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, SGT. Little was supervising DEFENDANT OFFICERS WAZNY, LACZ, WYROBA, KROLL, FRIGO, DUGGAN, and ZINCHUK (hereinafter referred to as "SGT. LITTLE'S TEAM").

14. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, SGT. KROSKI'S was supervising DEFENDANT OFFICERS CRISCIONE, JACCOBUCCI, and CRISTOBAL (hereinafter referred to as "SGT. KROSI'S TEAM").

15. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, LT. STEVENS was the watch commander for the DEFENDANT OFFICERS.

16. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, LT. STEVENS was one of the supervisors for SGTs. LITTLE, KROSKI, AND STRUKE.

17. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, LT. KILROY was the tactical lieutenant for the DEFENDANT OFFICERS.

18. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, LT. KILROY was one of the supervisors for SGTs. LITTLE, KROSKI, AND STRUKE.

19. At all relevant times, District Commander GREEN condoned, approved of, and/or turned a blind eye to the DEFENDANT OFFICERS' conduct described more specifically in this Amended Complaint.

20. At all relevant times, LT. STEVENS condoned, approved of, and/or turned a blind eye to his subordinate DEFENDANT OFFICERS' conduct described more

specifically in this Amended Complaint.

21. At all relevant times, LT. KILROY condoned, approved of, and/or turned a blind eye to his subordinate DEFENDANT OFFICERS' conduct described more specifically in this Amended Complaint.

22. At all relevant times, SGT. LITTLE condoned, approved of, and/or turned a blind eye to his subordinate DEFENDANT OFFICERS' conduct described more specifically in this Amended Complaint.

23. At all relevant times, SGT. KROSKI condoned, approved of, and/or turned a blind eye to his subordinate DEFENDANT OFFICERS' conduct described more specifically in this Amended Complaint.

24. At all relevant times, SGT. STRUKE condoned, approved of, and/or turned a blind eye to his subordinate DEFENDANT OFFICERS' conduct described more specifically in this Amended Complaint.

25. District Commander GREEN, LT. KILROY, LT. STEVENS, SGT. LITTLE, SGT. KROSKI, and SGT. STRUKE are being sued in their capacity as supervisors.

26. The action is brought against District Commander GREEN, LT. KILROY, LT. STEVENS, SGT. LITTLE, SGT. KROSKI, and SGT. STRUKE in their individual capacities.

**FACTS RELATING TO PLAINTIFFS SHAKEETA CASTLEBERRY, MICHAEL LEE, KENIFIA MCNEASE, JOVANNA LIBERTY, LAQUITA BRYANT, JEREMY SPENCER, LENNETH SUGGS, DARRYLMY GARNER, SHERWIN OTT, and TIFFANY THOMAS AGAINST ALL DEFENDANT OFFICERS**

27.     On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, DEFENDANT OFFICERS and other Chicago Police officers patrolled in both marked and unmarked police vehicles.

28.     On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, DEFENDANT OFFICERS and other Chicago Police officers patrolled in police vehicles in the 15th District.

29.     On the evening of November 4, 2008, LT. KILROY issued large canisters of *oleoresin capsicum* (commonly called "OC" or "pepper spray") to many of the DEFENDANT OFFICERS to carry during their shift.

30.     On the evening of November 4, 2008, LT. STEVENS issued large canisters of *oleoresin capsicum* (commonly called "OC" or "pepper spray") to many of the DEFENDANT OFFICERS to carry during their shift.

31.     On the evening of November 4, 2008, LT. KILROY authorized DEFENDANT OFFICERS to use OC spray to disperse crowds in the 15th District.

32. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, DEFENDANT LT. KILROY ordered that DEFENDANT OFFICERS follow behind him and his patrol car in a caravan (hereinafter referred to as "the caravan") for the remainder of the evening of November 4, 2008 into the early morning of November 5, 2008.

33. District Commander GREEN was present when LT. KILROY gave the caravan order.

34. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, each Sergeant (and his team) reporting to LT. KILROY were a part of the caravan.

35. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, District Commander GREEN, LT. KILROY, and LT. STEVENS rode in the same car in the caravan.

36.     The caravan traveled along West Chicago Avenue.

37.     The caravan traveled along West Madison Street.

38.     The caravan traveled within three blocks to the east and west of Laramie Avenue.

39.     The boundaries of the caravan were West Madison Street, West Chicago Avenue, Pine Avenue, and Laramie Avenue.

40.     The caravan drove through the bounded area at least three times.

41.     The caravan drove by the intersection of West Lake Street and Laramie Avenue.

42.     The caravan drove on West Fulton Street between Latrobe Avenue and Laramie Avenue.

43.     On the evening of November 4, 2008 into the early morning of November 5, 2008, the caravan passed by PLAINTIFFS SHAKEETA CASTLEBERRY, MICHAEL LEE, KENIFIA MCNEASE, JOVANNA LIBERTY, LAQUITA BRYANT, JEREMY SPENCER, LENNETH SUGGS, DARRYLMY GARNER, SHERWIN OTT, and TIFFANY THOMAS (hereinafter "GROUP PLAINTIFFS A").

44.     DEFENDANT CITY OF CHICAGO's police department is a paramilitary organization with a command structure.

45.     DEFENDANT CITY OF CHICAGO police officers are required to follow the orders of their superior officers, including Lieutenants.

