**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LATANYA ALEXANDER, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **No.: 08 CV 6688** |
| | ) | |
| **OFFICER ZINCHUK, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>DEFENDANTS' ANSWER TO PLAINTIFFS' FIFTH AMENDED COMPLAINT</u>**

Now come the defendants, by and through their attorneys, Borkan & Scahill, Ltd., and for their answer to plaintiffs' Fifth Amended Complaint state as follows:

**<u>JURISDICTION</u>**

1. This Court has jurisdiction over the PLAINTIFFS' federal claims in the above-entitled action pursuant to the Civil Rights Act of 1871, 42 U.S.C. §1983 and 1985(3), and 28 U.S.C. §§1331 and 1343(a) and over PLAINTIFFS' state law claims pursuant to the Court's supplemental jurisdiction under 28 U.S.C. §1367(a). Venue is appropriate in this Court, pursuant to 28 U.S.C. §1391(b), because the events alleged in this Amended Complaint took place in this District and all the DEFENDANT OFFICERS reside therein.

**<u>ANSWER:</u>** Defendants admit that this court has jurisdiction over this matter. Defendants admit that plaintiffs bring claims under such cited authorities but deny the validity thereof. Defendants admit venue is proper. Defendants deny the facts upon which venue is based as set forth herein and deny the remaining allegations in this paragraph. Defendants admit that at all times relevant to plaintiffs' Amended Complaint they were residents of the City of Chicago.

## PARTIES

2. At all relevant times, the DEFENDANT OFFICERS were residents of the City of Chicago, Illinois.

**ANSWER:** Defendants admit that at all times relevant to plaintiffs' Amended Complaint they were residents of the City of Chicago.

3. At all relevant times, the DEFENDANT OFFICERS were employed by and acting on behalf of the CITY OF CHICAGO.

**ANSWER:** Defendants admit that the individual defendant officers were police officers in the Chicago Police Department at times relevant to this Amended Complaint, that the individual defendants acted within the scope of their employment at times relevant to this Amended Complaint. Defendants deny the remaining allegations in this paragraph.

4. The CITY OF CHICAGO is a duly incorporated municipal corporation.

**ANSWER:** Defendants admit the allegations contained in this paragraph.

5. At all relevant times, the CITY OF CHICAGO was the employer and principal of the DEFENDANT OFFICERS.

**ANSWER:** Defendants admit the allegations contained in this paragraph.

6. At all relevant times, the DEFENDANT OFFICERS were acting under color of state law, ordinance or regulation, statutes, custom and usages of the CITY OF CHICAGO.

**ANSWER:** Defendants admit the allegations contained in this paragraph.

7. At all relevant times, the DEFENDANT OFFICERS were on duty and were duly appointed police officers for the CITY OF CHICAGO.

**ANSWER:** Defendants admit the allegations contained in this paragraph.

8. The DEFENDANT OFFICERS engaged in the conduct that is the subject of this action in the course and scope of their employment and while on duty.

**ANSWER:** Defendants admit that the individual defendant officers acted within the course and scope of their employment at all times relevant to this Amended Complaint. Defendants deny the remaining allegations contained in this paragraph.

9. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, DEFENDANT OFFICERS were assigned to the 15th District.

**ANSWER:** Defendants admit that on the evening of November 4, 2008 and continuing into the morning of 5, 2008, the Defendant Officers were either assigned to the 15th District or worked in the 15th District on those respective dates.

10. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, COMMANDER GREEN was the Commander of the 15th District.

**ANSWER:** Defendants admit the allegations contained in this paragraph.

11. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, LTs. STEVENS and KILROY were on duty as lieutenants with the 15th District.

**ANSWER:** Defendants admit that Lt. Stevens and Lt. Kilroy were on duty on the evening November of 4, 2008 and for a few hours continuing into the morning of November 5, 2008. Defendants admit that Lt. Kilory was a on duty as a Lieutenant in the 15th District and that Lt. Stevens was on duty either as a Watch Commander or as a Lieutenant in the 15th District.

12. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, SGTs. LITTLE, KROSKI, and STRUKE were on duty as sergeants with the 15th District.

**ANSWER:** Defendants admit the allegations contained in this paragraph.

13. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, SGT. Little was supervising DEFENDANT OFFICERS WAZNY, LACZ, WYROBA, KROLL, FRIGO, DUGGAN, and ZINCHUK (hereinafter referred to as "SGT. LITTLE'S TEAM").

**ANSWER:** Defendants admit that on the evening of November 4, 2008 and continuing into the morning of November 5, 2008, SERGEANT LITTLE was supervising OFFICERS WAZNY, LACZ, WYROBA, KROLL, FRIGO, DUGGAN and ZINCHUCK.

14. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, SGT. KROSKI'S was supervising DEFENDANT OFFICERS CRISCIONE, JACCOBUCCI, and CRISTOBAL (hereinafter referred to as "SGT. KROSI'S TEAM").

**ANSWER:** Defendants admit the allegations contained in this paragraph.

15. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, LT. STEVENS was the watch commander for the DEFENDANT OFFICERS.

**ANSWER:** Defendants admit that on November 4, 2008, Lt. Stevens was the Watch Commander for the 15th District during the third shift, which ended at approximately 10:00 p.m. Defendants deny the remaining allegations contained in this paragraph.

16. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, LT. STEVENS was one of the supervisors for SGTs. LITTLE, KROSKI, A N D STRUKE.

**ANSWER:** Defendants deny the allegations in this paragraph.

17. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, LT. KILROY was the tactical lieutenant for the DEFENDANT OFFICERS.

**ANSWER:** Defendants admit that on the evening of November 4, 2008 and continuing into the morning of November 5, 2008, Lt. Kilroy was a tactical lieutenant for several of the Defendant Officers. Defendants deny the remaining allegations contained in this paragraph.

18. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, LT. KILROY was one of the supervisors for SGTs. LITTLE, KROSKI, A N D STRUKE.

**ANSWER:** Defendants admit the allegations contained in this paragraph.

19. At all relevant times, District Commander GREEN condoned, approved of, and/or turned a blind eye to the DEFENDANT OFFICERS' conduct described more specifically in this Amended Complaint.

**ANSWER:** Defendants deny the allegations in this paragraph.

20. At all relevant times, LT. STEVENS condoned, approved of, and/or turned a blind eye to his subordinate DEFENDANT OFFICERS' conduct described more specifically in this Amended Complaint.

**ANSWER:** Defendants deny the allegations in this paragraph.

21. At all relevant times, LT. KILROY condoned, approved of, and/or turned a blind eye to his subordinate DEFENDANT OFFICERS' conduct described more specifically in this Amended Complaint.

**ANSWER:** Defendants deny the allegations in this paragraph.

22. At all relevant times, SGT. LITTLE condoned, approved of, and/or turned a blind eye to his subordinate DEFENDANT OFFICERS' conduct described more specifically in this Amended Complaint.

**ANSWER:** Defendants deny the allegations in this paragraph.

23. At all relevant times, SGT. KROSKI condoned, approved of, and/or turned a blind eye to his subordinate DEFENDANT OFFICERS' conduct described more specifically in this Amended Complaint.

**ANSWER:** Defendants deny the allegations in this paragraph.

24. At all relevant times, SGT. STRUKE condoned, approved of, and/or turned a blind eye to his subordinate DEFENDANT OFFICERS' conduct described more specifically in this Amended Complaint.

**ANSWER:** Defendants deny the allegations in this paragraph.

25. District Commander GREEN, LT. KILROY, LT. STEVENS, SGT. LITTLE, SGT. KROSKI and SGT. STRUKES are being sued in their capacity as supervisors.

**ANSWER:** Defendants admit the allegations in this paragraph.

26. The action is brought against District Commander GREEN, LT. KILROY, LT. STEVENS, SGT. LITTLE, SGT. KROSKI, and SGT. STRUKE in their individual capacities.

**ANSWER:** Defendants admit the allegations in this paragraph.

**FACTS RELATING TO PLAINTIFFS SHAKEETA CASTLEBERRY, MICHAEL LEE, KENIFIA MCNEASE, JOVANNA LIBERTY, LAQUITA BRYANT, JEREMY SPENCER, LENNETH SUGGS, DARRYLMY GARNER, SHERWIN OTT, and TIFFANY THOMAS AGAINST ALL DEFENDANT OFFICERS**

27. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, DEFENDANT OFFICERS and other Chicago Police officers patrolled in both marked and unmarked police vehicles.

**ANSWER:** Defendants admit the allegations in this paragraph.

28. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, DEFENDANT OFFICERS and other Chicago Police officers patrolled in police vehicles in the 15th District.

