# EXHIBIT 166
(Per Dkt. 461 redactions made consistent with Fed. R. Civ. P. 5.2 (a))

**INDEPENDENT POLICE REVIEW AUTHORITY**            Page 1 of 19
**Log# 1021411**

### ALLEGATIONS:

On 04 November 2008, IPRA began to receive numerous telephone calls by citizens complaining that while peacefully celebrating the election of President Obama they were sprayed with mace by unknown members of the Chicago Police Department. Initially all complaints were gather and placed under this one log number. Due to the various times, dates and locations of these incidents, eventually additional log numbers were created to address each specific incident and the allegations which arose. The initial callers are addressed in this log number. It is alleged that at various times and location on 04/05 November 2008, **Unknown Officers:** 1). sprayed the victims with mace without justification.

On November 21, 2008, civil suit **08CV6688** was filed in relation to allegations of the events of 04/05 November 2008. The suit list, Lenneth Suggs, Sherwin Ott, Michael Lee, Christopher Cobbs, Marvin Wideman, Frank James, Latina Williams, Darrylmy Garner, Kenifia McNease, Ruthie Rogers, as guardian of L███████ F████, Yolando Fulton, Tiffany Thomas, Keith Watts, Rosalind Ball, Jeremy Spencer, Jovonna Liberty, LaQuita Bryant, Melinda Robinson, Jose McKnight, Moshay Barnes, Shakeeta Castleberry, Mary Ann Rogers and Clifford Armstrong, Plaintiffs. Officer Zinchuck, #3893, Officer Duggan, #4607, Officer L. Watkins, #17724, Officer Wazny, #11019, Officer Kroll, #14373, Officer Lacz, #15609, Officer Wyroba, #3152, Officer Frigo, #8585, Officer Little, #885, Unknown Officers, and the City of Chicago, Defendants. It is alleged that some of the Defendant Officers approached and, using unreasonable force, pepper sprayed the plaintiffs about the eyes and face. Also the show of force initiated by and/or the failure to intervene in use of said force by some of the Defendant Officers caused an unreasonable seizure of the plaintiffs, in violation of the Fourth Amendment of the United States Constitution. (Attachment # 65)

All attempts to have the victims provide statements regarding these incidents were met with negative results once the lawsuit was filed by representing Attorney Blake Horwitz. Prior to the filing of the civil suit several witness and victim interviews were obtained by IPRA.

An incident at 167 N. Latrobe at approximately 0030 hours on 05 November 2008 resulted in numerous arrests and the use of OC spray by responding CPD officers. This incident and the resulting response represent the vast majority of the civil suit complaint.

In an in-person interview with IPRA **Victim Clifford Armstrong** stated that on 05 Nov 08, at approximately 00:30 hours, Armstrong was in the backyard of 167 N. Latrobe Ave., barbequing and playing cards. Armstrong explained there were approximately 10 people in the backyard at the time and he estimated he had drank about four 16 oz, beers, but recalled he was sober. Armstrong stated he is "on disability", suffering from a bipolar condition, for which he takes medication. Armstrong also has asthma.

Armstrong, at that time, saw a gathering of people, on Laramie Ave., one block to the east and Armstrong noticed several police cars driving southbound thru the alley on

**INDEPENDENT POLICE REVIEW AUTHORITY**  Page 2 of 19
**Log# 1021411**

three separate occasions, apparently chasing young people who were running in the alley, then into the backyard of 167 N. Latrobe Ave. Armstrong stated the young people ran thru the yard and out onto Latrobe Ave. On the third occasion, the police cars stopped in the alley. The officers got out of the squad cars and were noticed as having mace canisters in their hands. Armstrong instructed the officers not to spray him because of his asthma condition. Armstrong, on the other two occasions, was not sprayed by the officers. On the third occasion, the officers that arrived in the squad cars were joined by other officers who were on foot and the group of officers then entered the backyard of 167 N. Latrobe Ave. Armstrong described the officers as white males, some dressed in regular blue uniforms and other officers in black jumpsuits. Armstrong encountered an officer, approximately 6'1" to 6'2" in height, wearing a black jumpsuit and a helmet. The officer did not wear glasses and wore a mustache, having dark brown hair. The officer instructed Armstrong to "Get on the floor" and "get the fuck down and stay the fuck down". Armstrong responded by asking the officer, "for what?" The officer then sprayed mace into Armstrong's face from a large red canister. Armstrong was bound with plastic handcuffs and taken to the 015th Chicago Police Department Station.

Armstrong stated he did nothing to cause the officer to spray him in the face. Armstrong saw other people in the back yard, also being sprayed, and observed other people running from the yard. (Attachment #25)

The **Arrest Report** for Clifford Armstrong indicates that Armstrong was arrested on 05 November 2008 for Obstructing an Officer. According to the arrest report the responding officers were in pursuit of offenders who had damaged their squad car by throwing bottles to break the windshield. Armstrong was placed into custody when he stepped in front of officers while in pursuit not allowing to pass through the gangway. Officers Frigo #8585, Zinchuk # 3893, Duggan #4607, Kroll#14373, Little #885, all completed TRR's relative to this incident and subsequently were named as Defendant Officers in civil suit **08CV6688** (Attachment # 27).

In **Civil Suit 08CV6688** it is alleged that Armstrong, was standing at or near 167 N. Latrobe Ave., some of the Defendant Officers approached and, using unreasonable force, he was pepper sprayed about his eyes and face. Also the show of force initiated by and/or the failure to intervene in use of said force by some of the defendant officers caused an unreasonable seizure of Armstrong, in violation of the Fourth Amendment of the United States Constitution. In addition, some of the Defendant Officers arrested Armstrong notwithstanding the fact that Armstrong had not committed and criminal act. This conduct violated the Fourth Amendment to the United States Constitution.

A Tactical Response Report, filed 05 Nov 08, by Officer Andrew J. Kroll, #14373, related to the arrest of Clifford Armstrong. The report advised of the use of OC chemical spray, when Armstrong, allegedly, did not follow verbal commands. (Attachment #28).

**INDEX PENDENT POLICE REVIEW AUTHORITY**                  Page 3 of 19
**Log# 1021411**

In **Civil Suit 08CV6688** it is alleged that **Plaintiff Rosalind Ball** while standing at or near 167 N. Latrobe Ave., some of the Defendant Officers approached and, using unreasonable force, she was pepper sprayed about her eyes and face. Also the show of force initiated by and/or the failure to intervene in use of said force by some of the defendant officers caused an unreasonable seizure of Ball, in violation of the Fourth Amendment of the United States Constitution. (Attachment # 65)

All attempts to have the victims provide statements regarding these incidents were met with negative results once the lawsuit was filed by representing Attorney Blake Horwitz. Prior to the filing of the civil suit several witness and victim interviews were obtained by IPRA.