46.     On the evening of November 4, 2008 into the early morning of November 5, 2008, LT. KILROY was the supervisory Lieutenant for all DEFENDANT OFFICERS except District COMMANDER GREEN and LT. STEVENS.

47.     On the evening of November 4, 2008 into the early morning of November 5, 2008, LT. KILROY gave the order (hereinafter "the order") to discharge canisters of MK-IV OC.

48.     LT. KILROY gave the order to DEFENDANT OFFICERS in the caravan.

49.     LT. KILROY gave the order to discharge pepper spray in the direction of the crowds on

either side of the caravan.

50. LT. KILROY expected that the DEFENDANT OFFICERS would follow his order.

51.  DEFENDANT OFFICERS followed the order.

52. LT. KILROY did not know if it was necessary that DEFENDANT OFFICERS follow the order.

53. LT. KILROY did not know if it was necessary that DEFENDANT OFFICERS discharge pepper spray on individuals within five minutes of giving the order to discharge spray.

54. On the evening of November 4, 2008 into the early morning of November 5, 2008, DEFENDANT OFFICERS discharged pepper spray on individuals at or around the intersection of W Lake Street and N Laramie Avenue.

55. On the evening of November 4, 2008 into the early morning of November 5, 2008, DEFENDANT OFFICERS discharged pepper spray on individuals on W Fulton Street at or around the intersections of N Latrobe Avenue and N Laramie Avenue.

56.  On November 5, 2008, the caravan stopped at 130 N. Laramie, the intersection of Laramie and Maypole.

57. Between the time in the caravan was formed and the time at which the caravan stopped at 130 N. Laramie, the intersection of Laramie and Maypole, LT. KILROY did not observe any behavior from any citizen that would have justified the use of pepper spray by the officers in the caravan.

58. On or about the evening of November 4, 2008 LT. KILROY ordered the DEFENDANT OFFICERS to use pepper spray on the Plaintiffs and people near the Plaintiffs.

59. On or about the evening of November 4, 2008, CITY OF CHICAGO POLICE OFFICERS, including but not limited to DEFENDANT OFFICERS, discharged pepper spray on GROUP

PLAINTIFFS A.

60. On the evening of November 4, 2008 into the early morning of November 5, 2008, GROUP PLAINTIFFS A were hit by the pepper spray sprayed by the DEFENDANT OFFICERS.

61. The discharge of pepper spray on GROUP PLAINTIFFS A constituted a seizure of GROUP PLAINTIFFS A.

62. On the evening of November 4, 2008 into the early morning of November 5, 2008, DEFENDANT OFFICERS did not witness any member of GROUP PLAINTIFFS A commit a crime.

63. On the evening of November 4, 2008 into the early morning of November 5, 2008, DEFENDANT OFFICERS did not have probable cause to believe that any member of GROUP PLAINTIFFS A committed a crime.

64. On the evening of November 4, 2008 into the early morning of November 5, 2008, DEFENDANT OFFICERS did not have probable cause to believe that any individual within 50 feet of any member of GROUP PLAINTIFFS A committed a crime.

65. At the time in which the DEFENDANT OFFICERS sprayed the members of GROUP PLAINTIFFS A, the members of GROUP PLAINTIFFS A were engaged in peaceful activities.

66. At the time in which the DEFENDANT OFFICERS sprayed the members of GROUP PLAINTIFFS A, no DEFENDANT OFFICER had any knowledge that GROUP PLAINTIFFS presented any threat or danger to any DEFENDANT OFFICERS, any other Chicago Police Officer, or any other person.

67. On the evening of November 4, 2008 into the early morning of November 5, 2008, DEFENDANT OFFICERS sprayed the members of GROUP PLAINTIFFS A without

provocation or legal justification and without making any individual assessments as to the necessity of pepper-spraying the members of GROUP PLAINTIFFS A.

68. On or about the evening of November 4, 2008, OFFICER KROLL struck PLAINTIFF LENNETH SUGGS with a baton.

69. On the evening of November 4, 2008 into the early morning of November 5, 2008, no DEFENDANT OFFICER, including OFFICER KROLL, witnessed PLAINTIFF LENNETH SUGGS commit a crime.

70. On the evening of November 4, 2008 into the early morning of November 5, 2008, no DEFENDANT OFFICER, including OFFICER KROLL, had probable cause to believe that PLAINTIFF LENNETH SUGGS committed a crime.

71. At the time in which OFFICER KROLL struck PLAINTIFF LENNETH SUGGS, PLAINTIFF LENNETH SUGGS was engaged in peaceful activities.

72. At the time in which OFFICER KROLL struck PLAINTIFF LENNETH SUGGS, no DEFENDANT OFFICER, including OFFICER KROLL, had any knowledge that PLAINTIFF LENNETH SUGGS presented any threat or danger to any DEFENDANT OFFICERS, any other Chicago Police Officer, or any other person.

73. DEFENDANT OFFICERS knew the discharging of pepper spray on GROUP PLAINTIFFS A was unreasonable and excessive.

74. DEFENDANT OFFICERS had a reasonable opportunity to prevent the discharging of pepper spray on GROUP PLAINTIFFS A.

75. DEFENDANT OFFICERS failed to intervene in the discharging of pepper spray on GROUP PLAINTIFFS A.

76. DEFENDANT OFFICERS conspired to cover up the discharging of pepper spray on GROUP

PLAINTIFFS A.