**ANSWER:** Defendants admit the allegations in this paragraph.

29. On the evening of November 4, 2008, LT. KILROY issued large canisters of *oleoresin capsicum* (commonly called "OC" or "pepper spray") to many of the DEFENDANT OFFICERS to carry during their shift.

**ANSWER:** Defendants admit that on the evening of November 4, 2008, Lt. Kilroy issued canisters of OC to some of the sergeants under his command. Defendants deny the remaining allegations contained in this paragraph.

30. On the evening of November 4, 2008, LT. STEVENS issued large canisters of *oleoresin capsicum* (commonly called "OC" or "pepper spray") to many of the DEFENDANT OFFICERS to carry during their shift.

**ANSWER:** Defendants admit that on November 4, 2008, Lt. Stevens authorized some of the sergeants in the 15th District to take out OC. Defendants deny the remaining allegations contained in this paragraph.

31. On the evening of November 4, 2008, LT. KILROY authorized DEFENDANT OFFICERS to use OC spray to disperse crowds in the 15th District.

**ANSWER:** Defendants admit that at on 4, 2008, Lt. Kilroy ordered police officers that were at the intersection of Madison Avenue and Leamington Avenue in the 15th District to use OC spray to disperse the crowd that had gathered at this location and that failed to disperse upon oral direction. Further answering, Lt. Kilroy advised police officers to use OC spray to disperse crowds only when warranted and in accordance with the law. Defendants deny the remaining allegations contained in this paragraph.

32. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, DEFENDANT LT. KILROY ordered that DEFENDANT OFFICERS follow behind him and his patrol car in a caravan (hereinafter referred to as "the caravan") for the remainder of the evening of November 4, 2008 into the early morning of November 5, 2008.

**ANSWER:** Defendants admit on the evening of 4, 2008, Lt. Kilroy ordered some of the Defendant Officers to follow behind him in his police car in a caravan. Defendants deny the remaining allegations contained in this paragraph.

33. District Commander GREEN was present when LT. KILROY gave the caravan order.

**ANSWER:** Defendants admit that Commander Green was aware that Lt. Kilroy gave the caravan order. Defendants deny the remaining allegations contained in this paragraph.

34. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, each Sergeant (and his team) reporting to LT. KILROY were a part of the caravan.

**ANSWER:** Defendants deny the allegations contained in this paragraph.

35. On the evening of November 4, 2008 and continuing into the morning of November 5, District Commander GREEN, LT. KILROY, and LT. STEVENS rode in the same car in the caravan.

**ANSWER:** Defendants admit that at various times during the evening of November 4, 2008 and continuing into the morning of November 5, Lt. Stevens, Lt. Kilroy, and/or Commander Greed rode in the same vehicle in the caravan. Defendants deny the remaining allegations in this paragraph.

36. The caravan traveled along West Chicago Avenue.

**ANSWER:** Defendants admit the allegations in this paragraph.

37. The caravan traveled along West Madison Street.

**ANSWER:** Defendants admit the allegations in this paragraph.

38. The caravan traveled within three blocks to the east and west of Laramie Avenue.

**ANSWER:** Defendants deny the allegations in this paragraph.

39. The boundaries of the caravan were West Madison Street, West Chicago Avenue, Pine Avenue, and Laramie Avenue.

**ANSWER:** Defendants deny the allegations in this paragraph.

40. The caravan drove through the bounded area at least three times.

**ANSWER:** Defendants deny the allegations in this paragraph.

41. The caravan drove by the intersection of West Lake Street and Laramie Avenue.

**ANSWER:** Defendants admit the allegations in this paragraph.

42. The caravan drove on West Fulton Street between Latrobe Avenue and Laramie Avenue.

**ANSWER:** Defendants deny the allegations in this paragraph.

43. On the evening of November 4, 2008 into the early morning of November 5, 2008, the caravan passed by PLAINTIFFS SHAKEETA CASTLEBERRY, MICHAEL LEE, KENIFIA MCNEASE, JOVANNA LIBERTY, LAQUITA BRYANT, JEREMY SPENCER, LENNETH SUGGS, DARRYLMY GARNER, SHERWIN OTT, and TIFFANY THOMAS (hereinafter "GROUP PLAINTIFFS A").

**ANSWER:** Defendants deny the allegations in this paragraph.

44. DEFENDANT CITY OF CHICAGO's police department is a paramilitary organization with a command structure.

**ANSWER:** Defendants admit that the City of Chicago's police department is an organization with a command structure. Defendants deny the remaining allegations contained in this paragraph.

45. DEFENDANT CITY OF CHICAGO police officers are required to follow the orders of their superior officers, including Lieutenants.

**ANSWER:** Defendants admit that Chicago Police Officers are required to follow all lawful orders of their superiors officers, including Lieutenants, to the extent that such orders are justified and warranted under the circumstances. Defendants deny the remaining allegations contained in this paragraph.

46. On the evening of November 4, 2008 into the early morning of November 5, 2008, LT. KILROY was the supervisory Lieutenant for all DEFENDANT OFFICERS except District COMMANDER GREEN and LT. STEVENS.

**ANSWER:** Defendants admit the allegations in this paragraph.

47. On the evening of November 4, 2008 into the early morning of November 5, 2008, LT. KILROY gave the order (hereinafter "the order") to discharge canisters of MK-IV OC.

**ANSWER:** Defendants admit that at some point on November 4, 2008, Lt. Kilroy gave an order to discharge OC spray in order to disperse unruly crowds that failed to follow police direction. Defendants deny the remaining allegations in this paragraph.

48. LT. KILROY gave the order to DEFENDANT OFFICERS in the caravan.

**ANSWER:** Defendants admit the allegations in this paragraph.

49. LT. KILROY gave the order to discharge pepper spray in the direction of the crowds on either side of the caravan.

**ANSWER:** Defendants admit the allegations in this paragraph.

50. LT. KILROY expected that the DEFENDANT OFFICERS would follow his order.

**ANSWER:** Lt. Kilroy expected that the Defendant Officers would follow any lawful orders that were justified and warranted under the circumstances presented. Defendants deny the remaining allegations contained in this paragraph.

51. DEFENDANT OFFICERS followed the order.

**ANSWER:** Defendants admit that it is possible that some Defendant Officers may have followed Lt. Kilroy's order to discharge OC as warrant to disperse the crowds. Further answering, it may not have been necessary for some Defendant Officers to discharge OC spray if the crowds obeyed verbal commands to disperse.

52. LT. KILROY did not know if it was necessary that DEFENDANT OFFICERS follow the order.

**ANSWER:** Defendants admit that Lt. Kilroy gave an order to discharge OC spray if necessary to disperse the crowds. Further answering, Lt. Kilory expected the police officers under his command to discharge OC spray in accordance with the law and only if warranted and justified by the circumstances presented. Defendants deny the remaining allegations contained in this paragraph.

53. LT. KILROY did not know if it was necessary that DEFENDANT OFFICERS discharge pepper spray on individuals within five minutes of giving the order to discharge spray.

**ANSWER:** Defendants admit that Lt. Kilroy gave an order to discharge OC spray if necessaryto disperse the crowds. Further answering, Lt. Kilory expected the police officers under his command to discharge OC spray in accordance with the law and only if warranted and justified by the circumstances presented. Thus, if a crowd dispersed because of police presence or because it was ordered to do so, then it may not have been necessary for the defendant officers to discharge OC spray. Defendants deny the remaining allegations contained in this paragraph.

54. On the evening of November 4, 2008 into the early morning of November 5, 2008, DEFENDANT OFFICERS discharged pepper spray on individuals at or around the intersection of W Lake Street and N Laramie Avenue.

**ANSWER:** Defendants admit that some Defendant Officers may have discharged pepper spray at or around the intersection of W. Lake Street and N. Laramie Avenue. Defendants deny the remaining allegations contained in this paragraph.

55. On the evening of November 4, 2008 into the early morning of November 5, 2008, DEFENDANT OFFICERS discharged pepper spray on individuals on W Fulton Street at or around the intersections of N Latrobe Avenue and N Laramie Avenue.

**ANSWER:** Defendants admit that some Defendant Officers may have discharged pepper spray at or around the intersection of W. Fulton Street at or around the intersections of N. Latrobe Avenue and N. Laramie Avenue. Defendants deny the remaining allegations contained in this paragraph.

56. On November 5, 2008, the caravan stopped at 130 N. Laramie, the intersection of Laramie and Maypole.

**ANSWER:** Defendants admit that on November 5, 2008, the first car in the caravan stopped at or near 130 N. Laramie, the intersection of Laramie and Maypole. Defendants deny the remaining allegations contained in this paragraph.

57. Between the time in the caravan was formed and the time at which the caravan stopped at 130 N. Laramie, the intersection of Laramie and Maypole, LT. KILROY did not observe any behavior from any citizen that would have justified the use of pepper spray by the officers in the caravan.