In **Civil Suit 08CV6688** it is alleged that **Plaintiff Moshay Barnes** it is alleged that Barnes, was between West Maypole Ave. and West End Ave., on North Laramie Ave., when some of the Defendant Officers approached and, using unreasonable force, she was pepper sprayed about her eyes and face and was also battered on or about her body. Also the show of force initiated by and/or the failure to intervene in use of said force by some of the Defendant Officers caused an unreasonable seizure of Barnes, in violation of the Fourth Amendment of the United States Constitution. (Attachment # 65)

All attempts to have the victims provide statements regarding these incidents were met with negative results once the lawsuit was filed by representing Attorney Blake Horwitz. Prior to the filing of the civil suit several witness and victim interviews were obtained by IPRA.

In **Civil Suit 08CV6688** it is alleged that that LaQuita Bryant, while standing at or near the intersection of Laramie Ave. and Lake St., some of the Defendant Officers approached and, using unreasonable force, she was pepper sprayed about her eyes and face. Also, the show of force initiated by and/or the failure to intervene in use of said force by some of the defendant officers caused an unreasonable seizure of Bryant, in violation of the Fourth Amendment of the United States Constitution. (Attachment # 65)

In **Civil Suit 08CV6688** it is alleged that Shakeeta Castleberry while standing at or near the intersection of West Lake St. and Laramie Ave., some of the Defendant Officers approached and, using unreasonable force, she was pepper sprayed about her eyes and face. Castleberry then moved towards the intersection of West Maypole Ave. and North Laramie Ave. and there some of the Defendant Officers approached her again and, using unreasonable force, pepper spraying her about her eyes and face As before, the show of force initiated by and/or the failure to intervene in use of said force by some of the defendant officers caused an unreasonable seizure of Castleberry, in violation of the Fourth Amendment of the United States Constitution. (Attachment # 65)

In an in-person statement with IPRA on 18 Nov 08, Calvin Ray Cobbs Jr, stated he is the older brother of Christopher Cobbs. Between the hours of 22:00 and 23:00, Cobbs, Jr. was present in the alley, behind 139 N. Latrobe Ave., when he was grabbed by a

plainclothes, white, male officer, who was between 20 and 30 years of age, 6'3" tall, wearing a black hooded, a black scull cap, blue jeans and white gym shoes. The officer did not wear glasses and weighed between 230 and 250 lbs. The officer did not speak to Cobbs, Jr. as the officer punched Cobbs, Jr. in the mouth and about his body. Cobbs, Jr. fell to the ground in the alley and onto some rocks. The officer told Cobbs, Jr. to get up, but each time Cobbs, Jr. attempted to get to his feet, the officer kicked him to the ground. Other officers came upon the scene and they too began kicking and punching Cobbs, Jr. Cobbs was then dragged along the ground, over rocks and broken glass. Cobbs, Jr. said the officers then left him in the alley. Cobbs, Jr. was not maced. (Attachment # 46)

In an in-person statement with IPRA 06 Nov 08, Christopher Cobbs stated that he was present of the front porch of his residence on 05 Nov 08, at 0030 to 0100 hours, talking to his cousin Richie, last name unknown, who is 15 or 16 years old and resides on the southwest corner of Latrobe Ave. and Washington Blvd. Sitting in a car parked on the street outside Cobb's residence was Cobb's work Supervisor, "Dehairtus Bryan" (phonetic), from the place of Cobb's employment, First Shore, a collection agency, located at Lawrence Ave. at Clybourn Ave.

Approximately 10 to 15 police officers ran from the rear of Cobbs' house to the front and up onto his porch. Cobbs asked the officers what was happening and the officer replied that "all these houses are drug houses". One of the officers, described as having a dark complexion, possibly Hispanic, 6'3" to 6'4" in height, wearing a black jumpsuit, with a beard and black hair, approximately 31 years of age, discharged a chemical spray into the face of Cobbs. Cobbs grabbed the can of chemical spray and was successful in wrestling the can away from the officer. Another officer struck Cobb in the back. Cobb ran from his porch and ran north on Latrobe Ave. to a house where he entered the gangway and rinsed the chemical spray residue from his eyes. At his location, Cobbs threw the can of chemical spray under the porch. Cobbs then went to 167 N. Latrobe Ave. and saw officers and other people in the backyard, including Jose McKnight, who was arrested there. At that location also, Cobbs was sprayed in the face. At that location, the officers took 2 cell phones that Cobbs had in his possession. When Cobbs objected, the officers told Cobbs that either the cell phones would be confiscated or Cobbs would be arrested. Cobbs let the cell phones go and later tried to retrieve the cell phones at the 015th District Station, but was unsuccessful. (Attachment # 38)

Christopher Cobbs subsequently was represented by counsel and is named in **Civil Suit 08CV6688.** In the civil suit it is alleged that Cobbs, while walking at or near the intersection of Latrobe Ave. and Fulton St., some of the Defendant Officers approached and, using unreasonable force, he was pepper sprayed about his eyes and face and was also battered on or about his body. Also the show of force initiated by and/or the failure to intervene in use of said force by some of the defendant officers caused an unreasonable seizure of Cobbs, in violation of the Fourth Amendment of the United States Constitution. (Attachment # 65)

In an effort to arrange an interview with Bryan Dehairtus, on 03 Dec 08, a telephone call was placed to his place of business and it was discovered that both

**INDEPENDENT POLICE REVIEW AUTHORITY**            Page 5 of 19
**Log# 1021411**

telephone numbers called and it was determined that both numbers had been disconnected.

On 03 Dec 08, a personal visit was made to 4405 W. Lawrence Ave. At that time, it was determined that the office suite was empty and there was no notice of any new address for First Shore/Credit First Shore/Shore Credit First.

In an in-person interview with IPRA R▮▮ C▮ (16 yoa), provided a statement on 07 Nov 08, in the presence of Kimberly Williams, wherein Cole stated he was present in the backyard of 167 N. Latrobe Ave., playing cards with Marvin Wideman, Wideman's aunt, and 2 others on 04 Nov 08, between the hours of 23:00 and 23:59, when 3 boys ran thru the yard, being pursued by 20 to 30 officers. Five of the officers stopped in the yard and everyone present were told to get on the ground. The officers told the group that someone had thrown a bottle at them. Everyone got on the ground. A white male officer kicked C▮ twice on the bottom of his shoes. C▮ stated that Wideman was sprayed with a chemical spray first and then a white male officer sprayed C▮ in the face. A female officer sprayed C▮ and then a male officer sprayed C▮ again. C▮ could not breathe nor see. Cole alleged others in the yard were also sprayed by the officers. C▮ could hear others in the yard screaming and could hear the officers instructed them to" shut the fuck up". C▮ hands were handcuffed behind his back with a plastic tie and he was placed in the rear of a paddy wagon with Wideman, an unknown female and 2 other unknown males. C▮ was taken to the 015th District Station and given water to wash the chemical spray residue from his eyes. C▮ recalled seeing a name tag on one of the officers that read "Officer Tim". C▮ denied resisting the Officers at the time of his arrest. (Attachment #21)