**FACTS RELATING TO PLAINTIFFS ROSALIND BALL, LATINA WILLIAMS, JOSE MCKNIGHT, CLIFFORD ARMSTRONG, CHRIS COBBS, and LARRENZO FULTON AGAINST DEFENDANTS LITTLE, WAZNY, LACZ, WYROBA, KROLL, FRIGO, DUGGAN, and ZINCHUK**

77. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, SGTs.  LITTLE was on duty with the 15th District and was reporting to LT. KILROY.

78. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, SGT.  LITTLE'S team consisted of DEFENDANT OFFICERS WAZNY, LACZ, WYROBA, KROLL, FRIGO, DUGGAN, and ZINCHUK (hereinafter referred to as "SGT. LITTLE'S TEAM").

79. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, SGT. LITTLE'S TEAM encountered PLAINTIFFS ROSALIND BALL, LATINA WILLIAMS, JOSE MCKNIGHT, CLIFFORD ARMSTRONG, CHRIS COBBS, and LARRENZO FULTON (hereinafter "GROUP PLAINTIFFS B").

80. 157 N. Latrobe Avenue, Chicago, Illinois, is next to or very close to 167 N. Latrobe Avenue, Chicago, Illinois.

81. SGT. LITTLE'S TEAM encountered PLAINTIFFS LARRENZO FULTON and CHRIS COBBS at or near 157 N. Latrobe.

82. One or more officers in SGT. LITTLE'S TEAM discharged pepper spray on PLAINTIFFS LARRENZO FULTON and CHRIS COBBS.

83.  One or more officers in SGT. LITTLE'S TEAM slammed PLAINTIFF LARRENZO FULTON to the ground and kicked PLAINTIFF LARRENZO FULTON.

84. On or about the evening of November 4, 2008, no officer in SGT. LITTLE'S TEAM witnessed PLAINTIFFS LARRENZO FULTON and CHRIS COBBS commit a crime.

85. On or about the evening of November 4, 2008, no officer in SGT. LITTLE'S TEAM had probable cause to believe that PLAINTIFFS LARRENZO FULTON and CHRIS COBBS committed a crime.

86. At the time in which one or more officers in SGT. LITTLE'S TEAM sprayed PLAINTIFFS LARRENZO FULTON and CHRIS COBBS, no officers in SGT. LITTLE'S TEAM had any knowledge that PLAINTIFFS LARRENZO FULTON and CHRIS COBBS presented no threat or danger to any officers in SGT. LITTLE'S TEAM, any other Chicago Police Officer, or any other person.

87. SGT. LITTLE's TEAM conspired to cover up the pepper spraying and excessive force against PLAINTIFFS LARRENZO FULTON and CHRIS COBBS.

88. Immediately after being sprayed with pepper spray at 157 N. Latrobe Avenue, Chicago, Illinois, PLAINTIFF CHRIS COBBS ran to or near 167 N. Latrobe Avenue, Chicago, Illinois.

89. SGT. LITTLE'S TEAM encountered PLAINTIFFS ROSALIND BALL, LATINA WILLIAMS, JOSE MCKNIGHT, CLIFFORD ARMSTRONG, CHRIS COBBS in the yards of 167 N. Latrobe.

90. DEFENDANT OFFICER ZINCHUK discharged pepper spray on PLAINTIFF JOSE MCKNIGHT.

91. DEFENDANT OFFICER ZINCHUK arrested PLAINTIFF JOSE MCKNIGHT.

92. DEFENDANT OFFICER KROLL discharged pepper spray on PLAINTIFF CLIFFORD ARMSTRONG.

93. DEFENDANT OFFICER KROLL arrested PLAINTIFF CLIFFORD ARMSTRONG.

94. One or more officers in SGT. LITTLE'S TEAM discharged pepper spray on PLAINTIFFS

ROSALIND BALL and CHRIS COBBS.

95. One or more officers in SGT. LITTLE'S TEAM threw PLAINTIFFS ROSALIND BALL, LATINA WILLIAMS, and CHRIS COBBS to the ground.

96. One or more officers in SGT. LITTLE'S TEAM handcuffed PLAINTIFF ROSALIND BALL.

97. One or more officers in SGT. LITTLE'S TEAM arrested PLAINTIFF LATINA WILLIAMS.

98. One or more officers in SGT. LITTLE'S TEAM placed PLAINTIFF LATINA WILLIAMS in a Chicago police vehicle.

99. One or more officers in SGT. LITTLE'S TEAM transported PLAINTIFF LATINA WILLIAMS to a police station.

100. PLAINTIFF LATINA WILLIAMS was never charged with a crime.

101. The actions of SGT. LITTLE'S TEAM against PLAINTIFFS ROSALIND BALL, LATINA WILLIAMS, and CHRIS COBBS constituted a seizure of PLAINTIFFS ROSALIND BALL, LATINA WILLIAMS, and CHRIS COBBS.

102. On or about the evening of November 4, 2008, no officer in SGT. LITTLE'S TEAM witnessed PLAINTIFFS JOSE MCKNIGHT, CLIFFORD ARMSTRONG, ROSALIND BALL, CHRIS COBBS, or LATINA WILLIAMS commit a crime.

103. On or about the evening of November 4, 2008, no officer in SGT. LITTLE'S TEAM had probable cause to believe that PLAINTIFFS JOSE MCKNIGHT, CLIFFORD ARMSTRONG, ROSALIND BALL, CHRIS COBBS, or LATINA WILLIAMS committed a crime.