**ANSWER:** Defendants deny the allegations contained in this paragraph.

58. On or about the evening of November 4, 2008 LT. KILROY ordered the DEFENDANT OFFICERS to use pepper spray on the Plaintiffs and people near the Plaintiffs.

**ANSWER:** Defendants admit that on or about the evening of November 4, 2008, Lt. KILROY ordered some of the Defendant Officers to use pepper spray as necessary on unruly crowds that refused to disperse. Defendants deny the remaining allegations contained in this paragraph.

59. On or about the evening of November 4, 2008, CITY OF CHICAGO POLICE OFFICERS, including but not limited to DEFENDANT OFFICERS, discharged pepper spray on GROUP PLAINTIFFS A.

**ANSWER:** Defendants admit that on or about the evening of November 4, 2008, Chicago Police Officers, including but not limited to defendant officers, discharged pepper spray. Defendants deny the remaining allegations contained in this paragraph.

60. On the evening of November 4, 2008 into the early morning of November 5, 2008, GROUP PLAINTIFFS A were hit by the pepper spray sprayed by the DEFENDANT OFFICERS.

**ANSWER:** Defendants deny the allegations contained in this paragraph.

61. The discharge of pepper spray on GROUP PLAINTIFFS A constituted a seizure of GROUP PLAINTIFFS A.

**ANSWER:** Defendants deny the allegations in this paragraph.

62. On the evening of November 4, 2008 into the early morning of November 5, 2008, DEFENDANT OFFICERS did not witness any member of GROUP PLAINTIFFS A commit a crime.

**ANSWER:** Defendants deny the allegations in this paragraph.

63. On the evening of November 4, 2008 into the early morning of November 5, 2008, DEFENDANT OFFICERS did not have probable cause to believe that any member of GROUP PLAINTIFFS A committed a crime.

**ANSWER:** Defendants deny the allegations in this paragraph.

64. On the evening of November 4, 2008 into the early morning of November 5, 2008, DEFENDANT OFFICERS did not have probable cause to believe that any individual within 50 feet of any member of GROUP PLAINTIFFS A committed a crime.

**ANSWER:** Defendants deny the allegations in this paragraph.

65. At the time in which the DEFENDANT OFFICERS sprayed the members of GROUP PLAINTIFFS A, the members of GROUP PLAINTIFFS A were engaged in peaceful activities

**ANSWER:** Defendants deny the allegations in this paragraph.

66. At the time in which the DEFENDANT OFFICERS sprayed the members of GROUP PLAINTIFFS A, no DEFENDANT OFFICER had any knowledge that GROUP PLAINTIFFS presented any threat or danger to any DEFENDANT OFFICERS, any other Chicago Police Officer, or any other person.

**ANSWER:** Defendants deny the allegations in this paragraph.

67. On the evening of November 4, 2008 into the early morning of November 5, 2008, DEFENDANT OFFICERS sprayed the members of GROUP PLAINTIFFS A without provocation or legal justification and without making any individual assessments as to the necessity of pepper-spraying the members of GROUP PLAINTIFFS A.

**ANSWER:** Defendants deny the allegations in this paragraph.

68. On or about the evening of November 4, 2008, OFFICER KROLL struck PLAINTIFF LENNETH SUGGS with a baton.

**ANSWER**: Defendants deny the allegations in this paragraph.

69. On the evening of November 4, 2008 into the early morning of November 5, 2008, no DEFENDANT OFFICER, including OFFICER KROLL, witnessed PLAINTIFF LENNETH SUGGS commit a crime.

**ANSWER:** Defendants deny the allegations in this paragraph.

70. On the evening of November 4, 2008 into the early morning of November 5, 2008, no DEFENDANT OFFICER, including OFFICER KROLL, had probable cause to believe that PLAINTIFF LENNETH SUGGS committed a crime.

**ANSWER:** Defendants deny the allegations in this paragraph.

71. At the time in which OFFICER KROLL struck PLAINTIFF LENNETH SUGGS, PLAINTIFF LENNETH SUGGS was engaged in peaceful activities.

**ANSWER:** Defendants deny the allegations in this paragraph.

72. At the time in which OFFICER KROLL struck PLAINTIFF LENNETH SUGGS, no DEFENDANT OFFICER, including OFFICER KROLL, had any knowledge that PLAINTIFF

LENNETH SUGGS presented any threat or danger to any DEFENDANT OFFICERS, any other Chicago Police Officer, or any other person.

**ANSWER:** Defendants deny the allegations in this paragraph.

73. DEFENDANT OFFICERS knew the discharging of pepper spray on GROUP PLAINTIFFS A was unreasonable and excessive.

**ANSWER:** Defendants deny the allegations in this paragraph.

74. DEFENDANT OFFICERS had a reasonable opportunity to prevent the discharging of pepper spray on GROUP PLAINTIFFS A.

**ANSWER:** Defendants deny the allegations in this paragraph.

75. DEFENDANT OFFICERS failed to intervene in the discharging of pepper spray on GROUP PLAINTIFFS A.

**ANSWER:** Defendants deny the allegations in this paragraph.

76. DEFENDANT OFFICERS conspired to cover up the discharging of pepper spray on GROUP PLAINTIFFS A.

**ANSWER:** Defendants deny the allegations in this paragraph.

**FACTS RELATING TO PLAINTIFFS ROSALIND BALL, LATINA WILLIAMS, JOSE MCKNIGHT, CLIFFORD ARMSTRONG, CHRIS COBBS, and LARRENZO FULTON AGAINST DEFENDANTS LITTLE, WAZNY, LACZ, WYROBA, KROLL, FRIGO, DUGGAN, and ZINCHUK**

77. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, SGTs. LITTLE was on duty with the 15th District and was reporting to LT. KILROY.

**ANSWER:** Defendants admit the allegations in this paragraph.

78. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, SGT. LITTLE'S team consisted of DEFENDANT OFFICERS WAZNY, LACZ, WYROBA, KROLL, FRIGO, DUGGAN, and ZINCHUK (hereinafter referred to as "SGT. LITTLE'S TEAM").

**ANSWER:** Defendants admit the allegations in this paragraph.

79. On the evening of November 4, 2008 and continuing into the morning of November 5, 2008, SGT. LITTLE'S TEAM encountered PLAINTIFFS ROSALIND BALL, LATINA WILLIAMS, JOSE MCKNIGHT, CLIFFORD ARMSTRONG, CHRIS COBBS, and LARRENZO FULTON (hereinafter "GROUP PLAINTIFFS B").

**ANSWER:** Defendants admit that some members of Sgt Little's Team encountered some of Plaintiffs in Group Plaintiffs B. To the extent that the allegations in this paragraph assume that each and every member of Sgt. Little's Team encountered each and every Plaintiff in Group Plaintiffs B, Defendants deny the allegations in this paragraph.

80. 157 N. Latrobe Avenue, Chicago, Illinois , is next to or very close to 167 N. Latrobe Avenue, Chicago, Illinois.

**ANSWER:** Defendants admit the allegations in this paragraph.

81. SGT. LITTLE'S TEAM encountered PLAINTIFFS LARRENZO FULTON and CHRIS COBBS at or near 157 N. Latrobe.

**ANSWER:** Defendants deny the allegations in this paragraph.

82. One or more officers in SGT. LITTLE'S TEAM discharged pepper spray on PLAINTIFFS LARRENZO FULTON and CHRIS COBBS.

**ANSWER:** Defendants admit that one or more officers in SERGEANT LITTLE'S TEAM discharged pepper spray. Defendants deny the remaining allegations contained in this paragraph.

83. One or more officers in SGT. LITTLE'S TEAM slammed PLAINTIFF LARRENZO FULTON to the ground and kicked PLAINTIFF LARRENZO FULTON.

**ANSWER:** Defendants deny the allegation in this paragraph.

84. On or about the evening of November 4, 2008, no officer in SGT. LITTLE'S TEAM witnessed PLAINTIFFS LARRENZO FULTON and CHRIS COBBS commit a crime.

**ANSWER:** Defendants lack sufficient information to admit or deny the allegations in this paragraph.

85. On or about the evening of November 4, 2008, no officer in SGT. LITTLE'S TEAM had probable cause to believe that PLAINTIFFS LARRENZO FULTON and CHRIS COBBS committed a crime.

**ANSWER:** Defendants lack sufficient information to admit or deny the allegations in this paragraph.

86. At the time in which one or more officers in SGT. LITTLE'S TEAM sprayed PLAINTIFFS LARRENZO FULTON and CHRIS COBBS, no officers in SGT. LITTLE'S TEAM had any knowledge that PLAINTIFFS LARRENZO FULTON and CHRIS COBBS presented no threat or danger to any officers in SGT. LITTLE'S TEAM, any other Chicago Police Officer, or any other person.