Chicago Police Department Arrest report CB#17408576, listed the arrest of R▮▮ C. C▮ on 05 Nov 08, at 00:30, at 167 N. Latrobe Ave. on a charge of Reckless Conduct. In the summary portion of the report, it was stated that while on patrol, Offenders C▮ Wideman and Rivers were observed throwing bottles at police vehicles as they passed, yelling "fuck the police, Obama bitches". One of the bottles hit the R/O's vehicle windshield and the R/O's gave chase. Offender McKnight impeded the officers by attempting to lock a gate. McKnight further attempted to impede the officers by stepping in front of PO Zinchuk, blocking him from passing and swinging his arms as if he were throwing punches. After a brief foot chase all the other offenders were placed into custody. (Attachment #23)

A Chicago Police Department **Tactical Response Report** was filed on 05 Nov 08 by PO Adam Wazny, #11019, on 05 Nov 08 at 00:25, related to the arrest of R▮▮ F. C▮ The TRR alleged that C▮ did not follow verbal directions, stiffened (dead weight), fled and pulled away, causing the officer to utilize chemical spray. (Attachment #24)

On 07 Nov 08, L▮▮▮ F▮ provided an in-person statement. F▮ alleged he was present at 157 N. Latrobe Ave., at approximately 23:30 hours with R▮▮e C▮ Marvin Wideman and 2 unknown male black individuals, celebrating the victory of

Barack Obama in the Presidential Election that evening. Some of those present were playing cards and the others present were standing around talking. F▮ stated he was in the alley drinking alcoholic beverages and celebrating. F▮ was then present in the back yard of that residence when an incident occurred on Laramie Ave., which caused the police to discharge mace on people. Several of the people ran from Laramie Ave. to a vacant lot next to 157 N. Latrobe Ave. Several police officers chased these individuals to the vacant lot and some of the officers approached F▮ and his group and began discharging mace on them. F▮ was sprayed in the face and he fell to the ground. While on the ground, officers kicked F▮ about his body, arm, legs and face, under his left eye. The officers also used a baton to strike F▮ on the elbow. F▮ described the officers as white male and female officers, dressed in black uniforms and helmets. After F▮ encounter, other people present were arrested and placed inside squadrols. F▮ was assisted by an unknown individual who brought him to his grandmother's house. His grandmother then washed the spray residue from his eyes. F▮ suffered a burning sensation to his eyes, a laceration/swelling below his left eye and bruises to his left hand and elbow. F▮ also had bruising to both legs. F▮ did not seek professional medical treatment for his injuries. Fulton identified one of the "accused" as PO "Tim". (Attachment #34)

   In **Civil Suit 08CV6688** it is alleged that L▮ F▮ while standing at or 167 N. Latrobe Ave., some of the Defendant Officers approached and, using unreasonable force, he was pepper sprayed about his eyes and face and was also battered on or about his body. Also the show of force initiated by and/or the failure to intervene in use of said force by some of the defendant officers caused an unreasonable seizure of Fulton, in violation of the Fourth Amendment of the United States Constitution. (Attachment # 65)

   In **Civil Suit 08CV6688** it is alleged that victim Yolanda Fulton while standing at or near the intersection of Laramie Ave. and Maypole Ave. St., some of the Defendant Officers approached and, using unreasonable force, she was pepper sprayed about her eyes and face. Also the show of force initiated by and/or the failure to intervene in use of said force by some of the defendant officers caused an unreasonable seizure of Thomas, in violation of the Fourth Amendment of the United States Constitution. (Attachment # 65)

   In an in person interview with IPRA, Darrylme Garner, stated he was proceeding to the home of his grandmother, who lives at 167 N. Latrobe Ave., at approximately 23:00 hours on 04 Nov 08. Garner was with a friend, Maureese Marshall, and the two had just walked across Laramie Ave., from east to west, at approximately 160 N. Laramie Ave., just south of Maypole Ave. At that time, Garner saw a dark blue Ford Crown Victoria squad car driving south on Laramie Ave. The car then stopped near him and Garner saw that the front passenger side door of the car was open and the window of the rear passenger side had white tape on it. Garner saw a male white officer, wearing a black jumpsuit and a helmet, with the visor down, sitting in the front passenger seat of the car. Garner alleged that the officer was with 2 or 3 other officers in the same car. The officer in the front passenger seat lifted a canister and sprayed Garner on the left side of

his face and on his clothing, while the officer stayed seated in the car. The officer said nothing to Garner and Garner had said or done nothing to the officers in the car or to the car itself.

Prior to be sprayed by the officer, Garner had seen unidentified youths throw bottles at a different Ford Crown Victoria squad car that was northbound on the east side of Laramie Ave. The thrown bottles found their mark as they struck the front passenger window of that car.

Following the spray incident, Garner went to the home of a friend, Michael, last name unknown, who lives on the west side Laramie Ave., just north of West End Ave., where Garner used a garden hose to wash the spray residue from his eyes. Garner did not seek medical attention relative to the incident. Garner did not believe his friend, Marshall, was sprayed with the chemical spray. (Attachment #36)

In **Civil Suit 08CV6688** it is alleged that victim Darrylmy Garner state that Garner, while standing at or near Washington Blvd., some of the Defendant Officers approached and, using unreasonable force, he was pepper sprayed about his eyes and face. Also the show of force initiated by and/or the failure to intervene in use of said force by some of the defendant officers caused an unreasonable seizure of Garner, in violation of the Fourth Amendment of the United States Constitution. (Attachment # 65)

In an in person interview with IPRA on 13 Nov 08, **victim Toccaro Harris** stated that on 04 Nov 08, between the hours of 2300 and 2359, he and Precious Upchurch were asleep and then were awakened by noise coming from the street in front of their residence. People were out on the street cheering the results of the Presidential Election and the victory of candidate Barack Obama. Harris and Upchurch went out onto Laramie Ave. and stood in front of their residence and observed the celebration. A friend of Precious was also with Harris and Precious. Harris estimated there were 30 to 50 people near the intersection of Laramie and Maypole St. and Harris described the celebration as peaceful and positive. Three unmarked, dark blue Chicago Police Department cars drove past Harris' residence, south from Maypole Ave. Each car had 4 officers inside. The cars turned around south of the Harris residence and came back northbound on Laramie Ave. The front passenger, in middle car of the 3 car caravan, had a red tank, described as looking like a kitchen fire extinguisher. The car also had "X"s taped on the car windows and the officers inside were dressed in "riot gear". Harris smelled a strange odor and at first thought the officer with the red tank was spraying cologne out the car window. The officer said nothing. Precious told Harris that he had just gotten maced. The effects of the chemical spray were not immediately felt by Harris until a short time later when his eyes began to burn. Harris went inside and washed the spray residue from his eyes. Harris was wearing a shirt that he no longer owns. After spraying Harris, the officers continued north on Laramie Ave. to Maypole Ave. where they chased people from that intersection. Harris did not witness any arrests being made by the officers. (Attachment #8).