104. At the time in which one or more officers in SGT. LITTLE'S TEAM sprayed and/or

seized PLAINTIFFS J O S E  M C K N I G H T ,  C L I F F O R D  A R M S T R O N G ,
ROSALIND BALL, CHRIS COBBS, or LATINA WILLIAMS, no officers in SGT.
LITTLE'S TEAM had any knowledge that any Plaintiff in GROUP PLAINTIFFS B
presented any threat or danger to any officers in SGT. LITTLE'S TEAM, any other Chicago
Police Officer, or any  other person.

105.    Officers in SGT. LITTLE'S TEAM knew the  discharging of pepper spray and/or other
seizing of GROUP PLAINTIFFS B was unreasonable and excessive.

106.    Officers in SGT. LITTLE'S TEAM had a reasonable opportunity to prevent the pepper
spraying and/or other seizure of GROUP PLAINTIFFS B.

107.    Officers in SGT. LITTLE'S TEAM failed to intervene in the  discharging of pepper spray
and/or other seizure of GROUP PLAINTIFFS B.

108.    Officers in SGT. LITTLE'S TEAM conspired to cover up the  discharging of pepper
spray and/or other seizure of GROUP PLAINTIFFS B.

109.    Officers in SGT. LITTLE'S TEAM knew the  arrests of PLAINTIFFS J O S E
M C K N I G H T ,  C L I F F O R D  A R M S T R O N G ,  a n d  L A T I N A
W I L L I A M S   were without probable cause.

110.    Officers in SGT. LITTLE'S TEAM had a reasonable opportunity to prevent the false
arrest of PLAINTIFFS J O S E  M C K N I G H T ,  C L I F F O R D  A R M S T R O N G ,
a n d  L A T I N A  W I L L I A M S .

111.    Officers in SGT. LITTLE'S TEAM failed to intervene in the  false arrest of PLAINTIFFS
J O S E  M C K N I G H T ,  C L I F F O R D  A R M S T R O N G ,  a n d  L A T I N A
W I L L I A M S .

112.    Officers in SGT. LITTLE'S TEAM conspired to cover up the  false arrest of PLAINTIFFS

JOSE MCKNIGHT, CLIFFORD ARMSTRONG, and LATINA WILLIAMS.

## FACTS RELATING TO PLAINTIFF YOLANDA FULTON AGAINST DEFENDANT CITY OF CHICAGO

113.    152 N. Latrobe Avenue, Chicago, Illinois, is across the street from or very close to 167 N. Latrobe Avenue, Chicago, Illinois.

114.    A CITY OF CHICAGO POLICE OFFICER encountered PLAINTIFF YOLANDA FULTON at or near 152 N. Latrobe.

115.    A CITY OF CHICAGO POLICE OFFICER discharged pepper spray on PLAINTIFF YOLANDA FULTON.

116.     A CITY OF CHICAGO POLICE OFFICER pushed PLAINTIFF YOLANDA FULTON against a railing.

117.    On or about the evening of November 4, 2008, no CITY OF CHICAGO POLICE OFFICER witnessed PLAINTIFF YOLANDA FULTON commit a crime.

118.    On or about the evening of November 4, 2008, no CITY OF CHICAGO POLICE OFFICER had probable cause to believe that PLAINTIFF YOLANDA FULTON committed a crime.

119.    At the time in which a CITY OF CHICAGO POLICE OFFICER sprayed and pushed PLAINTIFF YOLANDA FULTON, no CITY OF CHICAGO POLICE OFFICER had any knowledge that PLAINTIFF YOLANDA FULTON presented any threat or danger to any Chicago Police Officer or any other person.

## FACTS RELATING TO THE SPOILATION OF EVIDENCE

120.    On and after the evening of November 4, 2008, LT. KILROY and many or all of the DEFENDANT OFFICERS, through willful and wanton, and/or negligent action, spoiled

evidence of their wrongdoing laid out in this Complaint.

121.    According to the DEFENDANT CITY OF CHICAGO's general orders to police officers, pepper spray is a weapon and the discharge of pepper spray is a use of force for which a Chicago Police Officer is required to complete a "Tactical Response Report" ("TRR").

122.    There is no exception to this requirement for the indiscriminate discharge of pepper spray against innocent civilians who pose no threat to the officers or the general public.

123.    DEFENDANT OFFICERS therefore had a duty to complete and preserve TRRs in relation to this incident.

124.    Nevertheless, only 21 TRRs were completed and filed in connection with the use of pepper spray at issue in this action.

125.    DEFENDANT OFFICERS who did not complete TRRs acted willfully and wantonly, and/or negligently, in their failure to create and/or preserve TRRs detailing the use of pepper spray in this incident.

126.    One or more DEFENDANT OFFICERS' failure to create and/or preserve TRRs for this incident made it difficult or impossible for PLAINTIFFS to identify the wrongdoers and thereby to seek legal redress for injuries and claims.

127.    One or more DEFENDANT OFFICERS who did complete a TRR did so fraudulently and in such a manner as to hide evidence relating to this claim.

128.    One or more DEFENDANT OFFICERS who completed a report known as a "to/from" did so fraudulently and in such a manner as to hide evidence relating to this claim.

129.    One or more DEFENDANT OFFICERS' creation of falsified TRRs and falsified to/froms for this incident made it difficult or impossible for PLAINTIFFS to identify the wrongdoers and thereby to seek legal redress for injuries and claims.