**ANSWER:** Defendants admit that one or more officers in SERGEANT LITTLE'S TEAM discharged pepper spray. Defendants lack sufficient information to admit or deny the remaining allegations in this paragraph.

87. SGT. LITTLE's TEAM conspired to cover up the pepper spraying and excessive force against PLAINTIFFS LARRENZO FULTON and CHRIS COBBS.

**ANSWER:** Defendants deny the allegations in this paragraph.

88. Immediately after being sprayed with pepper spray at 157 N. Latrobe Avenue, Chicago, Illinois, PLAINTIFF CHRIS COBBS ran to or near 167 N. Latrobe Avenue, Chicago, Illinois.

**ANSWER:** Defendants lack sufficient information to admit or deny the allegations in this paragraph.

89. SGT. LITTLE'S TEAM encountered PLAINTIFFS ROSALIND BALL, LATINA WILLIAMS, JOSE MCKNIGHT, CLIFFORD ARMSTRONG, CHRIS COBBS in the yards of 167 N. Latrobe.

**ANSWER:** Defendants deny the allegations contained in this paragraph.

90. DEFENDANT OFFICER ZINCHUK discharged pepper spray on PLAINTIFF JOSE MCKNIGHT.

**ANSWER:** Defendants admit the allegations in this paragraph.

91. DEFENDANT OFFICER ZINCHUK arrested PLAINTIFF JOSE MCKNIGHT.

**ANSWER:** Defendants admit the allegations in this paragraph.

92. DEFENDANT OFFICER KROLL discharged pepper spray on PLAINTIFF CLIFFORD ARMSTRONG.

**ANSWER:** Defendants admit the allegations in this paragraph.

93. DEFENDANT OFFICER KROLL arrested PLAINTIFF CLIFFORD ARMSTRONG.

**ANSWER:** Defendants admit the allegations in this paragraph.

94. One or more officers in SGT. LITTLE'S TEAM discharged pepper spray on PLAINTIFFS ROSALIND BALL and CHRIS COBBS.

**ANSWER:** Defendants admit that one or more officers in SERGEANT LITTLE'S TEAM discharged pepper spray. Defendants deny the remaining allegations contained in this paragraph.

95. One or more officers in SGT. LITTLE'S TEAM threw PLAINTIFFS ROSALIND BALL, LATINA WILLIAMS, and CHRIS COBBS to the ground.

**ANSWER:** Defendants deny the allegations in this paragraph.

96. One or more officers in SGT. LITTLE'S TEAM handcuffed PLAINTIFF ROSALIND BALL.

**ANSWER:** Defendants deny the allegations in this paragraph.

97. One or more officers in SGT. LITTLE'S TEAM arrested PLAINTIFF LATINA WILLIAMS.

**ANSWER:** Defendants deny the allegations in this paragraph.

98. One or more officers in SGT. LITTLE'S TEAM placed PLAINTIFF LATINA WILLIAMS in a Chicago police vehicle.

**ANSWER:** Defendants deny the allegations in this paragraph.

99. One or more officers in SGT. LITTLE'S TEAM transported PLAINTIFF LATINA WILLIAMS to a police station.

**ANSWER:** Defendants deny the allegations in this paragraph.

100. PLAINTIFF LATINA WILLIAMS was never charged with a crime.

**ANSWER:** Defendants admit that the Chicago Police Department did not arrest Plaintiff Latina Williams on November 4 or November 5, 2008. Defendants deny the remaining allegations contained in this paragraph.

101. The actions of SGT. LITTLE'S TEAM against PLAINTIFFS ROSALIND BALL, LATINA WILLIAMS, and CHRIS COBBS constituted a seizure of PLAINTIFFS ROSALIND BALL, LATINA WILLIAMS, and CHRIS COBBS.

**ANSWER:** Defendants deny the allegations in this paragraph.

102. On or about the evening of November 4, 2008, no officer in SGT. LITTLE'S TEAM witnessed PLAINTIFFS JOSE MCKNIGHT, CLIFFORD ARMSTRONG,, ROSALIND BALL, CHRIS COBBS, or LATINA WILLIAMS commit a crime.

**ANSWER:** Defendants deny the allegations in this paragraph.

103. On or about the evening of November 4, 2008, no officer in SGT. LITTLE'S TEAM had probable cause to believe that PLAINTIFFS J O S E M C K N I G H T , C L I F F O R D A R M S T R O N G , ROSALIND BALL, CHRIS COBBS, or LATINA WILLIAMS committed a crime.

**ANSWER:** Defendants deny the allegations in this paragraph.

104. At the time in which one or more officers in SGT. LITTLE'S TEAM sprayed and/or seized PLAINTIFFS JOSE MCKNIGHT, CLIFFORD ARMSTRONG , ROSALIND BALL, CHRIS COBBS, or LATINA WILLIAMS, no officers in SGT. LITTLE'S TEAM had any knowledge that any Plaintiff in GROUP PLAINTIFFS B presented any threat or danger to any officers in SGT. LITTLE'S TEAM, any other Chicago Police Officer, or any other person.

**ANSWER:** Defendants deny the allegations in this paragraph.

105. Officers in SGT. LITTLE'S TEAM knew the discharging of pepper spray and/or other seizing of GROUP PLAINTIFFS B was unreasonable and excessive.

**ANSWER:** Defendants deny the allegations in this paragraph.

106. Officers in SGT. LITTLE'S TEAM had a reasonable opportunity to prevent the pepper spraying and/or other seizure of GROUP PLAINTIFFS B.

**ANSWER:** Defendants deny the allegations in this paragraph.

107. Officers in SGT. LITTLE'S TEAM failed to intervene in the discharging of pepper spray and/or other seizure of GROUP PLAINTIFFS B.

**ANSWER:** Defendants deny the allegations in this paragraph.

108. Officers in SGT. LITTLE'S TEAM conspired to cover up the discharging of pepper spray and/or other seizure of GROUP PLAINTIFFS B.

**ANSWER:** Defendants deny the allegations in this paragraph.

109. Officers in SGT. LITTLE'S TEAM knew the arrests of PLAINTIFFS JOSE MCKNIGHT, CLIFFORD ARMSTRONG AND LATINA WILLIAMS were without probable cause.

**ANSWER:** Defendants deny the allegations in this paragraph.

110. Officers in SGT. LITTLE'S TEAM had a reasonable opportunity to prevent the false arrest of PLAINTIFFS JOSE MCKNIGHT, CLIFFORD ARMSTRONG, AND LATINA WILLIAMS.

**ANSWER:** Defendants deny the allegations in this paragraph.

111. Officers in SGT. LITTLE'S TEAM failed to intervene in the false arrest of PLAINTIFFS JOSE MCKNIGHT, CLIFFORD ARMSTRONG, AND LATINA WILLIAMS. .

**ANSWER:** Defendants deny the allegations in this paragraph.

112. Officers in SGT. LITTLE'S TEAM conspired to cover up the false arrest of PLAINTIFFS JOSE MCKNIGHT, CLIFFORD ARMSTRONG, AND LATINA WILLIAMS.

**ANSWER:** Defendants deny the allegations in this paragraph.

**FACTS RELATING TO PLAINTIFF YOLANDA FULTON AGAINST DEFENDANT CITY OF CHICAGO**

113. 152 N. Latrobe Avenue, Chicago, Illinois, is across the street from or very close to 167 N. Latrobe Avenue, Chicago, Illinois.

**ANSWER:** Defendants admit the allegations in this paragraph.

114. A CITY OF CHICAGO POLICE OFFICER encountered PLAINTIFF YOLANDA FULTON at or near 152 N. Latrobe.

**ANSWER:** Defendants lack sufficient information to admit or deny the allegations in this paragraph.

115. A CITY OF CHICAGO POLICE OFFICER discharged pepper spray on PLAINTIFF YOLANDA FULTON.

**ANSWER:** Defendants lack sufficient information to admit or deny the allegations in this paragraph.

116. A CITY OF CHICAGO POLICE OFFICER pushed PLAINTIFF YOLANDA FULTON against a railing.

**ANSWER:** Defendants lack sufficient information to admit or deny the allegations in this paragraph.

117. On or about the evening of November 4, 2008, no CITY OF CHICAGO POLICE OFFICER witnessed PLAINTIFF YOLANDA FULTON commit a crime.

**ANSWER:** Defendants lack sufficient information to admit or deny the allegations in this paragraph.

118. On or about the evening of November 4, 2008, no CITY OF CHICAGO POLICE OFFICER had probable cause to believe that PLAINTIFF YOLANDA FULTON committed a crime.