**INDEPENDENT POLICE REVIEW AUTHORITY**  Page 8 of 19
**Log# 1021411**

On 10 Feb 09, witness **Sade Spencer**, provided a statement wherein she stated that on 04 Nov 08, at approximately 2030 hours, she left her residence at the time, 131 N. Laramie Ave., and went out front of her home. Spencer was joined by Toccaro Harris and Precious Upchurch, who resided next door. Spencer, Upchurch and Harris eventually moved out to the curb in front of their residences watching the celebration and celebrating the election of Barack Obama. As cars passed by, people were cheering and applauding. Harris left the curb and walked out into the street between two parked cars and clapped hands with passengers in cars moving north on Laramie Ave. There was no violence or vandalism or other civil disturbance. There were no people in the street. An unmarked police vehicle came by and slowed as it approached Harris. It appeared to Spencer that the officer seated in the front passenger seat was about to speak to Harris. Instead, the officer brought up a 12" long by 3" to 4" wide cylinder spray container, red in color, with a black nozzle. The officer held the cylinder just outside the police vehicle and discharged a chemical spray onto Harris. Harris backed up quickly and the police vehicle continued northbound on Laramie Ave. Spencer described the officer driver and front seat passenger as M/W, wearing dark clothing and black vests. Both officers also wore black helmets with the clear face shields in the up position. Spencer saw no badges or identifying insignia on the officers. The unmarked police vehicle was a dark colored 4 door sedan, bearing a license plate with a green inscription. Harris went back into his residence after he removed the shirt he was wearing. Harris apparently washed off the spray residue and returned to the sidewalk. (Attachment #86)

**Witness Precious Upchurch**, provided an in-person statement to IPRA on 13 Nov 09, at the IPRA Office and stated that at approximately 2245 hours on the evening of 04 Nov 08, she was present outside her residence with a friend, Sade Spencer and the father of her child, Toccaro Harris, with whom she lives. Upchurch, Harris and Spencer were "hollering and screaming" in celebration following the news announcement that Barack Obama had won the Presidential Election. Upchurch stated that an unmarked Chicago Police Department, black Ford Crown Victoria drove to location in front of her residence were she, Spencer and Harris were standing. The unmarked car had 4 occupants and was positioned facing northbound. The front passenger in that vehicle produced a fire extinguisher sized canister of pepper spray with a hose attached and then discharged the chemical spray directly into the face of Harris. Harris turned and ran into the house and rinsed his eyes out and then Harris returned to the front of his residence, joining Upchurch and Spenser and again the 3 continued celebrating. Upchurch observed 5 unmarked cars at the intersection of Maypole Ave. and Laramie Ave., about 7 or 8 houses from where Upchurch stood. Upchurch stated that at least 10 plain clothes officers got out of the cars and approached a crowd estimated by Upchurch to number 30 to 35 young people. The crowd was dancing about holding Obama placards. Upchurch heard no warning from the officers, who then began discharging pepper spray from the same type of red canister she saw in the car that the officer possessed who sprayed Harris. Upchurch observed 2 or 3 officers pursue a male, black who had broken away from that crowd. The officers pulled the young man out onto the ground for under a porch. The young man lay on the ground, face up, as three officers kicked the young man "all over his body". One of the officers then discharged chemical spray from a large canister, into the youth's face. The officers then raised the young man to his feet and sent the young

**INDEPENDENT POLICE REVIEW AUTHORITY**  Page 9 of 19
**Log# 1021411**

man free. The young man then ran to the side of Upchurch's residence and rinsed his eyes out with water from the outside faucet. (Attachment #10)

In **Civil Suit 08CV6688** victim Frank James alleges that, while standing at or near the intersection of Laramie Ave. and Fulton Street, some of the Defendant Officers approached and, using unreasonable force, he was pepper sprayed about his eyes and face. James then moved to or near 167 N. Latrobe Ave. There, also, some of the Defendant Officers approached and, using unreasonable force, he was pepper sprayed about his eyes and face. Also the show of force initiated by and/or the failure to intervene in use of said force by some of the defendant officers caused an unreasonable seizure of James, in violation of the Fourth Amendment of the United States Constitution. (Attachment # 65)

In **Civil Suit 08CV6688 victim** Michael Lee alleges that he was approached and, using unreasonable force, he was pepper sprayed about his eyes and face. Also, the show of force initiated by and/or the failure to intervene in use of said force by some of the defendant officers caused an unreasonable seizure of Lee, in violation of the Fourth Amendment of the United States Constitution. (Attachment #65)

In **Civil Suit 08CV6688 victim** Jovanna Liberty alleges that while standing at or near the intersection of Laramie Ave. and Lake St., some of the Defendant Officers approached and, using unreasonable force, she was pepper sprayed about her eyes and face. Also the show of force initiated by and/or the failure to intervene in use of said force by some of the defendant officers caused an unreasonable seizure of Liberty, in violation of the Fourth Amendment of the United States Constitution. (Attachment #65)

In **Civil Suit 08CV6688** it is alleged that **victim** Jose McKnight was battered by some of the Plaintiffs on or about the face and/or body, including Plaintiff Jose McKnight, who tasered without a legal basis". Paragraphs 167 thru 176 state that McKnight, while standing at or near 167 N. Latrobe Ave., Officers Zinchuck and Duggan and other Defendant Officers approached and, using unreasonable force, he was pepper sprayed about his eyes and face. Some of the Defendant Officers took the cellular telephone Jose McKnight was using to record the incident and broke it. Jose McKnight was then thrown to the ground and was tasered on his back. Some of the Defendant Officers then peppered sprayed McKnight on or about his eyes and face. Also the show of force initiated by and/or the failure to intervene in use of said force by some of the Defendant Officers caused an unreasonable seizure of McKnight, in violation of the Fourth Amendment of the United States Constitution. In addition, McKnight alleges that Defendant Officer Zinchuck arrested and charged McKnight with obstruction, notwithstanding the fact that McKnight had not committed any criminal act. The suit claims that the charges against McKnight were dismissed in a manner consistent with his innocence. (Attachment #65)

A Chicago Police Department Arrest Report, CB#17408598, listed Jose McKnight, 263 N. Pine Ave., as being arrested at 167 N. Latrobe Ave. and charged with obstructing an Officer. Three other co-arrestees, CB#s:17408561, 17408565 and

BS000014

**INDEPENDENT POLICE REVIEW AUTHORITY**            Page 10 of 19
Log# 1021411

17408584 are listed and the report notes that McKnight revisited arrest. The narrative of the report states that McKnight attempted to lock a gate and allegedly told the offenders to "run here, here come the police". McKnight also allegedly swung his arms at Officer Zinchuk as if he were throwing punches. M was arrested and after arriving at the 015th District Station, was taken to Loretto Hospital after complaining of asthma. (Attachments 29,30,50 and 54).