130.    Furthermore, to the extent a jury may find GROUP PLAINTIFFS A cannot prove the

identity of any, some, many or all of the UNKNOWN CITY OF CHICAGO POLICE

OFFICERSS, this is due to the fact that LT. KILROY, the UNKNOWN CITY OF

CHICAGO POLICE OFFICERSS, and DEFENDANT THE CITY OF CHICAGO, its

agents, or principals, engaged in individual actions, as well as collective actions, to deny

the GROUP PLAINTIFFS A to civil courts by engaging in actions described more

specifically in this complaint.

131.    Thus, the denial of access to civil courts claims in this case are plead in this case as

alternative remedies.

### COUNT I
### §1983 Claim for Excessive Force/Failure to Intervene
### PLAINTIFFS SHAKEETA CASTLEBERRY, MICHAEL LEE, KENIFIA MCNEASE,
### JOVANNA LIBERTY, LAQUITA BRYANT, JEREMY SPENCER, LENNETH SUGGS,
### DARRYLMY GARNER, SHERWIN OTT, and TIFFANY THOMAS
### (GROUP PLAINTIFFS A) AGAINST DEFENDANT OFFICERS

132.    GROUP PLAINTIFFS A re-allege paragraphs 1-131 as though fully set forth herein.

133.    On or about November 4, 2008, DEFENDANT OFFICERS lacked probable cause or

a legal basis to believe that GROUP PLAINTIFFS A had violated any law or were using

force against any police officers or other persons.

134.    Nevertheless, DEFENDANT OFFICERS pepper-sprayed GROUP PLAINTIFFS A on

the orders of LT. KILROY without provocation and without legal justification.

135.    DEFENDANT OFFICERS failed to intervene in the use of force against GROUP

PLAINTIFFS A, even though the DEFENDANT OFFICERS were aware that this use of

force was unreasonable and excessive and despite having a reasonable opportunity to prevent

it.

136.    The actions of the DEFENDANT OFFICERS were the direct and proximate cause of

the constitutional violations and the resulting injuries that GROUP PLAINTIFFS A sustained.

137.    The use of force upon GROUP PLAINTIFFS A and the failure to intervene were unreasonable and excessive and therefore violated the Fourth Amendment to the United States Constitution.

WHEREFORE, PLAINTIFFS MICHAEL LEE, JEREMY SPENCER, LENNETH SUGGS, DARRYLMY GARNER, TIFFANY THOMAS, KENIFIA MCNEASE, JOVANNA LIBERTY, LAQUITA BRYANT, SHERWIN OTT, and SHAKEETA CASTLEBERRY demand compensatory damages, punitive damages, costs and attorneys' fees against DEFENDANT OFFICERS as well as any additional relief this Court deems equitable and just.

**COUNT II**
**§1983 Claim for Excessive Force**
**PLAINTIFFS LENNETH SUGGS AGAINST OFFICER KROLL**

138.    PLAINTIFF LENNETH SUGGS re-alleges paragraphs 1-131as though fully set forth herein.

139.    On or about November 4, 2008, OFFICER KROLL lacked probable cause or a legal basis to believe that PLAINTIFF LENNETH SUGGS had violated any law or were using force against any police officers or other persons.

140.    Nevertheless, OFFICER KROLL struck PLAINTIFF LENNETH SUGGS with a baton without provocation and without legal justification.

141.    The actions of OFFICER KROLL were the direct and proximate cause of the constitutional violations and the resulting injuries that PLAINTIFF LENNETH SUGGS sustained.

142.   The use of force upon PLAINTIFF LENNETH SUGGS was unreasonable and excessive and therefore violated the Fourth Amendment to the United States Constitution.

WHEREFORE, PLAINTIFF LENNETH SUGGS demand compensatory damages, punitive damages, costs and attorneys' fees against OFFICER KROLL as well as any additional relief this Court deems equitable and just.


**COUNT III**
**State Law Claim for Battery**
**PLAINTIFFS SHAKEETA CASTLEBERRY, MICHAEL LEE, KENIFIA MCNEASE, JOVANNA LIBERTY, LAQUITA BRYANT, JEREMY SPENCER, LENNETH SUGGS, DARRYLMY GARNER, SHERWIN OTT, and TIFFANY THOMAS (GROUP PLAINTIFFS A) AGAINST DEFENDANT CITY OF CHICAGO**

143.   GROUP PLAINTIFFS A re-allege paragraphs 1-131 as though fully set forth herein.

144.   One or more CITY OF CHICAGO POLICE OFFICERS battered GROUP PLAINTIFFS A by pepper-spraying and/or striking them without their consent and without legal justification.

145.   The use of pepper spray on GROUP PLAINTIFFS A violated Illinois state law.

146.   The actions of one or more CITY OF CHICAGO POLICE OFFICERS were the direct and proximate cause of the battery and the resulting injuries that GROUP PLAINTIFFS A sustained.

147.   The batteries against GROUP PLAINTIFFS A were committed willfully and wantonly, in the course and scope of their employment, and thus DEFENDANT CITY OF CHICAGO is liable based on a theory of *respondeat superior*.

WHEREFORE, PLAINTIFFS MICHAEL LEE, JEREMY SPENCER, LENNETH SUGGS, DARRYLMY GARNER, TIFFANY THOMAS, KENIFIA MCNEASE, JOVANNA LIBERTY, LAQUITA BRYANT, SHERWIN OTT, and SHAKEETA CASTLEBERRY

demand compensatory damages and costs against DEFENDANT CITY OF CHICAGO, as

well as any additional relief this Court deems equitable and just.