**ANSWER:** Defendants lack sufficient information to admit or deny the allegations in this paragraph.

119. At the time in which a CITY OF CHICAGO POLICE OFFICER sprayed and pushed PLAINTIFF YOLANDA FULTON, no CITY OF CHICAGO POLICE OFFICER had any knowledge that PLAINTIFF YOLANDA FULTON presented any threat or danger to any Chicago Police Officer or any other person.

**ANSWER:** Defendants lack sufficient information to admit or deny the allegations in this paragraph.

**FACTS RELATING TO THE SPOILATION OF EVIDENCE**

120. On and after the evening of November 4, 2008, LT. KILROY and many or all of the DEFENDANT OFFICERS, through willful and wanton, and/or negligent action, spoiled evidence of their wrongdoing laid out in this Complaint.

**ANSWER:** Defendants deny the allegations in this paragraph.

121. According to the DEFENDANT CITY OF CHICAGO's general orders to police officers, pepper spray is a weapon and the discharge of pepper spray is a use of force for which a Chicago Police Officer is required to complete a "Tactical Response Report" ("TRR").

**ANSWER:** Defendants admit that there is a General Order that indicates the use of OC spray should be documented on a Tactical Response Report (TRR). Defendants deny the remaining allegations contained in this paragraph.

122. There is no exception to this requirement for the indiscriminate discharge of pepper spray against innocent civilians who pose no threat to the officers or the general public.

**ANSWER:** Defendants deny that OC spray was discharged indiscriminately against innocent citizens or the general public. Defendants deny the remaining allegations contained in this paragraph.

123. DEFENDANT OFFICERS therefore had a duty to complete and preserve TRRs in relation to this incident.

**ANSWER:** Defendants admit that if OC spray was used by the Defendant Officers, then he or she had a duty to complete TRRs. Defendants deny the remaining allegations contained in this paragraph.

124. Nevertheless, only 21 TRRs were completed and filed in connection with the use of pepper spray at issue in this action.

**ANSWER:** Defendants deny the allegations contained in this paragraph.

125. DEFENDANT OFFICERS who did not complete TRRs acted willfully and wantonly, and/or negligently, in their failure to create and/or preserve TRRs detailing the use of pepper spray in this incident.

**ANSWER:** Defendants deny the allegations in this paragraph.

126. One or more DEFENDANT OFFICERS' failure to create and/or preserve TRRs for this incident made it difficult or impossible for PLAINTIFFS to identify the wrongdoers and thereby to seek legal redress for injuries and claims.

**ANSWER:** Defendants deny the allegations in this paragraph.

127. One or more DEFENDANT OFFICERS who did complete a TRR did so fraudulently

**ANSWER:** Defendants deny the allegations in this paragraph.

128. One or more DEFENDANT OFFICERS who completed a report known as a "to/from" did so fraudulently and in such a manner as to hide evidence relating to this claim.

**ANSWER:** Defendants deny the allegations in this paragraph.

129. One or more DEFENDANT OFFICERS' creation of falsified TRRs and falsified to/froms for this incident made it difficult or impossible for PLAINTIFFS to identify the wrongdoers and thereby to seek legal redress for injuries and claims.

**ANSWER:** Defendants deny the allegations in this paragraph

130. Furthermore, to the extent a jury may find GROUP PLAINTIFFS A cannot prove the identity of any, some, many or all of the UNKNOWN CITY OF CHICAGO POLICE OFFICERS, this is due to the fact that LT. KILROY, the UNKNOWN CITY OF CHICAGO POLICE OFFICERS, and DEFENDANT THE CITY OF CHICAGO, its agents, or principals, engaged in individual actions, as well as collective actions, to deny the GROUP PLAINTIFFS A to civil courts by engaging in actions described more specifically in this complaint.

**ANSWER:** Defendants deny the allegations in this paragraph.

131. Thus, the denial of access to civil courts claims in this case are plead in this case as alternative remedies.

**ANSWER:** Defendants deny the allegations in this paragraph.

**COUNT I**
**§1983 Claim for Excessive Force/Failure to Intervene**
**PLAINTIFFS SHAKEETA CASTLEBERRY, MICHAEL LEE, KENIFIA MCNEASE, JOVANNA LIBERTY, LAQUITA BRYANT, JEREMY SPENCER, LENNETH SUGGS, DARRYLMY GARNER, SHERWIN OTT, and TIFFANY THOMAS (GROUP PLAINTIFFS A) AGAINST DEFENDANT OFFICERS**

132. GROUP PLAINTIFFS A re-allege paragraphs 1-131 as though fully set forth herein.

**ANSWER:** Defendants incorporate their answers to each preceding paragraph as if fully restated here.

133. On or about November 4, 2008, DEFENDANT OFFICERS lacked probable cause or a legal basis to believe that GROUP PLAINTIFFS A had violated any law or were using force against any police officers or other persons.

**ANSWER:** Defendants deny the allegations in this paragraph.

134. Nevertheless, DEFENDANT OFFICERS pepper-sprayed GROUP PLAINTIFFS A on the orders of LT. KILROY without provocation and without legal justification.

**ANSWER:** Defendants deny the allegations in this paragraph.

135. DEFENDANT OFFICERS failed to intervene in the use of force against GROUP PLAINTIFFS A, even though the DEFENDANT OFFICERS were aware that this use of force was unreasonable and excessive and despite having a reasonable opportunity to prevent it.

**ANSWER:** Defendants deny the allegations in this paragraph.

136. The actions of the DEFENDANT OFFICERS were the direct and proximate cause of the constitutional violations and the resulting injuries that GROUP PLAINTIFFS A sustained.

**ANSWER:** Defendants deny the allegations in this paragraph.

137. The use of force upon GROUP PLAINTIFFS A and the failure to intervene were unreasonable and excessive and therefore violated the Fourth Amendment to the United States Constitution.

**ANSWER:** Defendants deny the allegations in this paragraph.

**COUNT II**
**§1983 Claim for Excessive Force**
**PLAINTIFFS LENNETH SUGGS AGAINST OFFICER KROLL**

138. PLAINTIFF LENNETH SUGGS re-alleges paragraphs 1-131 as though fully set forth herein.

**ANSWER:** Defendants incorporate their answers to each preceding paragraph 1-131 as if fully restated here.

139. On or about November 4, 2008, OFFICER KROLL lacked probable cause or a legal basis to believe that PLAINTIFF LENNETH SUGGS had violated any law or were using force against any police officers or other persons.

**ANSWER:** Defendants deny the allegations in this paragraph.

140. Nevertheless, OFFICER KROLL struck PLAINTIFF LENNETH SUGGS with a baton without provocation and without legal justification.

**ANSWER:** Defendants deny the allegations in this paragraph.

141. The actions of OFFICER KROLL were the direct and proximate cause of the constitutional violations and the resulting injuries that PLAINTIFF LENNETH SUGGS sustained.

**ANSWER:** Defendants deny the allegations in this paragraph.

142. The use of force upon PLAINTIFF LENNETH SUGGS was unreasonable and excessive and therefore violated the Fourth Amendment to the United States Constitution.

**ANSWER:** Defendants deny the allegations in this paragraph.

**COUNT III**
**State Law Claim for Battery**
**PLAINTIFFS SHAKEETA CASTLEBERRY, MICHAEL LEE, KENIFIA MCNEASE, JOVANNA LIBERTY, LAQUITA BRYANT, JEREMY SPENCER, LENNETH SUGGS, DARRYLMY GARNER, SHERWIN OTT, and TIFFANY THOMAS (GROUP PLAINTIFFS A) AGAINST DEFENDANT CITY OF CHICAGO**

143. GROUP PLAINTIFFS A re-allege paragraphs 1-131 as though fully set forth herein.

**ANSWER:** Defendants incorporate their answers to each preceding paragraph 1-131 as if fully

restated here.

144. One or more CITY OF CHICAGO POLICE OFFICERS battered GROUP PLAINTIFFS A by pepper-spraying and/or striking them without their consent and without legal justification.

**ANSWER:** Defendants deny the allegations in this paragraph.

145. The use of pepper spray on GROUP PLAINTIFFS A violated Illinois state law.

**ANSWER:** Defendants deny the allegations in this paragraph.

146. The actions of one or more CITY OF CHICAGO POLICE OFFICERS were the direct and proximate cause of the battery and the resulting injuries that GROUP PLAINTIFFS A sustained.

**ANSWER:** Defendants deny the allegations in this paragraph.

147. The batteries against GROUP PLAINTIFFS A were committed willfully and wantonly, in the course and scope of their employment, and thus DEFENDANT CITY OF CHICAGO is liable based on a theory of *respondeat superior*.