A Tactical Response Report (TRR) was filed by Officer Matthew Little, #885 related to the Take Down/Emergency Handcuffing of McKnight on 05 Nov 08, in that McKnight failed to follow verbal directions. An additional TRR was filed regarding the same arrest by Officer John Zinchuk, #3893, stating McKnight did not follow verbal directions, stiffened (dead weight), pulled away and attacked without a weapon, posing a imminent threat of battery. The form related Officer Zinchuk, used an OC chemical weapon placing McKnight in an arm bar and used a take down/emergency handcuffing technique. The form indicated that McKnight was injured and also stated that McKnight was under the influence at the time of the encounter. . (Attachments 29, 30 ,50 and 54).

A Chicago Fire Department Run Report, Run # 083100077, dispatched 05 Nov 08, at 00:48, to 5701 W. Madison St., for patient Jose McKnight was recovered, showing McKnight was suffering from an asthma attack and was taken to Loretto Hospital for treatment. (Attachments 54 and 55).

**Civil Suit 08CV6688** it is alleged that **victim** Kenifer McNease while standing at or near the intersection of Laramie Ave. and Lake St., some of the Defendant Officers approached and, using unreasonable force, she was pepper sprayed about her eyes and face. Also the show of force initiated by and/or the failure to intervene in use of said force by some of the defendant officers caused an unreasonable seizure of McNease, in violation of the Fourth Amendment of the United States Constitution. (Attachment #65)

On 22 Jan 09, victim **Cerrone McPeak**, provided a statement in which McPeak stated that on 04 Nov 08, at approximately 2230 hours, Mc Peak and his cousin, Davante Shinaul, were outside their home, at the south west corner of the intersection of Washington Blvd. and Latrobe Ave., holding up signs to passing motorists as they celebrated the victory of Barack Obama in the Presidential election. They remained on the sidewalk as 5 Chicago Police Department cars proceeded east on Washington Blvd. The first 4 cars were marked squad cars and the last in the procession was an unmarked car. The line of vehicles stopped at McPeak's location and an M/W and M/B officer got out of the unmarked car. A third officer remained in the unmarked car. The two officers attired in black jumpsuit uniforms, with black helmets and face shields in the down position. As the M/W officer approached their location, the M/W officer reached to his waist and pulled out a spray container, described as being black and yellow in color, 12" tall and "3-4" in diameter and discharged a chemical spray onto McPeak and Shinaul. The officer aimed the spray into their faces from approximately 3 or 4 feet away. The M/B officer walked across the street to the east side of Latrobe Ave. and began spraying chemical spray at R███ C███ Marvin Wideman and L███ F███, who were on the sidewalk there. McPeak recalled seeing people on the north side of Washington Blvd.

**INDEPENDENT POLICE REVIEW AUTHORITY**  Page 11 of 19
**Log# 1021411**

running and McPeak believed those people were also sprayed by officers. McPeak noticed a "CPD" inscription on the turtle neck shirt the M/W wore under his jumpsuit. No other badge or name plate was visible. McPeak noticed that atop one of the marked CPD vehicles was a placard with the numerals "44 - -". McPeak stated he believed an individual known to him as "Vaz", who resides on the north side of Washington Blvd. may have video taped the entire incident. Subsequent to being sprayed, McPeak and Shinaul went into their residence and washed the spray residue from their eyes and skin. Later, that same evening, McPeak conferred with Richie Cole, Wideman and Fulton at the residence of Lorenzo Fulton and McPeak discovered that all three had witnessed McPeak and Shinaul being sprayed earlier that evening. The three said that they also had been sprayed by CPD officers. (Attachment #80)

On 07 Jan 09, victim **Davante Shinaul** provided a statement with IPRA in which he stated he was with his cousin, Cerrone McPeak, at approximately 23:15, on 04 Nov 08. Shinaul and McPeak were on the south west corner of the intersection of Washington Blvd. and Latrobe Ave., holding banners bearing the inscription "Obama 08", when 5 marked Chicago Police Department cars approached their position from the west. Shinaul and McPeak were chanting "Obama, Obama". There was no one throwing bottles or rocks, nor any vandalism noticed by Shinaul. People were out on the sidewalk, not in the street. One of the cars stopped and an M/B officer, got out of the rear passenger seat and approached Shinaul and McPeak. The officer was approximately 6' tall, with no discerned facial hair or eye glasses. The officer wore a black jumpsuit and a black helmet with a clear plastic face plate. The officer appeared to be one of four officers present in the car. Shinaul believed the officer was going to speak to them as he approached their position. Instead, the officer raised his arm and right hand and, from a distance of approximately 3 feet, the officer discharged a chemical spray into their faces, instructing them to get off the corner. The chemical caused a burning sensation to their faces and eyes. The spray canister was tubular in shape, approximately 12" long by 3" in diameter, black with an orange nozzle. On the northeast corner of the intersection was R███ C███, Shimaul's cousin and Marvin Wideman. They may have seen the entire incident. Shinaul noticed that the 5th squad car in the line that approached his location had a "number box" on the top of the car that began with the numerals "44- -". Shinaul did not notice a badge or name plate on the officer that sprayed them. Shinaul did not recognize the spraying officer. Shinaul and McPeak went into their residence to wash the chemical spray residue from their faces and eyes. (Attachment #78).

On 27 Jan 09, **victim A███ M███**, a minor, was interviewed at his residence, 163 N. Lockwood Ave., in the presence of his father, wherein M███ stated that on the evening of 04 Nov 08, at approximately 2300 hours, M███ was outside in the neighborhood celebrating the pending Presidential Election result. Just outside his residence, M███ encountered his neighbor, Teona Henry. M███ entered the back seat of the car Henry was driving. Also seated in the back seat was Tiffany Thomas. Amelia Colazzo sat in the front seat of the car. Henry drove to Laramie Ave., near the intersection of Maypole Ave. Thomas and M███ got out of the car just in front of the Cut Joint Barbershop there, which is located on the west side of the street. A crowd had gathered there and they were celebrating with Obama signs. People were on the

BS000016

sidewalk, not in the street chanting "Obama". M▇ saw no instance of violence or vandalism. Henry had left and driven further south in an effort to find a parking place. Before Henry and Colazzo could rejoin Thomas and M▇, approximately 7 unmarked police vehicles came southbound on Laramie Ave. and stopped in front of the crowd that had gathered at M▇ location. Similarly, approximately 7 unmarked police cars came northbound and stopped in front of a crowd that had gathered at the Laramie Ave. and Maypole Ave. intersection. Officers from inside the stopped police vehicles leaned out of the vehicle windows and began spraying the crowds, on both sides of Laramie Ave. with a chemical pepper spray. Tiffany Thomas was sprayed in the face. M▇ covered his face with his arm and turned his back to the stopped police vehicle. M▇ then walked with Thomas to the Henry car. Thomas went to the residence of Henry and M▇ went next door to his own residence where they rinsed the chemical spray from their faces. M▇ was unable to furnish the names of any other witnesses to the incident. He described the officers as wearing plainclothes, dark colored helmets, with face shields. M▇ believed there were four officers in each police vehicle. (Attachment #72).