### COUNT IV
### §1983 Claim for Excessive Force/Failure to Intervene
### PLAINTIFFS ROSALIND BALL, LATINA WILLIAMS, JOSE MCKNIGHT, CLIFFORD ARMSTRONG, CHRIS COBBS, LARRENZO FULTON (GROUP PLAINTIFFS B), and AGAINST SGT. LITTLE'S TEAM

148.    GROUP PLAINTIFFS B re-allege paragraphs 1-131as though fully set forth herein.

149.    On or about November 4, 2008, SGT. LITTLE'S TEAM lacked probable cause or a

legal basis to believe that GROUP PLAINTIFFS B had violated any law or were using

force against themselves, any other police officers or any other person.

150.    Nevertheless, SGT. LITTLE'S TEAM individually and/or as a group, pepper-sprayed

and/or otherwise battered GROUP PLAINTIFFS B without provocation and without legal

justification.

151.    SGT. LITTLE'S TEAM failed to intervene in the use of force upon GROUP

PLAINTIFFS B, even though SGT. LITTLE'S TEAM was aware that this use of force was

unreasonable and excessive and despite having a reasonable opportunity to prevent it.

152.    The use of force upon GROUP PLAINTIFFS B and the failure to intervene were

unreasonable and excessive and thereby violated the Fourth Amendment to the United

States Constitution.

153.    The actions of SGT. LITTLE'S TEAM were the direct and proximate cause of the

constitutional violations and the resulting injuries that GROUP PLAINTIFFS B sustained.

WHEREFORE, PLAINTIFFS ROSALIND BALL, LATINA WILLIAMS, JOSE

MCKNIGHT, CLIFFORD ARMSTRONG, CHRIS COBBS, and LARRENZO FULTON

demand compensatory damages, punitive damages, costs and attorneys' fees from SGT.

LITTLE'S TEAM as well as any additional relief this Court deems equitable and just.

**COUNT V**
**State Law Claim for Battery**
**PLAINTIFFS ROSALIND BALL, LATINA WILLIAMS, JOSE MCKNIGHT,**
**CLIFFORD ARMSTRONG, CHRIS COBBS, and LARRENZO FULTON (GROUP**
**PLAINTIFFS B) and YOLANDA FULTON AGAINST DEFENDANT CITY OF CHICAGO**

154. GROUP PLAINTIFFS B and PLAINTIFF YOLANDA FULTON re-allege paragraphs

1-131as though fully set forth herein.

155. One or more CITY OF CHICAGO POLICE OFFICERS battered GROUP PLAINTIFFS B

and PLAINTIFF YOLANDA FULTON by pepper-spraying and/or striking them without

their consent and without legal justification.

156. The use of pepper spray on GROUP PLAINTIFFS B and PLAINTIFF YOLANDA

FULTON violated Illinois state law.

157. The actions of one or more CITY OF CHICAGO POLICE OFFICERS were the direct

and proximate cause of the battery and the resulting injuries that GROUP PLAINTIFFS

B and PLAINTIFF YOLANDA FULTON sustained.

158. The batteries against GROUP PLAINTIFFS B and PLAINTIFF YOLANDA FULTON

were committed willfully and wantonly, in the course and scope of their employment, and

thus DEFENDANT CITY OF CHICAGO is liable based on a theory of *respondeat superior*.

WHEREFORE, PLAINTIFFS ROSALIND BALL, LATINA WILLIAMS, JOSE

MCKNIGHT, CLIFFORD ARMSTRONG, CHRIS COBBS, YOLANDA FULTON, and

LARRENZO FULTON demand compensatory damages and costs against DEFENDANT

CITY OF CHICAGO, as well as any additional relief this Court deems equitable and just.

**COUNT VI**
**§1983 Claim for False Arrest/Failure to Intervene**
**PLAINTIFFS LATINA WILLIAMS, JOSE MCKNIGHT, and**
**CLIFFORD ARMSTRONG AGAINST SGT. LITTLE'S TEAM**

159.    PLAINTIFFS LATINA WILLIAMS, JOSE MCKNIGHT, and CLIFFORD ARMSTRONG re-allege paragraphs 1-131as though fully set forth herein.

160.    Officers on SGT. LITTLE'S TEAM did not have a reasonable belief that PLAINTIFFS LATINA WILLIAMS, JOSE MCKNIGHT, or CLIFFORD ARMSTRONG had committed, were committing or were about to commit any criminal acts. Therefore, SGT. LITTLE'S TEAM lacked probable cause to arrest these PLAINTIFFS LATINA WILLIAMS, JOSE MCKNIGHT, a n d CLIFFORD ARMSTRONG and their conduct in arresting these PLAINTIFFS violated the Fourth Amendment to the United States Constitution.

161.    The actions of SGT. LITTLE'S TEAM alleged herein were the direct and proximate cause of the constitutional violations and the resulting injuries that PLAINTIFFS LATINA WILLIAMS, JOSE MCKNIGHT, and CLIFFORD ARMSTRONG sustained.

162.    Additionally, SGT. LITTLE'S TEAM knew PLAINTIFFS LATINA WILLIAMS, JOSE MCKNIGHT, and CLIFFORD ARMSTRONG were being arrested without any lawful justification, had the reasonable opportunity to prevent the false arrest, yet failed to do so.