**ANSWER:** Defendants deny the allegations in this paragraph.

**COUNT IV**
**§1983 Claim for Excessive Force/Failure to Intervene**
**PLAINTIFFS ROSALIND BALL, LATINA WILLIAMS, JOSE MCKNIGHT, CLIFFORD ARMSTRONG, CHRIS COBBS, LARRENZO FULTON (GROUP PLAINTIFFS B), and AGAINST SGT. LITTLE'S TEAM**

148. GROUP PLAINTIFFS B re-allege paragraphs 1-131 as though fully set forth herein.

**ANSWER:** Defendants incorporate their answers to each preceding paragraph 1-131 as if fully restated here.

149. On or about November 4, 2008, SGT. LITTLE'S TEAM lacked probable cause or a legal basis to believe that GROUP PLAINTIFFS B had violated any law or were using force against themselves, any other police officers or any other person.

**ANSWER:** Defendants deny the allegations in this paragraph.

150. Nevertheless, SGT. LITTLE'S TEAM individually and/or as a group, pepper-sprayed and/or otherwise battered GROUP PLAINTIFFS B without provocation and without legal justification.

**ANSWER:** Defendants deny the allegations in this paragraph.

151. SGT. LITTLE'S TEAM failed to intervene in the use of force upon GROUP PLAINTIFFS B, even though SGT. LITTLE'S TEAM was aware that this use of force was unreasonable and excessive and despite having a reasonable opportunity to prevent it.

**ANSWER:** Defendants deny the allegations in this paragraph.

152. The use of force upon GROUP PLAINTIFFS B and the failure to intervene were unreasonable and excessive and thereby violated the Fourth Amendment to the United States Constitution.

**ANSWER:** Defendants deny the allegations in this paragraph.

153. The actions of SGT. LITTLE'S TEAM were the direct and proximate cause of the constitutional violations and the resulting injuries that GROUP PLAINTIFFS B sustained.

**ANSWER:** Defendants deny the allegations in this paragraph.

**COUNT V**
**State Law Claim for Battery**
**PLAINTIFFS ROSALIND BALL, LATINA WILLIAMS, JOSE MCKNIGHT, CLIFFORD ARMSTRONG, CHRIS COBBS, and LARRENZO FULTON (GROUP**

**PLAINTIFFS B) and YOLANDA FULTON AGAINST DEFENDANT CITY OF CHICAGO**

154. GROUP PLAINTIFFS B and PLAINTIFF YOLANDA FULTON re-allege paragraphs 1-131as though fully set forth herein.

**ANSWER:** Defendants incorporate their answers to each preceding paragraph 1-131 as if fully restated here.

155. One or more CITY OF CHICAGO POLICE OFFICERS battered GROUP PLAINTIFFS B and PLAINTIFF YOLANDA FULTON by pepper-spraying and/or striking them without their consent and without legal justification.

**ANSWER:** Defendants deny the allegations in this paragraph.

156. The use of pepper spray on GROUP PLAINTIFFS B and PLAINTIFF YOLANDA FULTON violated Illinois state law.

**ANSWER:** Defendants deny the allegations in this paragraph.

157. The actions of one or more CITY OF CHICAGO POLICE OFFICERS were the direct and proximate cause of the battery and the resulting injuries that GROUP PLAINTIFFS B and PLAINTIFF YOLANDA FULTON sustained.

**ANSWER:** Defendants deny the allegations in this paragraph.

158. The batteries against GROUP PLAINTIFFS B and PLAINTIFF YOLANDA FULTON were committed willfully and wantonly, in the course and scope of their employment, and thus DEFENDANT CITY OF CHICAGO is liable based on a theory of *respondeat superior*.

**ANSWER:** Defendants deny the allegations in this paragraph.

**COUNT VI**
**§1983 Claim for False Arrest/Failure to Intervene**
**PLAINTIFFS LATINA WILLIAMS, JOSE MCKNIGHT, and CLIFFORD ARMSTRONG AGAINST SGT. LITTLE'S TEAM**

159. PLAINTIFFS LATINA WILLIAMS, JOSE MCKNIGHT, and CLIFFORD ARMSTRONG re-allege paragraphs 1-131as though fully set forth herein.

**ANSWER:** Defendants incorporate their answers to each preceding paragraph 1-131 as if fully restated here.

160. Officers on SGT. LITTLE'S TEAM did not have a reasonable belief that PLAINTIFFS LATINA WILLIAMS, JOSE MCKNIGHT, or CLIFFORD ARMSTRONG had committed, were committing or were about to commit any criminal acts. Therefore, SGT. LITTLE'S TEAM lacked probable cause to arrest these PLAINTIFFS LATINA WILLIAMS, JOSE MCKNIGHT, a n d CLIFFORD ARMSTRONG and their conduct in arresting these PLAINTIFFS violated the Fourth Amendment to the United States Constitution.

**ANSWER:** Defendants deny the allegations in this paragraph.

161. The actions of SGT. LITTLE'S TEAM alleged herein were the direct and proximate cause of the constitutional violations and the resulting injuries that PLAINTIFFS LATINA WILLIAMS, JOSE MCKNIGHT, and CLIFFORD ARMSTRONG sustained.

**ANSWER:** Defendants deny the allegations in this paragraph.

162. Additionally, SGT. LITTLE'S TEAM knew PLAINTIFFS LATINA WILLIAMS, JOSE MCKNIGHT, and CLIFFORD ARMSTRONG were being arrested without any lawful justification, had the reasonable opportunity to prevent the false arrest, yet failed to do so.

**ANSWER:** Defendants deny the allegations in this paragraph.

**COUNT VII**
**State Law Claim for False Imprisonment**
**PLAINTIFFS LATINA WILLIAMS, JOSE MCKNIGHT,**
**and CLIFFORD ARMSTRONG AGAINST DEFENDANT CITY OF CHICAGO**

163. PLAINTIFFS LATINA WILLIAMS, JOSE MCKNIGHT, and CLIFFORD ARMSTRONG re-allege paragraphs 1-131as though fully set forth herein.

**ANSWER:** Defendants incorporate their answers to each preceding paragraph 1-131 as if fully restated here.

164. One or more CITY OF CHICAGO POLICE OFFICERS did not have a reasonable belief that PLAINTIFFS LATINA WILLIAMS, JOSE MCKNIGHT, or CLIFFORD ARMSTRONG had committed, were committing or were about to commit any criminal acts. Therefore, one or more CITY OF CHICAGO POLICE OFFICERS lacked probable cause to arrest these PLAINTIFFS LATINA WILLIAMS, JOSE MCKNIGHT, a n d CLIFFORD ARMSTRONG and their conduct in arresting these PLAINTIFFS violated the Constitution of the State of Illinois and Illinois law.

**ANSWER:** Defendants deny the allegations in this paragraph.

165. The actions of one or more CITY OF CHICAGO POLICE OFFICERS alleged herein were the direct and proximate cause of the state law violations and the resulting injuries that PLAINTIFFS LATINA WILLIAMS, JOSE MCKNIGHT, and CLIFFORD ARMSTRONG sustained.

**ANSWER:** Defendants deny the allegations in this paragraph.

166. The false imprisonment committed against PLAINTIFFS LATINA WILLIAMS, JOSE MCKNIGHT, and CLIFFORD ARMSTRONG was done willfully and wantonly, in the course and scope of their employment, and thus DEFENDANT CITY OF CHICAGO is liable based on a theory of *respondeat superior*.

**ANSWER:** Defendants deny the allegations in this paragraph.

**COUNT VII**
**State Law Claim for Malicious Prosecution**
**PLAINTIFFS JOSE MCKNIGHT and CLIFFORD ARMSTRONG**
**AGAINST DEFENDANT CITY OF CHICAGO**

167. PLAINTIFFS JOSE MCKNIGHT and CLIFFORD ARMSTRONG re-allege paragraphs 1-131as though fully set forth herein.

**ANSWER:** Defendants incorporate their answers to each preceding paragraph 1-131 as if fully restated here.

168. One or more CITY OF CHICAGO POLICE OFFICERS, acting within the course and scope of their employment with the CITY OF CHICAGO, alleged, signed criminal complaints, and/or played a substantial role in prosecutions that charged PLAINTIFFS JOSE MCKNIGHT and CLIFFORD ARMSTRONG with violating laws of the State of Illinois.

**ANSWER:** Defendants deny the allegations in this paragraph.

169. One or more CITY OF CHICAGO POLICE OFFICERS continued a criminal proceeding against these PLAINTIFFS.

**ANSWER:** Defendants deny the allegations in this paragraph.

170. One or more CITY OF CHICAGO POLICE OFFICERS engaged in this effort without probable cause.

**ANSWER:** Defendants deny the allegations in this paragraph.

171. The underlying criminal charges were resolved in a manner indicative of innocence.

**ANSWER:** Defendants deny the allegations in this paragraph.

172. The actions alleged above were the direct and proximate cause of the violations of Illinois state law and the injuries sustained by PLAINTIFFS JOSE MCKNIGHT and CLIFFORD ARMSTRONG, as set forth above.