**Victim** Sherwin Ott provided an interviewed with IPRA on 06 Nov 08. Ott stated that on 05 Nov 08, at 00:30 to 01:00 he departed a Green Line elevated train and walked to the backyard of a friend, who resides at 167 N. Latrobe Ave. On the way to that location, he saw officers spraying people, who had gathered in the 100 N. block of Laramie Ave., with a chemical spray chemical the occasion was a barbeque and a celebration where friends Clifford Armstrong, Michael Rivers, Jose McKnight, "Tina", who resides at 167 N. Latrobe Ave. and Victor Jones, who resides at 138 N. Laramie Ave. were celebrating the election of Barack Obama as President of the United States. Although his friends were drinking alcoholic beverages, Ott was not. The backyard crowd was shouting "Obama". About 10 male, white officers, all wearing black jumpsuits, helmets, with clear plastic face shields, came into the backyard from the alley. As the officers ran into the yard, Ott heard one of the officers yell "McCain". One of the officers squirted a chemical spray into Ott's face for no reason. Ott did not know the name of the officer not could he identify the officer if he saw him again. Ott described the officer as a white, male, 6'1" in height, weighing approximately 185 lbs, with dark hair, not wearing glasses not having any facial hair. Ott said he could identify some of the officers who were in the yard if he could view their photographs. Ott stated that Armstrong, Rivers and McKnight were arrested but "Tina" was no arrested. Trying to recover form the chemical spray residue, Ott sat down on the ground and Jones called "911" and an ambulance arrived and transported Ott to either, the University of Chicago, Mount Sinai or West Suburban Hospital where he was treated and released. Ott stated that heard from another neighbor that a woman had used her cell phone camera to record his incident of being sprayed. He intended to furnish the name of the woman should he ever identify her. (Attachment # 7)

In **Civil Suit 08CV6688** it is alleged that Ott, while standing at or near the intersection of Laramie Ave. and Maypole Ave., some of the Defendant Officers approached and, using unreasonable force, he was pepper sprayed about his eyes and face. Ott then moved towards his home, located at 161 N. Laramie Ave., and some of

defendant officers approached him again, using unreasonable force, he was again sprayed about his face and eyes. Also, the show of force initiated by and/or the failure to intervene in use of said force by some of the defendant officers caused an unreasonable seizure of Ott, in violation of the Fourth Amendment of the United States Constitution. (Attachment #65)

On 06 Nov 08, a Chicago Police Department Evidence Technician was dispatched to 2931 W. Jackson Blvd. to collect the shirt worn by Ott at the time of the incident and the towel used by Ott to wipe away the chemical spray residue from his face on 05 Nov 08. Photographs of Ott were also taken by a Chicago Police Department Evidence Technician on 07 Nov 08. (Attachments #89, 90 and 91)

In an attempt to interview victim Michael Rivers IPRA staff contacted Rivers who was listed on a Chicago Police Department Arrest Report, CB#: 17408584, which relates he was charged with Reckless Conduct at 167 N. Latrobe Ave. The report relates Rivers was one of 4 arrestees in the same case. The other co-arrestees are reported under CB #s 17408561, 17408565 and 17408598. The narrative of the report related that Rivers was one of 3 individuals, observed throwing bottles at police vehicles as they passed, yelling "fuck the police; Obama bitches". The report alleged that Rivers resisted arrest. (Attachment # 32)

A Tactical Response Report (TRR) was filed by Officer Wojciech Lacz, #15609, in connection with the Rivers arrest. The form stated that Rivers did not follow verbal instructions and fled. The form relates that the officer utilized an OC chemical weapon in connection with the arrest efforts.

In a telephone conversation with Rivers, he refused to be interviewed by IPRA staff. Rivers related that "people acted crazy and threw bottles at the police." (Attachment #432)

In **Civil Suit 08CV6688** it is alleged that Melinda Robinson while standing at or near 152 N. Latrobe Ave., some of the Defendant Officers approached and, using unreasonable force, she was pepper sprayed about her eyes and face and was also battered on or about her body. Also the show of force initiated by and/or the failure to intervene in use of said force by some of the defendant officers caused an unreasonable seizure of Robinson, in violation of the Fourth Amendment of the United States Constitution.

In **Civil Suit 08CV6688** it is alleged that May Ann Rogers while at her home, located at 152 N. Latrobe Ave., some of the Defendant Officers invaded her home without a search, probable cause, exigent circumstances and/or any lawful basis and searched her residence.

In **Civil Suit 08CV6688** it is alleged that Jeremy Spencer, while standing at or near Laramie Ave., was pepper sprayed about his eyes and face. Spencer then alleges that he moved towards the intersection of Laramie Ave. and Fulton Street. There some of

the Defendant Officers approached him and again used unreasonable force and pepper sprayed him about his face and eyes. Also the show of force initiated by and/or the failure to intervene in use of said force by some of the defendant officers caused an unreasonable seizure of Spencer, in violation of the Fourth Amendment of the United States Constitution.

An article appearing in the Sunday, Chicago Tribune, Chicago land Section, February 15, 2009, related that **Antonio Cole** and **Lenneth Suggs** had been shot and killed at a car wash in the 5200 block of Wes Lake St., on Friday, 13 Feb 09. (Attachment #95)

In an in person statement with IPRA Lenneth Suggs, now deceased, furnished a statement on 06 Nov 08, and during that interview stated that on 04 Nov 08, he was present with Keith Watts and Antonio Cole (now deceased) near Laramie Ave. and Ferdinand St., when they saw Jeremy Spencer dancing in the street, apparently celebrating the Presidential Election result. As a marked Chicago Police Department squad drove past Spencer, an officer shouted "fuck Obama" and sprayed Spencer in the face with pepper spray. Suggs recalled there were 3 officers in the squad car. Suggs stated that the identifying numbers on the car were intentionally taped over or removed.