WHEREFORE, PLAINTIFFS LATINA WILLIAMS, JOSE MCKNIGHT, and CLIFFORD ARMSTRONG demand compensatory damages, punitive damages, costs and attorneys' fees against SGT. LITTLE'S TEAM, as well as any additional relief this Court deems equitable and just.

**COUNT VII**
**State Law Claim for False Imprisonment**
**PLAINTIFFS LATINA WILLIAMS, JOSE MCKNIGHT,**
**and CLIFFORD ARMSTRONG AGAINST DEFENDANT CITY OF CHICAGO**

163.    PLAINTIFFS LATINA WILLIAMS, JOSE MCKNIGHT, and CLIFFORD ARMSTRONG re-allege paragraphs 1-131as though fully set forth herein.

164.    One or more CITY OF CHICAGO POLICE OFFICERS did not have a reasonable belief that PLAINTIFFS LATINA WILLIAMS, JOSE MCKNIGHT, or CLIFFORD ARMSTRONG had committed, were committing or were about to commit any criminal acts. Therefore, one or more CITY OF CHICAGO POLICE OFFICERS lacked probable cause to arrest these PLAINTIFFS LATINA WILLIAMS, JOSE MCKNIGHT, a n d CLIFFORD ARMSTRONG and their conduct in arresting these PLAINTIFFS violated the Constitution of the State of Illinois and Illinois law.

165.    The actions of one or more CITY OF CHICAGO POLICE OFFICERS alleged herein were the direct and proximate cause of the state law violations and the resulting injuries that PLAINTIFFS LATINA WILLIAMS, JOSE MCKNIGHT, and CLIFFORD ARMSTRONG sustained.

166.    The false imprisonment committed against PLAINTIFFS LATINA WILLIAMS, JOSE MCKNIGHT, and CLIFFORD ARMSTRONG was done willfully and wantonly, in the course and scope of their employment, and thus DEFENDANT CITY OF CHICAGO is liable based on a theory of *respondeat superior*.

WHEREFORE, PLAINTIFFS LATINA WILLIAMS, JOSE MCKNIGHT, and CLIFFORD ARMSTRONG demand compensatory damages and costs against DEFENDANT CITY OF CHICAGO as well as any additional relief this Court deems equitable and just.

**COUNT VII**
**State Law Claim for Malicious Prosecution**
**PLAINTIFFS JOSE MCKNIGHT and CLIFFORD ARMSTRONG**
**AGAINST DEFENDANT CITY OF CHICAGO**

167.    PLAINTIFFS JOSE MCKNIGHT and CLIFFORD ARMSTRONG re-allege paragraphs

1-131as though fully set forth herein.

168. One or more CITY OF CHICAGO POLICE OFFICERS, acting within the course and scope of their employment with the CITY OF CHICAGO, alleged, signed criminal complaints, and/or played a substantial role in prosecutions that charged PLAINTIFFS JOSE MCKNIGHT and CLIFFORD ARMSTRONG with violating laws of the State of Illinois.

169. One or more CITY OF CHICAGO POLICE OFFICERS continued a criminal proceeding against these PLAINTIFFS.

170. One or more CITY OF CHICAGO POLICE OFFICERS engaged in this effort without probable cause.

171. The underlying criminal charges were resolved in a manner indicative of innocence.

172. The actions alleged above were the direct and proximate cause of the violations of Illinois state law and the injuries sustained by PLAINTIFFS JOSE MCKNIGHT and CLIFFORD ARMSTRONG, as set forth above.

173. The actions alleged above were done willfully and wantonly, in the course and scope of their employment, and thus DEFENDANT CITY OF CHICAGO is liable based on a theory of *respondeat superior*.

WHEREFORE, PLAINTIFFS JOSE MCKNIGHT and CLIFFORD ARMSTRONG demand compensatory damages and costs against DEFENDANT CITY OF CHICAGO as well as any additional relief this Court deems equitable and just.

## COUNT VIII
### State Law Claim for Spoliation of Evidence
### PLAINTIFFS AGAINST DEFENDANT CITY OF CHICAGO

174. PLAINTIFFS re-allege paragraphs 1-131as though fully set forth herein.

175.     One or more CITY OF CHICAGO POLICE OFFICERS had a duty to create and/or preserve evidence in relation to this incident.

176.     Nevertheless, one or more CITY OF CHICAGO POLICE OFFICERS willfully and wantonly and/or negligently spoiled evidence.

177.     If GROUP PLAINTIFFS A are unable to prove any claims in this case, it is a result of one or more CITY OF CHICAGO POLICE OFFICERS' willful and wanton and/or negligent spoliation of evidence.

178.     Additionally, and/or alternatively, LT. KILROY is liable on a spoliation claim because he intentionally hid evidence from PLAINTIFFS. This evidence that was discovered at a much later date specifically detailed the misconduct of one or more CITY OF CHICAGO POLICE OFFICERS, the result of which was the incurring of significant unnecessary legal expense, as well as potentially forever losing the ability to fully identify the officers who committed tortious and/or unconstitutional acts on PLAINTIFFS.

179.     The conduct of one or more CITY OF CHICAGO POLICE OFFICERS alleged in this Count violated Illinois law.

180.     The actions of one or more CITY OF CHICAGO POLICE OFFICERS were the direct and proximate cause of the constitutional violations and the injuries sustained by the PLAINTIFFS.

181.     Additionally, and/or alternatively, the CITY OF CHICAGO is liable to the PLAINTIFFS for the spoliation of evidence based on the fact that one or more CITY OF CHICAGO POLICE OFFICERS acted willfully and wantonly and/or negligently and within the course and scope of their employment with the CITY OF CHICAGO when the evidence was spoiled.