**ANSWER:** Defendants deny the allegations in this paragraph.

173. The actions alleged above were done willfully and wantonly, in the course and scope of their employment, and thus DEFENDANT CITY OF CHICAGO is liable based on a theory of *respondeat superior*.

**ANSWER:** Defendants deny the allegations in this paragraph.

**COUNT VIII**
**State Law Claim for Spoliation of Evidence**
**PLAINTIFFS AGAINST DEFENDANT CITY OF CHICAGO**

174. PLAINTIFFS re-allege paragraphs 1-131as though fully set forth herein.

**ANSWER:** Defendants incorporate their answers to each preceding paragraph 1-131 as if fully restated here.

175. One or more CITY OF CHICAGO POLICE OFFICERS had a duty to create and/or preserve evidence in relation to this incident.

**ANSWER:** Defendants admit the allegations in this paragraph.

176. Nevertheless, one or more CITY OF CHICAGO POLICE OFFICERS willfully and wantonly and/or negligently spoiled evidence.

**ANSWER:** Defendants deny the allegations in this paragraph.

177. If GROUP PLAINTIFFS A are unable to prove any claims in this case, it is a result of one or more CITY OF CHICAGO POLICE OFFICERS' willful and wanton and/or negligent spoliation of evidence.

**ANSWER:** Defendants deny the allegations in this paragraph.

178. Additionally, and/or alternatively, LT. KILROY is liable on a spoliation claim because he intentionally hid evidence from PLAINTIFFS. This evidence that was discovered at a much later date specifically detailed the misconduct of one or more CITY OF CHICAGO POLICE

OFFICERS, the result of which was the incurring of significant unnecessary legal expense, as well as potentially forever losing the ability to fully identify the officers who committed tortious and/or unconstitutional acts on PLAINTIFFS.

**ANSWER:** Defendants deny the allegations in this paragraph.

179. The conduct of one or more CITY OF CHICAGO POLICE OFFICERS alleged in this Count violated Illinois law.

**ANSWER:** Defendants deny the allegations in this paragraph.

180. The actions of one or more CITY OF CHICAGO POLICE OFFICERS were the direct and proximate cause of the constitutional violations and the injuries sustained by the PLAINTIFFS.

**ANSWER:** Defendants deny the allegations in this paragraph.

181. Additionally, and/or alternatively, the CITY OF CHICAGO is liable to the PLAINTIFFS for the spoliation of evidence based on the fact that one or more CITY OF CHICAGO POLICE OFFICERS acted willfully and wantonly and/or negligently and within the course and scope of their employment with the CITY OF CHICAGO when the evidence was spoiled.

**ANSWER:** Defendants deny the allegations in this paragraph.

**COUNT IX**
**§1983 Claim for Supervisory Liability**
**PLAINTIFFS AGAINST LT. KILROY**

182. PLAINTIFFS re-allege paragraphs 1-131as though fully set forth herein.

**ANSWER:** Defendants incorporate their answers to each preceding paragraph 1-131 as if fully restated here.

183. LT. KILROY approved, facilitated, condoned and/or ordered the actions of DEFENDANT OFFICERS described in this Complaint.

**ANSWER:** Defendants deny the allegations in this paragraph.

184. Specifically, on the evening of November 4, 2008 into the early morning of November 5, 2008, LT. KILROY ordered that DEFENDANT OFFICERS spray pepper spray in the direction of the crowds on either side of the caravan.

**ANSWER:** Defendants admit the allegations in this paragraph.

185. Specifically, on the evening of November 4, 2008, LT. KILROY authorized DEFENDANT OFFICERS to use OC spray to disperse crowds in the 15th District.

**ANSWER:** Defendants admit the allegations in this paragraph.

186. In the alternative, LT. KILROY knew about DEFENDANT OFFICERS' conduct, and/or turned a blind eye to DEFENDANT OFFICERS' conduct described in this Complaint.

**ANSWER:** Defendants deny the allegations in this paragraph.

187. The actions of LT. KILROY amounted to a violation of PLAINTIFFS' Constitutional Rights and proximately caused the PLAINTIFFS to suffer damages.

**ANSWER:** Defendants deny the allegations in this paragraph.

**COUNT X**
**§1983 Claim for Supervisory Liability**
**PLAINTIFFS AGAINST COMMANDER GREEN, LT. STEVENS, SGT. LITTLE, SGT. KROSKI, and SGT. STRUKE**

188. PLAINTIFFS re-allege paragraphs 1-131as though fully set forth herein.

**ANSWER:** Defendants incorporate their answers to each preceding paragraph 1-131 as if fully restated here.

189. District Commander GREEN, LT. STEVENS, SGT. LITTLE, S G T .KROSKI, a nd SGT . STRUKE approved, facilitated, condoned and/or ordered the actions of DEFENDANT OFFICERS described in this Complaint.

**ANSWER:** Defendants deny the allegations in this paragraph.

190. In the alternative, District Commander GREEN, LT. STEVENS, SGT. LITTLE, SGT. KROSKI, and SGT. STRUKE knew about DEFENDANT OFFICERS' conduct, and/or turned a blind eye to DEFENDANT OFFICERS' conduct described in this Complaint.

**ANSWER:** Defendants deny the allegations in this paragraph.

191. The actions of District Commander GREEN, LT. STEVENS, SGT. LITTLE, SGT. KROSKI, and SGT. STRUKE amounted to a violation of PLAINTIFFS' Constitutional Rights and proximately caused the PLAINTIFFS to suffer damages.

**ANSWER:** Defendants deny the allegations in this paragraph.

## COUNT XI
## 745 ILCS 10/9-102 Claim
## PLAINTIFFS AGAINST CITY OF CHICAGO

192. PLAINTIFFS re-allege paragraphs 1-131as though fully set forth herein.

**ANSWER:** Defendants incorporate their answers to each preceding paragraph 1-131 as if fully restated here.

193. DEFENDANT CITY OF CHICAGO is the employer of the DEFENDANT OFFICERS.

**ANSWER:** Defendants admit the allegations in this paragraph.

194. One or more of the DEFENDANT OFFICERS committed the acts alleged above under color of law and in the scope of their employment by DEFENDANT CITY OF CHICAGO.

**ANSWER:** Defendants deny the allegations in this paragraph.

## COUNT XII
## Supplemental Claim for *Respondeat superior*
## PLAINTIFFS AGAINST CITY OF CHICAGO

195. PLAINTIFFS re-allege paragraphs 1-131as though fully set forth herein.

**ANSWER:** Defendants incorporate their answers to each preceding paragraph 1-131 as if fully restated here.

196. The acts of the DEFENDANT OFFICERS and CITY OF CHICAGO POLICE OFFICERS, which violated Illinois state law, were committed in the scope of the DEFENDANTS OFFICERS' and CITY OF CHICAGO POLICE OFFICERS' employment by the CITY OF CHICAGO.

**ANSWER:** Defendants deny the allegations in this paragraph.

197. Thus, DEFENDANT CITY OF CHICAGO, as the DEFENDANT OFFICERS' and CITY OF CHICAGO POLICE OFFICERS' principal, is liable for the actions of its agents under the doctrine of *respondeat superior*.

**ANSWER:** Defendants deny the allegations in this paragraph.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE<br>QUALIFIED IMMUNITY

The Defendant Officers are government officials, namely police officers, who performed discretionary functions. At all times material to the events alleged in Plaintiff's Complaint, a reasonable police officer objectively viewing the facts and circumstances that confronted the Defendant Officers could have believed their actions to be lawful, in light of clearly established law and the information that the Defendant Officers possessed. The Defendant Officers, therefore, are entitled to qualified immunity.

### SECOND AFFIRMATIVE DEFENSE<br>STATE TORT IMMUNITY ACT 745 ILCS 10/2-202

The Defendant Officers were working as police officers at the time of this incident. Therefore, as to all claims, under the Illinois Tort Immunity Act, the Defendant Officers are not liable for any of the claims alleged because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any law, unless such acts or omissions constitute willful and wanton conduct. 745 ILCS 10/2-202 (West 2008).

### THIRD AFFIRMATIVE DEFENSE<br>STATE TORT IMMUNITY ACT 745 ILCS 10/2-204

The Defendant Officers are not liable for any of Plaintiffs' alleged claims because a public employee, as such and acting within the scope of his/her employment, is not liable for an injury caused by the act or omission of another person. 745 ILCS 10/2-204 (West 2008).