Suggs, Watts and Cole continued walking westbound on Fulton St., toward Latrobe Ave. As they were walking, Suggs was grabbed by his head, from behind, and pepper sprayed on the right side of his face by someone who said "get the fuck off the corner". Suggs heard another voice, "I just sprayed the fucker with the Obama shirt on". Suggs was assisted to the Brother's Liquor Store and the chemical spray residue was washed from his eyes there. Suggs did not seek medical attention. (Attachment #41)

In **Civil Suit 08CV6688** it is alleged that Lenneth Suggs while walking at or near the intersection of Laramie Ave. and Fulton St., some of the Defendant Officers approached and, using unreasonable force, he was pepper sprayed about his eyes and face and was also battered on or about his body. Also the show of force initiated by and/or the failure to intervene in use of said force by some of the defendant officers caused an unreasonable seizure of Suggs, in violation of the Fourth Amendment of the United States Constitution. (Attachment #65)

In an in-person statement with IPRA on 06 Nov 09, victim Tiffany Thomas related that she was a passenger in a friend's, Tiara Henry's, automobile along with two friends, Carlitha Benson and A▓▓ M▓▓. As Henry was parking her automobile in front of 134 N Laramie Ave., at 0015 hours, on 05 Nov 08, Thomas got out and walked to a crowd of people that had gathered nearby. Thomas waited near the street for her friend to join here from the parked car. As she waited, a marked Chicago Police Department squad drove up next to Thomas, on the wrong side of the street, and a white male officer, wearing a black vest, stayed inside the squad car as he discharged a chemical spray into Thomas' face. Thomas was unsure as to whether there was an additional officer in the squad car. Unable to see, Thomas was assisted back to Henry's

car and driven to Henry's home where she washed the chemical spray residue from her eyes. Thomas did not seek any professional medical assistance. (Attachment #5)

In **Civil Suit 08CV6688** it is alleged that Tiffany Thomas, while standing at or near the intersection of Laramie Ave. and Maypole Ave. St., some of the Defendant Officers approached and, using unreasonable force, she was pepper sprayed about her eyes and face and was also battered on or about her body. Also the show of force initiated by and/or the failure to intervene in use of said force by some of the defendant officers caused an unreasonable seizure of Thomas, in violation of the Fourth Amendment of the United States Constitution. (Attachment #65)

On 05 Feb 09, witness **Teona Henry**, 27 years of age, was interviewed and stated on 04 Nov 08, at approximately 22:00, she was present in her automobile, driving around with friends Emelia Collazo, Tiffany Thomas and A___ M___. Henry was driving south on Laramie Ave., and stopped in front of the Cut Joint Barbershop, on the west side of Laramie Ave., near the intersection of Laramie Ave. and Maypole Ave. Thomas and M___ got out of the rear seat of Henry's car to join friends who had gathered on the sidewalk there to celebrate the election of Barack Obama. Henry, with Collazo still in the car, drove about 10 feet further south to park the car. As Henry raised the car windows and prepared to lock her car and join the others, Henry saw a Chicago Police Department unmarked car coming northbound on Laramie Ave. As the car passed Henry, she saw the unmarked car veer to the southbound lanes and stop in front of the grocery store, located just to the south of the barbershop. The unmarked car had "X"s taped on the side windows and Henry noticed there were two officers seated in the front seat and possibly two additional officers in the rear seat of the car. The driver's arm was observed as the driver extended it out the window. Henry then saw what she believed to be a discharge of chemical spray aimed at the people on the sidewalk. People began running and Henry saw Thomas and M___ staggering back to Henry's car. Collazo got out of the Henry car and helped place Thomas in the rear seat. Once inside, Henry drove to her residence and furnished a wet towel to Thomas who removed the spray residue from her face. Misher returned to his residence, next door. Henry then returned Thomas to her residence and Collazo to her residence, located at 201 N. Kildare Ave. Henry recalled the officer that was driving the unmarked squad car was M/W and was dressed in dark clothing. (Attachment #84)

In **Civil Suit 08CV6688** it is alleged that Keith Watts, while standing at or near the intersection of Laramie Ave. and Fulton St., some of the Defendant Officers approached and, using unreasonable force, he was pepper sprayed about his eyes and face. Also the show of force initiated by and/or the failure to intervene in use of said force by some of the defendant officers caused an unreasonable seizure of Watts, in violation of the Fourth Amendment of the United States Constitution. (Attachment # 65)

Marvin Wideman provided a statement on 07 Nov 08, in which he stated that on 04 Nov 08, at approximately 2300, he was present at the home of a friend, whose name he has forgotten, near 153 N. Latrobe Ave. Wideman was present in the backyard of that house with a friend, R___ C___ and about 12 others. Wideman, C___ and a few other

**INDEPENDENT POLICE REVIEW AUTHORITY**   Page 16 of 19
**Log# 1021411**

people were playing cards and others were just standing around talking and drinking alcoholic beverages. None appeared to be intoxicated. At one point, 8 or 10 male, black youths ran from Maypole Ave., thru a vacant lot that adjoined the location where Wideman was playing cards and then thru Wideman's location. Unmarked Chicago Police Department cars were visible on Maypole Avenue and between 8 to 20 officers, dressed in black uniforms, ran after the youths into the backyard where Wideman was located. Upon entering the back yard, the officers discontinued their pursuit and yelled at everyone present there to "get down on the ground". After the people present got down on the ground, the officers took out pepper spray canisters and sprayed people present in the face with a pepper spray chemical. Wideman had not gotten to the ground but remained seated at the card table. The officers then instructed him to get on the ground and as he did, one of the officers sprayed Wideman in the eyes with the chemical spray. Wideman fell to the ground, unable to see but he did feel the kicks and baton blows from the officer's "sticks or billy clubs". The blows landed on Wideman's legs and chest as he rolled about on the ground, unable to see. Wideman was then raised to his feet; his hands were bound with a plastic clasp and he was escorted away to a squad car. Following his arrival at the 015th District Station, officers assisted Wideman in washing the chemical spray residue from his eyes. Wideman was charged with destruction of property. Officers alleged that Wideman was throwing a bottle at a squad car, an allegation Wideman denied, saying he was playing cards right up to the time that Wideman was sprayed by the arresting officers. While present in the 015th Station, Wideman stated he heard a man, "Chuck", screaming that he could not breathe for approximately 20 minutes before the officers took the man to the hospital for treatment. (Attachment #16)

In **Civil Suit 08CV6688** it is alleged that Marvin Wideman while standing at or near 157 N. Latrobe Ave., some of the Defendant Officers approached and, using unreasonable force, he was pepper sprayed about his eyes and face and was also battered on or about his body. Also the show of force initiated by and/or the failure to intervene in use of said force by some of the defendant officers caused an unreasonable seizure of Wideman, in violation of the Fourth Amendment of the United States Constitution. Also the arrest and charges against Wideman involving the unlawful destruction of property, when he had not committed any criminal act violated his rights under the Fourth Amendment of the United States Constitution. The charge against Wideman was dismissed in a manner consistent with his innocence. (Attachment # 65)

A Chicago Police Department Arrest, CB#: 17408561, lists the arrest of Marvin J. Wideman, on a charge of Reckless Conduct and lists Wideman as being with offenders Cole and Rivers, throwing bottles at police vehicles as they passed, yelling "fuck the police; Obama bitches". Offender McKnight attempted to lock a gate telling the other offenders to run here and then attempted to impede the arresting officers in their pursuit of the other offenders. Offender Armstrong also was placed into custody after he also stepped in front of the police, impeding their pursuit of the other offenders. (Attachments #17 & 18).