WHEREFORE, PLAINTIFFS demand compensatory damages and costs from the CITY OF CHICAGO as well as any additional relief this Court deems equitable and just.

**COUNT IX**
**§1983 Claim for Supervisory Liability**
**PLAINTIFFS AGAINST LT. KILROY**

182.    PLAINTIFFS re-allege paragraphs 1-131as though fully set forth herein.

183.    LT. KILROY approved, facilitated, condoned and/or ordered the actions of DEFENDANT OFFICERS described in this Complaint.

184.    Specifically, on the evening of November 4, 2008 into the early morning of November 5, 2008, LT. KILROY ordered that DEFENDANT OFFICERS spray pepper spray in the direction of the crowds on either side of the caravan.

185.    Specifically, on the evening of November 4, 2008, LT. KILROY authorized DEFENDANT OFFICERS to use OC spray to disperse crowds in the 15th District.

186.    In the alternative, LT. KILROY knew about DEFENDANT OFFICERS' conduct, and/or turned a blind eye to DEFENDANT OFFICERS' conduct described in this Complaint.

187.    The actions of LT. KILROY amounted to a violation of PLAINTIFFS' Constitutional Rights and proximately caused the PLAINTIFFS to suffer damages.

WHEREFORE, PLAINTIFFS demand compensatory damages, punitive damages, costs and attorneys' fees against LT. KILROY, as well as any additional relief this Court deems equitable and just.

**COUNT X**
**§1983 Claim for Supervisory Liability**
**PLAINTIFFS AGAINST COMMANDER GREEN, LT. STEVENS, SGT. LITTLE, SGT. KROSKI, and SGT. STRUKE**

188.    PLAINTIFFS re-allege paragraphs 1-131as though fully set forth herein.

189.    District Commander GREEN, LT. STEVENS, SGT. LITTLE, S G T . KROSKI, and S GT . STRUKE approved, facilitated, condoned and/or ordered the actions of DEFENDANT OFFICERS described in this Complaint.

190.    In the alternative, District Commander GREEN, LT. STEVENS, SGT. LITTLE, S G T . KROSKI, and S GT . STRUKE knew about DEFENDANT OFFICERS' conduct, and/or turned a blind eye to DEFENDANT OFFICERS' conduct described in this Complaint.

191.    The actions of District Commander GREEN, LT. STEVENS, SGT. LITTLE, S G T . KROSKI, and S GT . STRUKE amounted to a violation of PLAINTIFFS' Constitutional Rights and proximately caused the PLAINTIFFS to suffer damages.

WHEREFORE, PLAINTIFFS demand compensatory damages, punitive damages, costs and attorneys' fees against District Commander GREEN, LT. STEVENS, SGT. LITTLE, S G T . KROSKI, and S GT . STRUKE, as well as any additional relief this Court deems equitable and just.

**COUNT XI**
**745 ILCS 10/9-102 Claim**
**PLAINTIFFS AGAINST CITY OF CHICAGO**

192.    PLAINTIFFS re-allege paragraphs 1-131as though fully set forth herein.

193.    DEFENDANT CITY OF CHICAGO is the employer of the DEFENDANT OFFICERS.

194.    One or more of the DEFENDANT OFFICERS committed the acts alleged above under color of law and in the scope of their employment by DEFENDANT CITY OF CHICAGO.

WHEREFORE, should one or more of the DEFENDANT OFFICERS be found liable for any of the federal claims in this action, PLAINTIFFS demand that the CITY OF CHICAGO pay to GROUP PLAINTIFFS Any judgment (other than punitive damages)

obtained in this action against one or more DEFENDANT OFFICERS, pursuant to 745 ILCS 10/9-102.

## COUNT XII
### Supplemental Claim for *Respondeat superior*
### PLAINTIFFS AGAINST CITY OF CHICAGO

195. PLAINTIFFS re-allege paragraphs 1-131as though fully set forth herein.

196. The acts of the DEFENDANT OFFICERS and CITY OF CHICAGO POLICE OFFICERS, which violated Illinois state law, were committed in the scope of the DEFENDANTS OFFICERS' and CITY OF CHICAGO POLICE OFFICERS' employment by the CITY OF CHICAGO.

197. Thus, DEFENDANT CITY OF CHICAGO, as the DEFENDANT OFFICERS' and CITY OF CHICAGO POLICE OFFICERS' principal, is liable for the actions of its agents under the doctrine of *respondeat superior.*

WHEREFORE, should the DEFENDANT OFFICERS or CITY OF CHICAGO POLICE OFFICERS be found liable for any state law claims alleged herein, PLAINTIFFS demand judgment against the CITY OF CHICAGO (other than for punitive damages) as well as any additional relief.

## JURY DEMAND

PLAINTIFFS demand trial by jury.

Respectfully submitted,
**/s/ Kara Amouyal, Esq.**
One of the Attorneys for PLAINTIFFS

**The Blake Horwitz Law Firm, Ltd.**
Blake Horwitz, Esq.
Kara Amouyal, Esq.
111 W. Washington, Suite 1611
Chicago, Illinois 60602
Telephone: (312) 676-2100


Richard Dvorak
THE LAW OFFICES OF RICHARD DVORAK
200 S. Wacker Drive, Suite 3148
Chicago, IL 60606
(312) 593-7146