**FOURTH AFFIRMATIVE DEFENSE**
**MITIGATION OF DAMAGES**

To the extent Plaintiffs failed to mitigate any of their claimed injuries or damages, any verdict or judgment obtained by Plaintiffs must be reduced by application of the principle that Plaintiffs have a duty to mitigate their respective damages, commensurate with the degree of failure to mitigate attributed to Plaintiffs by a jury in this case.

**FIFTH AFFIRMATIVE DEFENSE**
**STATE COMPARATIVE AND CONTRIBUTORY FAULT LAW**

To the extent that any injuries or damages claimed by the Plaintiffs against the Defendant Officers were caused, in whole or in part, by negligent, willful and wanton, and intentional conduct of the Plaintiffs, even if the Defendant Officers were liable in damages, the total amount of damages to which Plaintiffs would otherwise be entitled must be reduced by application of principles of comparative fault in proportion to the amount of the negligent, willful and wanton and intentional conduct of Plaintiffs which were the proximate cause of their respective injuries. In addition, at the time of the actions alleged in Plaintiffs' Complaint, Illinois statute 735 ILCS 5/2-1116 (West 2000) was in effect and reduces a plaintiff's recovery according to his contributory negligence and bars his recovery entirely when a plaintiff is more than fifty percent (50%) of the proximate cause of the injury or damage for which recovery is sought.

**SIXTH AFFIRMATIVE DEFENSE**
**JUSTIFIED USE OF FORCE IN DEFENSE OF PERSON, 720 ILCS 5/7-1, 5/7-5**

The Defendant Officers were justified in the use of force against Plaintiffs' imminent use of unlawful force, since they reasonably believed that such conduct was necessary to defend themselves or others from bodily harm. 720 ILCS 5/7-1 and/or 720 ILCS 5/7-5 (West 2008).

**SEVENTH AFFIRMATIVE DEFENSE**
**PEACE OFFICER'S USE OF FORCE IN MAKING ARREST, 720 ILCS 5/7-5**

The Defendant Officers were justified in the use of force against Plaintiffs since theyreasonably believed it to be necessary to effect the arrest of Plaintiffs and to defend themselves or others from bodily harm while making the arrest. 720 ILCS 5/7-5 (West 2008).

**EIGHTH AFFIRMATIVE DEFENSE**
**CLAIM OF EXCESSIVE FORCE**

The Defendant Officers' use of force was reasonable and justifiable under the circumstances. A peace officer is justified in the use of any force which he reasonably believes to be necessary to effect arrest and of any force which he reasonably believes to be necessary to defend himself or another from bodily harm while making the arrest. 720 ILCS 5/7-5 (West 2008).

**NINTH AFFIRMATIVE DEFENSE**
**STATE TORT IMMUNITY ACT 745 ILCS 10/9-102**

Defendant City is not liable to plaintiff if its employees or agents are not liable to the plaintiff. 745 ILCS 10/2-109 (West 2008).

**TENTH AFFIRMATIVE DEFENSE**
**STATE TORT IMMUNITY ACT 745 ILCS 10/2-1-2**

Under the Tort Immunity Act, the City is not required to pay punitive or exemplary damages in any action brought directly or indirectly against by the injured party or a third party. 745 ILCS 10/2-1-2 (West 2008).

**ELEVENTH AFFIRMATIVE DEFENSE**
**SCOPE OF EMPLOYMENT**

The City is not liable to Plaintiff for tort judgment or settlement for any damages for which its employee was acting outside the scope of his employment. 745 ILCS 10/9-102 (West 2008).

**TWELTH AFFIRMATIVE DEFENSE**
**ABSOLUTE IMMUNITY**

To the extent any Count in this Complaint purports to attempt to impose liability on any Defendants relating to acts of perjury or false testimony of any kind, or failure to testify or disclose the true nature of the circumstances leading up to Plaintiff's arrest or prosecution, Defendants are absolutely immune from liability pursuant to federal and state law immunities. *Briscoe v. Lahue,* 460 U.S. 325 (1983); *Jurgenson v. Haslinger*, 295 Ill. App. 3d 139 (3d Dist. 1998).

**THIRTEENTH AFFIRMATIVE DEFENSE**
**745 Ill. Comp. Stat. 10/2-208**

1. At all times relevant to this suit, the Defendant Officers were acting within the scope of their employment as police officers employed by the CITY OF CHICAGO.

2. Defendant Officers did not act maliciously and/or willfully or wantonly or without probable cause.

3. Accordingly, Defendant Officers are not liable for any injury caused by instituting or prosecuting any judicial proceeding within the scope of their employment pursuant to 745 Ill. Comp. Stat. 10/2-208.

4. Because the Defendant Officers are immune, Defendant CITY OF CHICAGO is also immune pursuant to 745 Ill. Comp. Stat. 10/2-109.

**FOURTEENTH AFFIRMATIVE DEFENSE**
**745 Ill. Comp. Stat. 10/2-201**

1. At certain times relevant to this suit, the Defendant Officers were performing discretionary acts within the scope of their employment pursuant to 745 Ill. Comp. Stat. 10/201 and thus are immune from suit.

2. Because the Defendant Officers are immune, Defendant CITY OF CHICAGO is also immune pursuant to 745 Ill. Comp. Stat. 10/2-109.

**FIFTEENTH AFFIRMATIVE DEFENSE**
**745 Ill. Comp. Stat. 10/2-210**

1. To the extent the acts alleged are held to constitute a negligent misrepresentation or provision of information by the Defendant Officers, the Defendant Officers are immune from suit as public employees acting in the scope of employment pursuant to 745 Ill. Comp. Stat. 10/2-210.

2. Because the Defendant Officers are immune, Defendant CITY OF CHICAGO is also immune pursuant to 745 Ill. Comp. Stat. 10/2-109.

**SIXTEENTH AFFIRMATIVE DEFENSE**
**745 Ill. Comp. Stat. 10/2-205 and 745 Ill. Comp. Stat. 10/2-103**

1. To the extent any Count in this Complaint seeks recovery based on an injury relating to a failure to enforce the law, Defendant Officers are immune from suit pursuant to 745 Ill. Comp. Stat. 10/2-205.

2. Because Defendant Officers are immune, Defendant CITY OF CHICAGO is also immune pursuant to 745 Ill. Comp. Stat. 10/2-109.

3. To the extent any Count in this Complaint seeks recovery based on an injury relating to a failure to enforce the law against Defendant CITY OF CHICAGO, Defendant CITY OF CHICAGO is immune from suit pursuant to 745 Ill. Comp. Stat. 10/2-103.

**SEVENTEENTH AFFIRMATIVE DEFENSE**
**745 Ill. Comp. Stat. 10/2-212**

1. To the extent that any Count in this Complaint seeks recovery based on joint action between public employees, Defendant Officers are immune from suit pursuant to 745 Ill. Comp. Stat. 10/2-212.

2. Because Defendant Officers are immune, Defendant CITY OF CHICAGO is also immune pursuant to 745 Ill. Comp. Stat. 10/2-109.

**EIGHTEENTH AFFIRMATIVE DEFENSE**
**745 Ill. Comp. Stat. 10/2-107**

1. Pursuant to 745 Ill. Comp. Stat. 10/2-107, a local public entity is not liable for injury caused by any action of its employees relating to the provision of information.

2. Defendant CITY OF CHICAGO is a local public entity within the meaning of this statute.

3. Thus, to the extent the Defendant Officers are found liable in any Count in this Complaint, Defendant CITY OF CHICAGO is immune from suit.

**NINETEENTH AFFIRMATIVE DEFENSE**
**STATUTE OF LIMITATIONS ON FEDERAL CLAIMS**

To the extent any of plaintiffs' claims arising under 42 U.S.C. § 1983 accrued more than two years prior to the institution of this suit, plaintiffs' claims are barred by the applicable statute of limitations.

**TWENTIETH AFFIRMATIVE DEFENSE**
**745 ILL. COMP. STAT. 10/8-101(a)**

To the extent any Count in this Amended Complaint seek recovery under state law for any acts or omissions of a local public entity or any of its employees accruing more than one year prior to the filing of this suit, such local public entity or employee thereof is immune from suit pursuant to 745 Ill. Comp. Stat. 10/8-101(a).

WHEREFORE Defendants deny that Plaintiffs are entitled to judgment in the sum claimed or in any sum of money whatever and asks that judgment be entered in their favor and against Plaintiffs with costs. Defendants demand a trial by jury.

Respectfully submitted,

BORKAN & SCAHILL, LTD.

By: /s/ Misha Itchhaporia
Misha Itchhaporia

Misha Itchhaporia (6292695)
BORKAN & SCAHILL, LTD.
Two First National Plaza
20 South Clark Street, Suite 1700
Chicago, Illinois 60603
(312) 580-1030