A Chicago Police Department Tactical Response Report (TRR) was filed by Officer Albert F. Wyroba, Star 3152, regarding the use of chemical spray in connection

**INDEPENDENT POLICE REVIEW AUTHORITY**  Page 17 of 19
**Log# 1021411**

with the arrest of Marvin Wideman when Wideman filed to follow verbal instructions and fled form the officers.

On 07 Nov 08, photographs of Lorenzo Fulton, Darryl Garner and Latina Williams were taken by a Chicago Police Department Evidence Technician, while at 152 N. Latrobe Ave. Also, a shirt was also inventoried into evidence.

In **Civil Suit 08CV6688** it is alleged that Latina Williams, while standing at or near 167 N. Latrobe Ave., some of the Defendant Officers approached and, using unreasonable force, battered her on or about her body, causing injury. Also the show of force initiated by and/or the failure to intervene in use of said force by some of the defendant officers caused an unreasonable seizure of Williams, in violation of the Fourth Amendment of the United States Constitution. Some of the defendant officers arrested and held Latina Williams, notwithstanding the fact that on 04 Nov 08, Williams had not committed any criminal act and no probable cause existed. (Attachment #65)

An investigation to locate witness Jerry Garner conducted 31 Dec 08 revealed he was an inmate at the Cook County Jail. On 06 Jan 09, a date for the interview of Garner was set for 08 Jan 09.

On 08 Jan 09 **witness Jerry Garner** was interviewed at the Cook County Jail and stated that on evening of 04 Nov 08, at approximately 23:00, Garner, while present inside his residence, located at 167 N. Latrobe Ave., he became aware of police activity in front of his residence. As he looked out thru his residence front window Garner saw people in front of his house cowering after police officers had apparently discharged a chemical spray onto the crowd that had gathered there. Some of the people had covered their faces with their clothing in an effort to protect themselves from the chemical spray. Garner was unable to recognize any of the people in the street. Garner also heard noises emanating from the backyard of his residence. Garner went to the back door to look out and saw that as many as 16 people had gathered in the backyard. Also present were approximately 10 police officers who were involved in discharging a chemical spray on the gatherers there. The officers wore blue and white riot helmets, most wearing jumpsuits, and some carrying transparent shields. Garner did see an officer in the vacant lot, directly behind 167 N. Latrobe Ave., who wore a white shirt. That officer did not come into Garner's backyard. Garner was not able to leave the house because of the obvious police presence and the fact he knew that there was a warrant outstanding for his arrest. As Garner looked out into the backyard, he saw all the people in the yard were on the ground, with the exception of Latina Williams, the girlfriend of Garners's brother Darryl Garner. Garner watched as the police officers forcefully placed Latina Williams face down on the ground. As she lay there, one of two or three officers present near her sprayed her in the face with the chemical spray. Also present in the backyard and down on the ground were Clifford Armstrong, Rosalind Ball, Jose McKnight and Michael Riveres. Garner did not recognize any of the officers present and did not see any arrests being made. Garner was also not aware of what prompted the police to enter his backyard. (Attachment #73)

**INDEPENDENT POLICE REVIEW AUTHORITY**  Page 18 of 19
Log# 1021411

In the **2008 Presidential Election** report submitted by First Deputy Superintendent James B. Jackson, the operation of the Chicago Police Department, specifically the Command personnel's functions are outlined. Identified in this report are the Command personnel and what each person is in charge of. The report outlines the venues of particular concern, specific police details, communications, radios, uniform, transportations, vehicles, and the various locations of the command posts. This report details the Bureaus and then describes the personnel assigned, including the shifts, to the identified location. (Att# 445)

In a report dated 04 Aug 09, which is an interview with **Raymond Orozco**, the Executive Director of the Office of Emergency Management and Communications on 04 Aug 09, Mr. Orozco explained the polices and procedures which were in place on 04 Nov 08.

Mr. Orozco indicated that the OEMC followed the Responsibility Authority Expertise (RAE) and there were no other written or oral special orders. Each agency had a representative in the Joint Operations Center (JOC). All the PODs were being visually monitored on screens for any civil unrest or crowd related conditions. Mr. Orozco related that there were no reports generated in relation to IPRA investigation and he could not state whether or not any of the events were on the PODS that evening. Mr. Orozco provided a copy of the City of Chicago Incident Action Plan (IAP). (Att# 450)

The **Incident Action Plan** outlines the assignments of each city agency (police, fire, utilities, OEMC, CDOT...) participating in the operations during the election night events. Included are the identities of the commanders and where command personnel could be located. The report details the communications, radio frequencies and channels, channel name, and telephone numbers. This report explains the functions of every agency and what their basic duties were during the course of the event. This plan extensively covers the entire city and explains all ground and air operations. (Att# 446)

Several reports are contained in this investigation which further explains the function and locations of the ILEAS and NIPAS officers. Each report indicates that neither group engaged in any police activity, including any chemical weapon discharges (Att# 444)

The PDT Transmissions were obtained from all identified squad cars. The PDT transmissions contain communications between squad cars and between squad cars and the OEMC dispatchers. (Att# 443)

Witness To-From-Subject reports were requested by on-duty officers in the following Units: 015, 025, 014, 141, and 153. Nearly all officers who responded to the questions addressed responded that they did not witness any OC discharges and did not have any direct or indirect knowledge of any. The officers who had knowledge or were interviewed are discussed below. (Att# 451)

BS000023

**INDEPENDENT POLICE REVIEW AUTHORITY**  Page 19 of 19
Log# 1021411

**CONCLUSION:**

A finding of **Not Sustained** is recommended for **Allegations #1** against an unknown officer(s) that they sprayed numerous victims with mace without justification during while responding to an incident at 167 N. Latrobe. Numerous official departmental reports document that the responding officers were pursuing individuals actively engaged in civil unrest which included the throwing of rocks and bottles at marked police cars. The unknown subjects fled to the location of incident where an apparent barbeque celebration was taking place. At this location numerous arrests resulted. Each arrest was further documented by TRR's indicating the level of force needed to affect the arrest. The officers that completed these TRR's in a timely manner were named as Defendants in civil suit **08CV6688.**

Without the cooperation of plaintiffs in the civil suit and based on the available departmental reports and witness and victims statements it is the recommendation that this case be closed with the finding of **Not-Sustained** and the accused officers remain **Unknown**. Without additional information the general description provided by the victims fit many officers throughout the 015th District and 025th District during the presidential election night celebration. While evidence does indicate that OC spray was in use throughout the Districts, it is unclear if the accused officer(s) intentionally directed the OC spray at the victims or as a crowd control measure. There was no GPS available at time of this incident. Without further witness accounts and a means to identify the accused and witness officers, there is insufficient evidence to prove or disprove the allegation.